# Exhibit D

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| LIGADO NETWORKS LLC *et al.,* | Case No. 25-10006 (TMH) |
| Debtors.[1] | (Jointly Administered) |
| | **Hearing Date: January 14, 2026 at 11:00 A.M. (EST)** |
| | **Objection Deadline: January 9, 2026 at 4:00 P.M. (EST)** |

**EMERGENCY MOTION BY AST & SCIENCE LLC FOR ENTRY OF AN ORDER
ENFORCING THE MEDIATED AGREEMENT AND RELATED ORDERS
OF THIS COURT AGAINST INMARSAT GLOBAL LIMITED**

AST & Science LLC ("**AST**"), for its *Emergency Motion by AST & Science LLC for Entry of an Order Enforcing the Mediated Agreement and Related Orders of This Court Against Inmarsat Global Limited* (the "**Motion**"), respectfully states as follows:

**PRELIMINARY STATEMENT**

1.      Pursuant to the Mediated Agreement (as defined below) and related orders of this Court, Inmarsat Global Limited ("**Inmarsat**") is required to support the Debtors' regulatory applications before the US Federal Communications Commission ("**FCC**") and the Innovation, Science and Economic Development Canada ("**ISED**" and together with the FCC, the "**Regulatory Authorities**"). In flagrant violation of the Mediated Agreement and the prior orders

---

[1]      The debtors (the "**Debtors**" or "**Ligado**") in the above-captioned Chapter 11 cases (the "**Chapter 11 Cases**"), along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Ligado Networks LLC (3801); ATC Technologies, LLC (N/A); Ligado Networks (Canada) Inc. (N/A); Ligado Networks Build LLC (N/A); Ligado Networks Corp. (N/A); Ligado Networks Finance LLC (N/A); Ligado Networks Holdings (Canada) Inc. (N/A); Ligado Networks Inc. of Virginia (9725); Ligado Networks Subsidiary LLC (N/A); One Dot Six LLC (8763); and One Dot Six TVCC LLC (N/A). The Debtors' headquarters is located at: 10802 Parkridge Boulevard, Reston, Virginia 20191.

of this Court, and despite *AST having paid Inmarsat $420 million* of bargained-for consideration pursuant to the Mediated Agreement in exchange for Inmarsat's support with the Regulatory Authorities, Inmarsat has now plainly breached its regulatory support obligations ("**Regulatory Support Obligations**") in a manner that potentially interferes with the regulatory process concerning the AST Transaction (as defined below), as well as consummation of the Debtors' confirmed Chapter 11 Plan (as defined below) in these cases.

2. Indeed, without even a pretense of seeking relief from the automatic stay from this Court in connection with the above-captioned Chapter 11 cases, Inmarsat has commenced an action (the "**NY State Action**") before the Supreme Court of the State of New York (the **"NY Court"**) against AST SpaceMobile, Inc. and Debtors Ligado Networks LLC and Ligado Networks (Canada) Inc. In bold and blatant defiance of its Regulatory Support Obligations under the Mediated Agreement and related orders of this Court, Inmarsat has stated in the complaint (the "**Complaint**") it filed in the NY State Action, a copy of which is annexed hereto as **Exhibit A**, that **"it intends to petition the FCC to deny the application"** for regulatory approval of the AST Transaction.

3. For the reasons set forth in greater detail below, it is imperative that this Court promptly enter an order requiring Inmarsat to (A) comply with its obligations under the Mediated Agreement and related orders of this Court, including its Regulatory Support Obligations; (B) withdraw the NY State Action immediately because it not only contravenes the Mediated Agreement and prior orders of this Court but also constitutes a violation of the automatic stay; and (C) adhere to its Regulatory Support Obligations and immediately cease taking any step or action of any kind or nature that could be construed, directly or indirectly, as opposition to the applications with the Regulatory Authorities.

4.      The issues Inmarsat raises in the NY State Action have already been addressed and disposed of _twice_ by this Court. **First**, in April 2025, Inmarsat objected to Ligado's proposed transaction (the "**AST Transaction**") with AST to provide AST with certain usage rights relating to Ligado's L-Band Spectrum in North America so that AST could operate its proposed non-geostationary satellite orbit system in the L-Band in North America (the "**Proposed NGSO System**"). Following months of hard-fought negotiations among Inmarsat, Ligado and AST, the parties agreed to a comprehensive settlement which was memorialized in a binding mediated agreement (Dkt. No. 692-1) (the "**Mediated Agreement**") that was approved by order (Dkt. No. 692) of this Court (the "**Mediation Order**"). A copy of the Mediation Order, attaching the Mediated Agreement thereto, is annexed to this Motion as composite **Exhibit B**. As discussed more fully below, under the terms of the Mediated Agreement and the Mediation Order, AST agreed to pay Inmarsat $535 million in three installments. AST timely paid the first installment in the amount of $420 million, and Inmarsat took the money.

5.      For its part, in exchange for this bargained-for consideration, Inmarsat consented to the AST Transaction, the Mediated Agreement and the entry of the Mediation Order. More particularly, and as described in greater detail below, so long as the applications to the Regulatory Authorities state that the operations of the Proposed NGSO System have been coordinated in accordance with certain agreements to be entered into among the parties—namely the Amended Inmarsat Cooperation Agreement between Inmarsat and Ligado and the Inmarsat-AST Agreement[2]—the Mediated Agreement and Mediation Order require Inmarsat to affirmatively

---

[2]      The "**Amended Inmarsat Cooperation Agreement**" refers to the Cooperation Agreement (defined below) that was further amended by Inmarsat and Ligado on September 21, 2025. The "**Inmarsat-AST Agreement**," attached hereto as **Exhibit C**, refers to the Inmarsat-AST Agreement between Inmarsat and AST dated September 21, 2025.

support the applications to be made to the Regulatory Authorities for approval of the AST Transaction and to refrain from taking any action contrary to Inmarsat's Regulatory Support Obligations.

6.     Following approval of the AST Transaction, Inmarsat overplayed its hand in connection with the negotiations among the parties regarding the terms of the Amended Inmarsat Cooperation Agreement and the Inmarsat-AST Agreement.  These agreements, which were provided for in the Mediated Agreement, specify the scope and extent of the parties' coordination obligations with respect to the Proposed NGSO System. Because of Inmarsat's overreaching, the parties reached an impasse and filed competing motions with this Court to enforce the Mediated Agreement. *See* Dkt. Nos. 825, 827, 896. Thus, the issues that are the subject of the NY State Action were addressed for a **second** **time** at a hearing held before this Court on August 29, 2025 (the "**August 29 Hearing**") with respect to the parties' cross motions.

7.     At the conclusion of the August 29 Hearing, this Court directed Inmarsat to enter into direct agreements with each of Ligado and AST, incorporating *verbatim* the plain terms of the Mediated Agreement. *See* Transcript of August 29 Hearing, attached hereto as **Exhibit D**, at 30:8-9. Based on this Court's determinations at the August 29 Hearing, any question concerning what conditions must be met in order for Ligado and AST to be entitled to Inmarsat's affirmative support for the applications with the Regulatory Authorities has been definitively resolved by this Court's order (the **"Coordination Order"**) of September 2, 2025, directing the parties to incorporate the specific language of the Mediated Agreement into the Amended Inmarsat Cooperation Agreement and the Inmarsat-AST Agreement. *See* Dkt. No. 940 ¶ 3.

8.     Following entry of the September 2 Coordination Order, the Debtors proceeded with confirmation of their Chapter 11 plan of reorganization (the "**Plan**"), which was confirmed

by order of this Court dated September 29, 2025. The AST Transaction is the cornerstone of the Plan. Given the nature of the AST Transaction, it must be approved by the Regulatory Authorities and such approval is a condition precedent to consummation of the Plan. Without approval of the AST Transaction by the Regulatory Authorities, the Debtors have no foreseeable path to emergence from Chapter 11.

9.      Notably, AST and Ligado have fully lived up to their end of the bargain with Inmarsat. On or before October 31, 2025, AST timely paid Inmarsat $420 million and Inmarsat accepted the money.  On December 8, 2025, Ligado filed its Application for Modification of Space Station License ("**the FCC Application**") containing, *verbatim*, the two representations required under the Mediated Agreement as well as a letter from AST in support of the FCC Application. A copy of the FCC Application, including AST's letter in support thereof, is attached hereto as composite **Exhibit E**.  The ISED application has not yet been filed.

10.     On December 19, 2025, only days after the filing of the FCC Application, and in stunning and flagrant breach of the Mediated Agreement, the Mediation Order and the September 2 Coordination Order delineating with specificity what the Amended Inmarsat Cooperation Agreement and the Inmarsat-AST Agreement should provide—and thus precisely addressing what prerequisites must be satisfied to trigger Inmarsat's Regulatory Support Obligations—Inmarsat fled to the NY Court in an attempt to repudiate its Regulatory Support Obligations concerning the FCC Application. In the NY State Action, Inmarsat makes the extraordinary assertion that AST and Ligado have failed to coordinate the Proposed NGSO System, even though the terms of such coordination were expressly addressed by the September 2 Coordination Order, the Amended Inmarsat Cooperation Agreement and the Inmarsat-AST Agreement.

11. Inmarsat signed the Mediated Agreement and thus committed itself to support the AST Transaction with the Regulatory Authorities. Inmarsat also signed the Amended Inmarsat Cooperation Agreement with Ligado and the Inmarsat-AST Agreement, each addressing the parties' coordination obligation as ordered by this Court in the September 2 Coordination Order. Inmarsat certainly accepted AST's $420 million without a peep. Inmarsat must be required to uphold its end of the bargain and adhere to its Regulatory Support Obligations.

## JURISDICTION

12. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and specifically 28 U.S.C. § 157(b)(2)(M), because the instant dispute concerns property rights with respect to the L-Band Spectrum that the FCC has licensed to Ligado. Therefore, any orders with respect to the same would be orders concerning the "use" of the Debtors' property.

13. Pursuant to Rule 9013-1(f) of this Court's Local Rules, AST consents to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

14. The bases for relief requested herein are, *inter alia*, the retention of jurisdiction provisions in this Court's prior orders, *see* Dkt. No. 692 ¶ 13; Dkt. No. 940 ¶ 4, section 362(a) of title 11 of the United States Code (the "**Bankruptcy Code**") and Local Rule 2002-1(a)(ii).

## BACKGROUND

**I.     The Mediated Agreement and Mediation Order.**

15. On March 22, 2025, Ligado filed a motion (Dkt. No. 352) (the "**AST Transaction**

**Motion**") to enter into the AST Transaction. The AST Transaction contemplated that, in exchange for certain L-Band Spectrum usage rights, AST would provide Ligado with $550 million plus certain warrants and a very substantial revenue stream that would fund Ligado's post-emergence business.

16. On April 25, 2025, Inmarsat filed an objection (Dkt. No. 462) to the AST Transaction Motion. Inmarsat's objection focused on obtaining payment of its alleged $550 million cure claim pursuant to the *Amended and Restated Cooperation Agreement*, dated as of August 6, 2010, between Ligado and Inmarsat (the "**Cooperation Agreement**"). The Cooperation Agreement addressed, among other things, coordination of the respective rights of Inmarsat and Ligado to use the FCC-license portions of the L-Band Spectrum. Ligado, Inmarsat and AST proceeded to mediation to attempt to resolve the disputes presented by Inmarsat's objection to the AST Transaction Motion.

17. Following months of hard-fought, arms'-length mediation, the parties (*i.e.*, Ligado, Inmarsat and AST) entered into the Mediated Agreement, which settled and resolved Inmarsat's objection to the AST Transaction Motion. On June 23, 2025, following a hearing, the Court entered the Mediation Order approving the AST Transaction and the Mediated Agreement and authorizing Ligado to enter into the definitive documents governing the AST Transaction (the "**Definitive Documents**").[3] The Mediation Order provides that the "Mediated Agreement is approved in its

---

[3] One Definitive Document is the *Strategic Collaboration and Spectrum Usage Agreement*, between Debtor Ligado Networks LLC and Spectrum USA I, LLC (an affiliate of AST), dated as of March 22, 2025 (Dkt. No. 352-3). The Collaboration Agreement provides the framework for AST's use of certain L-Band Spectrum licensed to Ligado by the FCC. Exhibit 6 to the Collaboration Agreement ("**Exhibit 6**") provides the specific terms, conditions, and operational and technical requirements that AST must comply with concerning Ligado's L-Band Spectrum in order to ensure that Ligado remains in compliance with the Amended Inmarsat Cooperation Agreement between Ligado and Inmarsat. *See generally* Dkt. No. 896 at ¶¶ 6, 14 & Ex. C (Inmarsat-AST Agreement).

entirety and the parties agree to perform in accordance with and be bound by the terms set forth

therein." Ex. B (Mediation Order) ¶ 6. This Court retained jurisdiction to enforce the Mediation

Order, "including enforcement of the Mediated Agreement." *Id.* ¶ 13.

18.     The Mediated Agreement provides, among other things, that AST would fund $535

million to Inmarsat in three separate installments. The first installment of $420 million was timely

paid by AST in October 2025.

19.     Section 2 of the Mediated Agreement governs the instant dispute. The third

paragraph of Section 2 states:

> Provided the Applications [to the Regulatory Authorities] meet the **two conditions
> in the first paragraph of this section**, Inmarsat (on behalf of Inmarsat Global Ltd.
> and its affiliates) shall affirmatively support before the FCC and ISED the initial
> regulatory applications seeking authority to operate the Proposed NGSO System
> within the L-Band in North America.

Ex. B (Mediated Agreement) § 2 (emphasis added). This Regulatory Support Obligation requires

Inmarsat to, among other things, "fil[e] Comments and Reply Comments in support of the

application(s) at the FCC and ISED" and "refrain[] from taking any public or private action

contrary to any of" its Regulatory Support Obligations. *Id.*

20.     The "two conditions in the first paragraph" of Section 2 of the Mediated Agreement

require only that the initial applications to the Regulatory Authorities:

> (i) state that the operations of all AST and Ligado spacecraft, individually and taken
> as a whole, and regardless of orbit, will be consistent with and remain within the
> technical, geographic and other limitations in the Amended Inmarsat Cooperation
> Agreement and Ligado's other coordination agreements with various parties; and

> (ii) request that the FCC and ISED recognize that the operations of the Proposed
> NGSO System have been coordinated subject to the terms of the Amended Inmarsat
> Cooperation Agreement and the Inmarsat-AST Agreement and give effect to such
> agreements by licensing the Proposed NGSO System to operate in accordance with
> the terms of such agreements.

*Id.* Footnote 8 of the Mediated Agreement expressly states that "the applications would not be

more granular in respect of prong (ii)" above. *Id.* at n.8.

21.     As shown below, the FCC Application clearly satisfies these requirements.

**II.     The Prior Motions to Enforce and Resulting Inmarsat-AST Agreement.**

22.     The Mediated Agreement contemplated that AST and Inmarsat would execute a separate binding agreement, *i.e.*, the Inmarsat-AST Agreement, to give each other "the right to enforce directly against each other the commitments made to each other in Sections 2-3 of" the Mediated Agreement "in connection with any" so-called "Coordination Breach." Ex. B (Mediated Agreement) n.5. The Mediated Agreement provides further that Ligado and Inmarsat would execute the Amended Inmarsat Cooperation Agreement, and that Sections 2–4 of the Mediated Agreement were "to be incorporated" therein. *Id.* at n.6. Ligado, Inmarsat and AST negotiated the terms of the Inmarsat-AST Agreement and Amended Inmarsat Cooperation Agreement for months, but Inmarsat sought rights for itself and to impose obligations on AST that went far beyond what had been agreed to in the Mediated Agreement. Thus, the parties reached an impasse.

23.     On August 14, 2025, Inmarsat filed a motion (Dkt. No. 825) (the "**Inmarsat Motion to Enforce**") with the Court seeking the entry of an order to enforce the Mediated Agreement by incorporating new, anticompetitive language into the Inmarsat-AST Agreement. On August 14, 2025, Ligado filed a cross motion (Dkt. No. 827) (the "**Ligado Motion to Enforce**") to enforce the Mediated Agreement and compel Inmarsat to incorporate the express language of (i) Sections 2-4 of the Mediated Agreement into the Amended Inmarsat Cooperation Agreement, and (ii) Sections 2-3 of the Mediated Agreement into the Inmarsat-AST Agreement. On August 27, 2025, AST filed an objection to the Inmarsat Motion to Enforce and a joinder to the Ligado Motion to Enforce. (Dkt. No. 896) (the "**AST Objection and Joinder**").

24.     At the August 29 Hearing to consider the Inmarsat Motion to Enforce and the Ligado Motion to Enforce, both AST and Ligado argued that Inmarsat should be held to its

obligation to incorporate the specific provisions from the Mediated Agreement, *verbatim*, into its respective agreements with Ligado and AST. *See* Ex. D (August 29 Hearing Tr.) at 7:25-8:4; 12:21-25. By contrast, Inmarsat wanted more than it had negotiated for in the Mediated Agreement and more than it was entitled to. *See id.* at 28:5-8.

25.     Ultimately, the Court determined that the "parties are directed to include the language that is specifically identified in the [Mediated Agreement]" into the Amended Inmarsat Coordination Agreement and the Inmarsat-AST Agreement, as applicable. *Id.* at 30:8-9. Critically, the Court also suggested and observed that **"stay relief"** would be required to assert claims based on the Mediated Agreement outside of this Court. *Id.* at 28:16-23.

26.     On September 2, 2025, the Court entered the Coordination Order, memorializing its decision at the August 29 Hearing. *See* Dkt. No. 940 ¶ 3 (ordering Ligado, Inmarsat and AST "to incorporate the specific language of" the Mediated Agreement "into the Amended Inmarsat Cooperation Agreement and the Inmarsat-AST Agreement, as applicable, unless otherwise mutually agreed by the parties"). In the Coordination Order, the Court "retain[ed] jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and/or enforcement of" that Order. *Id.* at ¶ 4.

27.     On September 21, 2025, AST and Inmarsat executed the Inmarsat-AST Agreement, incorporating the language of Sections 2-3 of the Mediated Agreement *verbatim*, and giving each other the right to enforce directly against each other certain commitments made to each other in Sections 2 and 3 of the Mediated Agreement. *See* Ex. C (Inmarsat-AST Agreement). On September 21, 2025, Ligado and Inmarsat executed the Amended Inmarsat Cooperation Agreement.

**III.    Plan Confirmation.**

28.     On September 29, 2025, the Court conducted the confirmation hearing with respect

to the Debtors' Plan and thereafter entered the Confirmation Order confirming the Plan. *See* Dkt. No. 1007. The AST Transaction is the cornerstone of the Plan and, naturally, requires approval by the Regulatory Authorities. Approval of the AST Transaction by the Regulatory Authorities is a condition precedent to the Plan's Effective Date. *See* Plan, Dkt. No. 1007-1 at Art. IX(A)(17).

## IV. The FCC Application.

29. On December 8, 2025, in accordance with the terms of the Mediation Order and the Mediated Agreement, Ligado filed the FCC Application. The FCC Application clearly "meet[s] the two conditions" set forth in Section 2 of the Mediated Agreement that are the sole conditions precedent triggering Inmarsat's Regulatory Support Obligations.

30. **First**, the FCC Application states that "[t]he operations of all AST and Ligado spacecraft, individually and taken as a whole, and regardless of orbit, will be consistent with and remain within the technical, geographic and other limitations in the Amended Inmarsat Cooperation Agreement and Ligado's other coordination agreements with various parties." Ex. E (FCC Application) at 12. This statement is a *verbatim* copy of the language required by Section 2 of the Mediated Agreement.

31. **Second**, in the FCC Application, Ligado "requests that the [Federal Communications] Commission recognize that the operations of the [Proposed NGSO System] have been coordinated subject to the terms of the Amended Inmarsat Cooperation Agreement and the Inmarsat-AST Agreement and give effect to such agreements by licensing [the Proposed NGSO System] in accordance with the terms of such agreements." *Id*. at 12. This statement also is a copy of the language required by Section 2 of the Mediated Agreement.

32. The FCC Application thus satisfies both conditions precedent to Inmarsat's Regulatory Support Obligations. Consequently, Inmarsat must "affirmatively support" the FCC Application and "refrain[] from taking any public or private action contrary to" that affirmative

obligation to support. Ex. B (Mediated Agreement) § 2.

## V.     Inmarsat Files The NY State Action.

33.     Despite the pendency of the automatic stay imposed on Inmarsat pursuant to Section 362 of the Bankruptcy Code, and this Court's retentions of jurisdiction in both the Mediation Order and the Coordination Order, Inmarsat thumbed its nose at this Court and filed the Complaint with the NY Court on Friday, December 19, 2025.  In the NY State Action, Inmarsat asserts that AST and Ligado have breached their obligations under the Mediated Agreement by not coordinating the operations of the Proposed NGSO System with Inmarsat. *See* Ex. A (Complaint) ¶¶ 62-64.  It is stunning that Inmarsat could make this utterly false statement given that the parties have already entered into multiple agreements providing for such coordination, including the Mediated Agreement, the Inmarsat-AST Agreement, the Amended Cooperation Agreement and Exhibit 6 to the Collaboration Agreement.

34.     Inmarsat also alleges in the NY State Action that the Mediated Agreement requires AST and Ligado to file the FCC Application jointly, *see id*. at ¶ 64, even though the Mediated Agreement imposes no obligation on AST to make the filing, *see* Ex. B (Mediated Agreement) § 2, and AST has affirmatively supported the filing.  *See* Ex. E (FCC Application) at 41. Based on its meritless assertions, Inmarsat seeks a declaration that the Proposed NGSO System has not been coordinated as required, an injunction requiring AST and Ligado to immediately cooperate with Inmarsat to coordinate the Proposed NGSO System, and damages to be determined at trial.  *See* Ex. A (Complaint) at Prayer for Relief.

35.     Remarkably, even though Inmarsat agreed in the Mediated Agreement to support the applications to the Regulatory Authorities, and even though the issues presently before this Court were addressed, determined and resolved previously pursuant to the September 2 Coordination Order, and even though Inmarsat accepted AST's $420 million without a peep as

bargained-for consideration for Inmarsat's support before the Regulatory Authorities, Inmarsat makes the **astonishing** statement—in direct violation of its obligation to refrain from taking any action contrary to the FCC Application—that it "intends to petition the FCC to deny the [FCC] [A]pplication." Ex. A (Complaint) ¶ 59. The NY State Action plainly and blatantly violates Inmarsat's Regulatory Support Obligations pursuant to the Mediated Agreement, the Inmarsat-AST Agreement, the Amended Inmarsat Cooperation Agreement, the Mediation Order, the Coordination Order, and the automatic stay imposed by Section 362 of the Bankruptcy Code. Therefore, on December 29, 2025, counsel for AST and counsel for Ligado separately informed counsel for Inmarsat that Inmarsat's filing of the Complaint constitutes a breach of Inmarsat's Regulatory Support Obligations, and demanded that Inmarsat immediately withdraw its Complaint and honor its Regulatory Support Obligations. To date, Inmarsat has not responded.

36.     Adding insult to injury, Inmarsat's improper attempt to thwart its contractual and Court-ordered Regulatory Support Obligations through the publicly filed NY State Action creates risk for the process before the Regulatory Authorities. AST has already paid Inmarsat $420 million in bargained-for consideration to avoid this risk. If Inmarsat were to oppose the FCC Application, as it says it intends to do, that risk would be heightened further. Inmarsat's conduct is plainly designed to impose roadblocks in the regulatory approval process and thus improperly jeopardizes the success of the AST Transaction and the consummation of the Plan.

## ARGUMENT

I.    **THE COURT SHOULD ENFORCE THE MEDIATED AGREEMENT AND ITS PRIOR ORDERS BY COMPELLING INMARSAT TO DISMISS THE NY STATE ACTION IMMEDIATELY, SUPPORT THE FCC APPLICATION AND CEASE INTERFERING WITH THE REGULATORY APPROVAL PROCESS.**

   A.    **AST and Ligado Have Fully Complied with the Requirements of the Mediated Agreement and Inmarsat Is Obligated To Support the FCC Application.**

37.     In exchange for payments of more than half a billion dollars ($420 million of which

Inmarsat has already received), Inmarsat agreed to support the FCC Application so long the FCC Application contains the two specific statements that the parties negotiated and agreed upon. *See supra* ¶¶ 19-21, 29-32. Because the FCC Application faithfully contains the negotiated and agreed upon language, Inmarsat is plainly and unambiguously required by the Mediated Agreement and Mediation Order to "affirmatively support" the FCC Application and "refrain from taking any public or private action" that is "contrary to" its affirmative-support obligation. Ex. B (Mediated Agreement) § 2. Undoubtedly, the NY State Action runs afoul of these obligations.

38.     As demonstrated above and as set forth in Appendix I hereto, the FCC Application contains the exact representations that are required by the Mediated Agreement to trigger Inmarsat's Regulatory Support Obligations to affirmatively support, and refrain from opposing, the FCC Application. *See* Ex. E (FCC Application) at 12; *see also* Appendix I. As a matter of both Delaware and New York black letter law, "a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." *Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562, 569 (NY Ct. App. 2002); *Holifield v. XRI Investment Holding LLC*, 304 A.3d 896, 924 (Del. 2023) ("When a contract is clear an unambiguous, the court will give effect to the plain meaning of the contract's terms and provisions").[4] Therefore, the Court should enforce the Mediated Agreement and compel Inmarsat to support the FCC Application and refrain from taking any step—either before the NY Court or the FCC—that is contrary to its Regulatory Support Obligations.

---

[4]     Inmarsat and Ligado have disputed whether New York law or Delaware law governs the Mediated Agreement (and, by extension, the Inmarsat-AST Agreement). *Compare* Inmarsat Motion to Enforce ¶ 48, n. 8 *with* Ligado Motion to Enforce ¶ 29. As shown above, the law governing interpretation of clear contractual language is the same in both states, obviating the need for a choice-of-law analysis.

**B.      Inmarsat Has Breached the Mediated Agreement, the Mediation Order and the Coordination Order.**

39.      By commencing the NY State Action, Inmarsat has breached its obligations to refrain from acting in a manner contrary to its Regulatory Support Obligations.  Indeed, the Complaint includes multiple statements by Inmarsat that it "intends to oppose" the FCC Application and it "intends to petition the FCC to deny" the FCC Application, even though AST and Ligado plainly have met the requirements to trigger Inmarsat's Regulatory Support Obligations. Ex. A (Complaint) ¶¶ 7, 59. Moreover, the entire point of the NY State Action is to obtain a declaration that, notwithstanding AST and Ligado's satisfaction of all conditions precedent to Inmarsat's Regulatory Support Obligations, Inmarsat has no obligation to support the FCC Application unless and until "Ligado and AST . . . cooperate with . . . Inmarsat to coordinate" the operations of the Proposed NGSO System, apparently to Inmarsat's subjective satisfaction. *See* Ex. A (Complaint) at Prayer for Relief.  Inmarsat even goes so far as to accuse Ligado of lying in the FCC Application, *see id.* at ¶¶ 6, 53-54, 58, an action plainly inconsistent with Inmarsat's Regulatory Support Obligations.

**C.      Inmarsat Has Not and Cannot Provide Any Justification for Its Failure To Honor Its Contractual Commitments.**

40.      Inmarsat offers two excuses in the Complaint as to why it should not be obligated to support the FCC Application. Neither has any basis in the Mediated Agreement or in any other agreement that binds AST or Ligado.

41.      ***First***, Inmarsat asserts that AST and Ligado have not coordinated the operations of the Proposed NGSO System to Inmarsat's subjective satisfaction. *See* Ex. A (Complaint) ¶ 6 ("[T]he application was filed before any coordination was agreed."); *id*. at ¶ 63 ("The parties have not coordinated the Proposed NGSO System"). However, the Mediated Agreement requires only that the FCC Application "request that the FCC recognize" that the Proposed NGSO System is

coordinated "*subject to the terms of the Amended Inmarsat Cooperation Agreement and the Inmarsat-AST Agreement*." Ex. B (Mediated Agreement) § 2 (emphasis added). It does not require the FCC Application to state that the Proposed NGSO System is coordinated beyond the terms of those two agreements. By entering into the AST-Inmarsat Agreement and the Amended Inmarsat Cooperation Agreement, AST and Ligado have plainly satisfied any obligations they have under the Mediated Agreement to coordinate the operations of the Proposed NGSO System. *See*, *e.g.*, Ex. B (Mediated Agreement) § 3 (providing mechanisms for the coordination of the geographic, technical and power limitations of the Proposed NGSO System).[5] No further coordination is required by the Mediated Agreement. In addition, footnote 8 of the Mediated Agreement states that "the applications would not be more granular in respect of" the required statement to the Regulatory Authorities about the coordination of the Proposed NGSO System, showing that no more coordination than the agreements already entered by AST, Ligado and Inmarsat is necessary to coordinate for purpose of the required representation to the Regulatory Authorities. Ex. B (Mediated Agreement) at n.8.[6]

---

[5]     Moreover, as Inmarsat knows, AST and Ligado agreed to Exhibit 6 to the Collaboration Agreement before entering into the Mediated Agreement with Inmarsat. Exhibit 6 provides the specific terms, conditions and operational and technical requirements that AST must comply with concerning Ligado's L-Band Spectrum to ensure that Ligado remains in compliance with the Amended Inmarsat Cooperation Agreement *See supra* n.3.

[6]     Even if the plain language of the Mediated Agreement did not negate Inmarsat's contention (it does), the structure of the Mediated Agreement flatly undermines Inmarsat's claim here. Inmarsat, AST and Ligado negotiated separate and extensive mechanisms for a highly expedited alternative dispute-resolution process, which allows for, *inter alia*, expedited injunctive relief in the event of an alleged coordination breach once the Proposed NGSO System is operating. *See* Ex. B (Mediated Agreement) § 3. The inclusion of extensive provisions for resolving coordination disputes once the Proposed NGSO System is operational clearly shows that the Mediated Agreement does not contemplate the possibility of such coordination breach at the time of seeking regulatory approval, when the Proposed NGSO System necessarily is not yet operational. *See Glencore Ltd. v. Degussa Engineered Carbons L.P.*, 848 F. Supp. 2d 410, 433 (S.D.N.Y. 2012) (it "is black-letter law" in "New York" that "courts are to construe contract terms so as, where

42.     *Second*, Inmarsat claims that the Mediated Agreement "requires that both AST and Ligado would jointly file the application, not Ligado alone." Ex. A (Complaint) ¶ 64. Not so.  The Mediated Agreement contemplates that "applications" will be filed with the Regulatory Authorities, but requires only a single application to be filed with each regulator, and is deafeningly silent as to who must file each application. *See* Ex. B (Mediated Agreement) § 2 & n.7 (referencing FCC and ISED "applications" without specifying whether AST or Ligado must file the application with each regulator).  In any event, the point is of no moment because AST has filed a letter with the FCC publicly supporting the FCC Application, stating that AST will be "partnering with Ligado" and "working with the [FCC]" to provide broadband connectivity using the L-Band Spectrum. *See* Ex. E (FCC Application) at 41.

43.     In short, with respect to Inmarsat's contentions that AST was required to file the FCC Application jointly with Ligado, and that AST and Ligado have not sufficiently coordinated the Proposed NGSO System, Inmarsat may not run away from this Court to the NY Court with the hope that the NY Court will read additional requirements into the Mediated Agreement that, in retrospect, Inmarsat wishes were there.  *See 2138747 Ontario, Inc. v. Samsung C & T Corp.*, 31 N.Y.3d 372, 381 (NY Ct. App. 2018) ("where a contract was negotiated between sophisticated, counseled business people," courts "should be especially reluctant to interpret an agreement as impliedly stating something which the parties have neglected to specifically include") (internal quotations omitted); *Nemec v. Shrader*, 991 A.2d 1120, 1126 (Del. 2010) (courts "will only imply contract terms" when a party has acted "arbitrarily or unreasonably" and will "not rewrite the contract to appease a party who later wishes to write a contract he now believes to have been a bad

---

possible, to give rational meaning to all provisions in the document"); *Maryland Casualty Co. v. Grigoli Enters.*, 2014 WL 1022356, at *3 (D. Del. Mar. 13, 2014) (the "court must read the insurance contract as a whole, give effect to all provisions therein").

deal").

44.     Once the Proposed NGSO System is operational, if Inmarsat believes that AST or Ligado are not honoring the coordination commitments they made in the Inmarsat-AST Agreement or the Amended Cooperation Agreement, then Inmarsat will be able to seek a highly expedited injunction in accordance with the procedures set forth in Section 3 of the Mediated Agreement, as this Court observed during the August 29 Hearing. *See* Ex. D (August 29 Hearing Tr.) at 30:10-14. But Inmarsat is not entitled to accept $420 million from AST and then seek to evade the Mediation Order and the Coordination Order, as well as breach its own Regulatory Support Obligations based on wild allegations that AST and Ligado have failed to satisfy obligations that are found nowhere in the Mediated Agreement.

### D.     AST Is Entitled to an Order Enforcing the Mediation Order and Mediated Agreement Against Inmarsat.

45.     AST respectfully seeks specific performance compelling Inmarsat's compliance with the Mediated Agreement, the Mediation Order and the Coordination Order.[7] AST is entitled to receive from Inmarsat the regulatory support that it bargained-for and paid for, as well as assurances that Inmarsat will not take any step or action of any kind or nature to interfere with the FCC Application or the regulatory approval process. This Motion presents the **third time** that this Court has been called upon, as a result of Inmarsat's conduct, to deal with Inmarsat's Regulatory Support Obligations. For at least the following reasons, specific performance is warranted.

46.     ***First***, the Mediated Agreement was approved by the Court pursuant to the Mediation Order.  Both the Mediation Order and the Coordination Order provide that this Court retains jurisdiction "with respect to all matters arising from or related to the implementation,

---

[7]     AST reserves all rights and remedies of any kind or nature with respect to Inmarsat.

interpretation, and enforcement of this Order, including enforcement of the Mediated Agreement." *See* Ex. B Mediation Order ¶ 13. Inmarsat itself recognizes that the Court retains jurisdiction with respect to the Mediation Order and Mediated Agreement and has previously moved the Court for relief under the same theory. *See* Inmarsat Motion to Enforce ¶ 36. AST asks the Court to uphold the Mediation Order and the Coordination Order by compelling Inmarsat to comply with its Regulatory Support Obligations set forth in the Mediated Agreement.

47. **Second**, the Mediated Agreement and, by extension, the Mediation Order and the Coordination Order, expressly contemplates that the parties are "entitled to seek specific performance of . . . Inmarsat's regulatory support obligations." Ex. B (Mediated Agreement) § 5.

48. **Third**, AST is entitled to specific performance as a matter of both Delaware and New York common law. Under Delaware law, "a party seeking specific performance must establish that (1) a valid, enforceable[] agreement exists between the parties; (2) the party seeking specific performance was ready, willing, and able to perform under the terms of the agreement; and (3) a balancing of the equities favors an order of specific performance." *Level 4 Yoga, LLC v. CorePower Yoga, LLC*, 2022 WL 601862, at *30 (Del. Ch. Mar. 1, 2022).

49. AST has satisfied all these requirements: (i) the Mediated Agreement, as ordered by the Mediation Order, is a valid, binding contract; (ii) AST has performed its obligations by timely funding $420 million of payments to Inmarsat and entering into the Inmarsat-AST Agreement; and (iii) a balancing of the equities heavily favors AST.

50. The equities weigh heavily in AST's favor because Inmarsat has already reaped the substantial benefits of AST's performance—nearly half a billion dollars—while withholding the unique and valuable consideration (regulatory support) that it promised to extend in return. And, a court of equity is "in no position to relieve [a party] of their now regretted business judgment."

*Szambelak v. Tsipouras*, 2007 WL 4179315, at *8 (Del. Ch. Nov. 19, 2007). Inmarsat's failure to deliver its unique, irreplaceable and bargained-for regulatory support not only risks delaying or potentially thwarting the approval process for AST to acquire access to Ligado's FCC-licensed L-Band Spectrum (a finite resource necessary to develop AST's business), but also risks loss of the entire AST Transaction, the failure of the Debtors' Plan and the destruction of a "unique acquisition opportunity" that "cannot be quantified." *True N. Commc'ns, Inc. v. Publicis, S.A.*, 711 A.2d 34, 44-45 (Del. Ch. 1997), *aff'd*, 705 A.2d 244 (Del. 1997).

51.     AST is similarly entitled to specific performance if New York law applies. Under New York law, "a party can be compelled to perform its contractual obligations if (1) there is a valid contract; (2) plaintiff has substantially performed under the contract and is willing and able to perform its remaining obligations; (3) defendant is able to perform its obligations; and (4) plaintiff has no adequate remedy at law." *La Mirada Prods. Co. v. Wassall PLC*, 823 F. Supp. 138, 140 (S.D.N.Y. 1993). For the reasons above, AST has satisfied the first two requirements. In addition, Inmarsat is more than capable of (i) dismissing the NY State Action with prejudice, *see* Rule 3217, New York Civil Procedure Laws and Rules, (ii) supporting the FCC Application and (iii) ceasing any activity that presents a roadblock or potential roadblock to regulatory approval of the AST Transaction. And, finally, as set forth above and below, AST has no adequate remedy at law if Inmarsat continues to fail to perform.

52.     Under New York and Delaware law, a legal remedy is inadequate if "the assessment of monetary damages is impractical or too speculative," and "unusual goods or services involved are difficult to value." *La Mirada Prods. Co*, 823 F. Supp. at 141. An award of damages "cannot be accurately ascertained where the subject matter of an agreement is an asset that is unique or one such that its equivalent cannot be purchased on the open market." *Allegheny Energy, Inc. v. DQE,*

*Inc.*, 171 F.3d 153, 160 (3d Cir. 1999). Here, the Mediated Agreement is not a contract for fungible goods that can be purchased on the open market. It is a contract for Inmarsat's unique and irreplaceable support in obtaining regulatory approval for a one-of-a-kind AST Transaction by which AST would gain the rights to use certain of the L-Band Spectrum licensed to Ligado by the FCC. Yet the entire deal will fall away, and there will be no confirmed Plan, without approval of the Regulatory Authorities. It is precisely for this reason that AST and Ligado negotiated for (and AST paid substantial money for) Inmarsat's regulatory support. Thus, as the Third Circuit recognized in *Allegheny Energy*, specific performance is warranted because the AST Transaction would allow Ligado and AST to work together in a "unique fashion" and damages would be "difficult to value." *Allegheny Energy* at 154 (internal quotations omitted). The harm from Inmarsat's breach is the potential loss of the entire AST Transaction, the subsequent failure of the Debtors' Plan, and the destruction of a "unique acquisition opportunity" that "cannot be quantified." *True N. Commc'ns, Inc.*, 711 A.2d at 44-45. Accordingly, specific performance is warranted.

## II. INMARSAT'S VIOLATION OF THE AUTOMATIC STAY IS A SEPARATE BASIS REQUIRING DISMISSAL OF THE NY STATE ACTION.

53. Estate property remains protected by the automatic stay after plan confirmation and up through the effective date if, as here, a plan and confirmation order so provide. Section 362(a)(3) of the Bankruptcy Code states that the filing of a bankruptcy petition "operates as a stay, applicable to all entities, of . . . any act . . . to exercise control over property of the estate." And, critically, section 362(c)(1) makes clear that such stay "continues until such property is no longer property of the estate." 11 U.S.C. § 362. In addition, Section 1141(b) of the Bankruptcy Code dictates that "except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor." 11 U.S.C. § 1141(b).

Here, the Plan provides that Ligado's property remains property of the estate until the Effective Date, which has not yet occurred. *See* Plan Article V, ¶ E; Confirmation Order, ¶ 10 ("*[O]n the Effective Date*, pursuant to sections 1141(b) and (c) . . . *all property in each Estate . . . shall vest in the Reorganized Debtors*") (emphasis added). Consequently, until the Effective Date, property of the Debtors' estate remains protected by the stay. *See In re Venoco LLC*, 998 F.3d 94, 107 n.14 (3d Cir. 2021) (where, as here, a plan provides that assets vest on the effective date, not the confirmation date, "the relevant date . . . is the effective date, not the confirmation date.").

54.  Thus, the NY State Action, which was commenced after confirmation but before the Effective Date, was filed at a time when the Debtors' estates remain protected by the automatic stay.  In addition, Inmarsat's Complaint, which seeks an injunction to "compel[] Ligado and AST to comply with their obligations" pursuant to the Mediated Agreement, along with a "judicial declaration that the L-Band satellite operations of Ligado and AST are not coordinated under the Cooperation Agreement," Ex. A (Complaint) at Prayer for Relief, is precisely the sort of action the automatic stay prohibits.  The Debtors' L-Band Spectrum as well as the Mediated Agreement and Amended Inmarsat Cooperation Agreement are core assets of the estate, essential to the consummation of the AST Transaction and the Plan itself.  An action to declare rights under and compel performance pursuant to those Agreements is a textbook prohibited "act to . . . exercise control over property of the estate." 11 U.S.C. § 362(a)(3); *see also In re W.R. Grace & Co.*, 475 B.R. 34, 147-48 (D. Del. 2012) (stay is broad enough to bar post-confirmation action that, as here, would "inevitably have an adverse impact on the property of the bankruptcy estate.").  Indeed, the Court itself has suggested during the August 29 Hearing that Inmarsat would need stay relief prior to bringing claims outside the of this Court that are based on the Mediated Agreement. *See* Ex. D

(August 29 Hearing Tr.) at 28:21-22.[8]

55.     Furthermore, the automatic stay's protections are broad enough to shield not only Ligado, but also non-debtor third parties like AST where, as here, an action against the non-debtor is essentially and action against the debtor and will have an immediate and adverse impact on the debtor's estate and its ability to reorganize. *In re Continental Airlines*, 177 B.R. 475, 479 (D. Del. 1993) (the automatic stay "is properly extended to actions against non-debtors where an identity of interest exists between the debtor and non-debtor defendant such that the debtor is the real party defendant and the litigation will directly affect the debtor and, more particularly, the debtor's assets or its ability to pursue a successful plan of reorganization under Chapter 11."). Here, AST is funding the vast majority of the payments to Inmarsat pursuant to the AST Transaction which is the undisputed centerpiece of the Debtors' Plan.  Thus, the stay is "properly extended" to AST because there is "an identity of interest" between Ligado and AST in the NY State Action. *Continental Airlines*, 177 B.R. at 479.

[*remainder of page intentionally left blank*]

---

[8]     Because the NY State Action was brought in violation of the automatic stay, it is void *ab initio*.  *See, e.g., Maritime Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1206 (3d Cir. 1991) ("Absent relief from the stay, judicial actions and proceedings against the debtor are void *ab initio*"); *Kalb v. Feuerstein*, 308 U.S. 433, 438 (1940) ("[T]he action of the Walworth County Court was not merely erroneous but was beyond its power, void, and subject to collateral attack.").

## **CONCLUSION**

56.    For the foregoing reasons, AST respectfully submits that this Court should enter the Proposed Order attached hereto as **Exhibit F**, (i) requiring Inmarsat to dismiss the NY State Action with prejudice, (ii) compelling Inmarsat to comply with its obligations under the Mediated Agreement to affirmatively support, and refrain from opposing, the FCC Application and (iii) granting further relief as may be just and proper.

Dated: January 2, 2026
Wilmington, Delaware

*/s/ Jeremy W. Ryan*
Jeremy W. Ryan (Bar No. 4057)
Katelin A. Morales (Bar No. 6683)
Sameen Rizvi (Bar No. 6902)
**POTTER ANDERSON & CORROON LLP**
1313 N. Market Street, 6th Floor
Wilmington, DE 19801
Telephone:     (302) 984-6000
Facsimile:     (302) 658-1192
Email:         jryan@potteranderson.com
               kmorales@potteranderson.com
               srizvi@potteranderson.com

-and-

Madlyn Gleich Primoff (admitted *pro hac vice*)
Henry Hutten (admitted *pro hac vice*)
Alexander Rich (admitted *pro hac vice*)
Sarah Margolis (admitted *pro hac vice*)
**FRESHFIELDS US LLP**
3 World Trade Center
174 Greenwich Street, 51st Floor
New York, New York 10007
Telephone:     (212) 277-4000
Facsimile:     (212) 277-4001
Email:         madlyn.primoff@freshfields.com
               henry.hutten@freshfields.com
               alexander.rich@freshfields.com
               sarah.margolis@freshfields.com

*Counsel for AST & Science LLC*

**<u>EXHIBIT F</u>**

**Proposed Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| LIGADO NETWORKS, LLC *et al.*,[1] | Case No. 25-10006 (TMH) |
| Debtors. | (Jointly Administered) |
| | Re Dkt. No. ___ |

## ORDER (I) ENFORCING THE MEDIATED AGREEMENT AND RELATED ORDERS OF THIS COURT AGAINST INMARSAT GLOBAL LIMITED AND (II) GRANTING RELATED RELIEF

Upon the Emergency Motion (the "**Motion**")[2] of AST For an Order (the "**Order**") (I) Enforcing the Mediate Agreement and Related Orders of this Court Against Inmarsat Global Limited and (II) Granting Relate Relief; and this Court having reviewed the Motion; and this Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and that this Court may enter an order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Ligado Networks LLC (3801); ATC Technologies, LLC (N/A); Ligado Networks (Canada) Inc. (N/A); Ligado Networks Build LLC (N/A); Ligado Networks Corp. (N/A); Ligado Networks Finance LLC (N/A); Ligado Networks Holdings (Canada) Inc. (N/A); Ligado Networks Inc. of Virginia (9725); Ligado Networks Subsidiary LLC (N/A); One Dot Six LLC (8763); and One Dot Six TVCC LLC (N/A). The Debtors' headquarters is located at: 10802 Parkridge Boulevard, Reston, Virginia 20191.

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the Motion.

appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and upon the record herein; and after due deliberation thereon; and this Court having determined that there is good and sufficient cause for the relief granted in this order:

**IT IS HEREBY ORDERED THAT:[3]**

1. The Motion is granted as set forth herein.

2. The FCC Application satisfies the conditions precedent, set forth in paragraph 1 of Section 2 of the Mediated Agreement, to Inmarsat's obligation to publicly support the FCC Application and refrain from taking actions contrary to its support obligation.

3. The NY State Action (i) violates Inmarsat's obligation under Section 2 of the Mediated Agreement to publicly support the FCC Application; and (ii) violates the automatic stay and is therefore void *ab initio*.

4. AST is entitled to an order requiring Inmarsat to perform its obligations pursuant to the Mediated Agreement and Inmarsat-AST Agreement.

5. Promptly following entry of this Order, Inmarsat shall:

   a. File a copy of this Order in the NY State Action;

   b. Voluntarily dismiss the NY State Action, with prejudice;

   c. Retract any objections to the FCC Application it has filed with the FCC or any other regulatory body, as well as any statements to the FCC that did not support the FCC Application; and

   d. affirmatively support the FCC Application, including, without limitation, by filing comments and reply comments in support of the FCC Application with the FCC and by responding to such requests or inquiries from Ofcom regarding the coordination within the L-Band Spectrum.

6. Within one business day of performing any action described in the preceding

---

[3]    To the extent any of the following constitute findings of fact, they are adopted as such. To the extent any of the following constitute conclusions of law, they are adopted as such.

paragraph of this Order, Inmarsat shall file a notice on the docket of these Chapter 11 cases confirming that it has taken the such action set forth in the preceding paragraph of this Order.

7.  Inmarsat is permanently enjoined from taking any public or private action contrary to its obligations to support the FCC Application and any other initial application made by AST and/or Ligado to the FCC or ISED in respect of the Proposed NGSO System.

8.  This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.