# Exhibit 15



September 9, 2025

Ms. Marlene H. Dortch
Secretary
Federal Communications Commission
45 L Street, NE
Washington, DC 20554

> Re: Request for Confidential Treatment; Letter of Viasat, Inc.; Application of Planet Labs PBC for Modification of License, ICFS File No. SAT-MOD-20250527-00129

Dear Ms. Dortch:

Viasat, Inc. ("Viasat") submits the attached confidential version of the letter (the "Letter") that it is filing today regarding the above-referenced application (the "Application").

The Letter contains information relating to the coordination of satellite systems pursuant to procedures codified in the International Telecommunication Union's Radio Regulations—including information from documents "prepared in connection with coordination, notification, and recording of frequency assignments and Plan modifications, including . . . documents and correspondence prepared in connection with operator-to-operator arrangements."[1] Portions of this submission marked as confidential accordingly fall within the categories of materials not routinely available for public inspection and must be accepted by the Commission on a confidential basis pursuant to Section 0.457(d)(1)(vii)(B) of the Commission's rules, and 5 U.S.C. § 552(b)(4).

In addition, portions of this submission marked as confidential relate to commercially sensitive information regarding the technical specifications of the networks at issue and terms of coordination agreements negotiated by the parties, and thus fall within Exemption 4 of the Freedom of Information Act ("FOIA") and are entitled to confidential treatment under the Commission's rules. *See* 5 U.S.C. § 552(b)(4); 47 C.F.R. § 0.457(d).[2]

---

[1] 47 C.F.R. § 0.457(d)(1)(vii)(B).

[2] To the extent that the terms of the parties' coordination agreement constitute material "prepared in connection with coordination, notification, and recording of frequency assignments and Plan modifications, including . . . documents and correspondence prepared in connection with operator-to-operator arrangements," 47 C.F.R. § 0.457(d)(1)(vii)(B), that information falls within

Accordingly, Viasat respectfully requests that the Commission withhold from public inspection, and accord confidential treatment to, the enclosed unredacted version of the submission, pursuant to FOIA and Sections 0.457(d) and 0.459 of the Commission's rules, 5 U.S.C. § 552(b); 47 C.F.R. §§ 0.457(d), 0.459.

Viasat separately is filing today with the Commission a redacted version of the filing from which the confidential portions have been removed. That redacted version is available for public inspection.

With respect to the specific factors set forth in Section 0.459(b) of the Commission's rules, 47 C.F.R. § 0.459(b), Viasat provides the following information:

1. **Identification of Specific Information for Which Confidential Treatment Is Sought (47 C.F.R. § 0.459(b)(1)).** Viasat respectfully requests that the Commission withhold from public inspection, and accord confidential treatment to, the information marked as confidential—using the signals {{BEGIN CONFIDENTIAL}} and {{END CONFIDENTIAL}}—in the publicly filed, unredacted version of the Letter (the "Confidential Material").

2. **Description of Circumstances Giving Rise to the Submission (47 C.F.R. § 0.459(b)(2)).** The Confidential Material is being filed voluntarily in connection with the Letter concerning the Application.

3. **Explanation of the Degree to Which the Information Is Commercial or Financial, or Contains a Trade Secret, or Is Privileged (47 C.F.R. § 0.459(b)(3)).** The Confidential Material relates to the coordination terms for satellite networks and contains sensitive commercial information that would customarily be guarded from competitors. Notably, the Commission has recognized the "commercially sensitive nature of coordination of satellite systems . . . ." *See Amendment of Part 0 of the Commission's Rules Regarding Public Information, the Inspection of Records, and Implementing the Freedom of Information Act*, Order, 24 FCC Rcd 6904 ¶ 13 (2008). Accordingly, the Commission has made clear that documents prepared in connection with coordination, including "documents and correspondence prepared in connection with operator-to-operator arrangements," are privileged and confidential, falling within the scope of Exemption 4 to FOIA. 47 C.F.R. § 0.457(d)(1)(vii). In addition, the Commission has found that "information about work performed for the purpose of conducting a business's commercial operations," to which the Confidential Material pertains, is competitively sensitive information "that the provider would not customarily release to the public," and therefore needs to be protected. *Southern Company Request for Waiver of Section 90.629 of the Commission's Rules*, 14 FCC Rcd 1851, 1860 (1998) (citing *Public Citizen Health Research Group v. FDA*, 704 F.2d 1280, 1290 (D.C. Cir. 1983)). Insight into the commercial terms that the parties have negotiated in satellite coordination agreements would provide competitors or future contracting parties with an advantage in present or future negotiations or dealings with Viasat. As a result, public disclosure of this

_____

the categories of materials not routinely available for public inspection and must be accepted by the Commission on a confidential basis pursuant to 5 U.S.C. § 552(b)(4).

information would place Viasat at a competitive disadvantage vis-a-vis other competitors and in future coordination negotiations, and could damage Viasat's position in the marketplace.

4. **Explanation of the Degree to Which the Information Concerns a Service That Is Subject to Competition (47 C.F.R. § 0.459(b)(4)).** The Confidential Material contains certain terms of international coordination and commercial agreements, as well as operational and technical parameters of the satellite networks at issue. The satellite networks at issue provide broadband services, which are subject to vigorous competition from numerous other existing and potential providers offering such services over satellite, wireline, and terrestrial wireless technologies.

5. **Explanation of How Disclosure of the Information Could Result in Substantial Competitive Harm (47 C.F.R. § 0.459(b)(5)).** As noted above, a number of service providers, including satellite providers, compete or potentially compete with Viasat. If Viasat's competitors were to obtain access to the Confidential Material, they could use such information to improve their competitive positions vis-à-vis Viasat. The parties have extensively negotiated the terms of the coordination agreement at issue, including the specific technical and operational obligations of each party. Disclosure of this information could harm Viasat or the other party in future coordination negotiations. If competitors were to obtain access to the Confidential Material, competitors could unfairly benefit by using the commercial terms as the basis for negotiating their own satellite coordination agreements.

6. **Identification of Any Measures Taken by the Submitting Party To Prevent Unauthorized Disclosure (47 C.F.R. § 0.459(b)(6)).** The Confidential Material is not normally distributed, circulated, provided, or otherwise available to any party outside of Viasat absent agreement to be bound by nondisclosure undertakings.

7. **Identification of Whether the Information Is Available to the Public and the Extent of Any Previous Disclosure of the Information to Third Parties (47 C.F.R. § 0.459(b)(7)).** The Confidential Material is not available to the public. As noted above, third parties that have or need access to the information are bound by nondisclosure undertakings.

8. **Justification of the Period During Which the Submitting Party Asserts That Material Should Not Be Available for Public Disclosure (47 C.F.R. § 0.459(b)(8)).** Viasat requests that the Confidential Material be treated as confidential indefinitely. The technical information and commercial terms included in the Confidential Material discuss plans for existing satellites that will be operational for many years, as well as future satellites, and thus would continue to provide insight into Viasat's technologies, technical operations, and negotiating strategies well into the future.

9. **Other Information That Viasat Believes May Be Useful in Assessing Whether Its Request for Confidentiality Should Be Granted (47 C.F.R. § 0.459(b)(9)).** As discussed above, the commercial information and coordination parameters of the type included in the Confidential Material are competitively sensitive information that needs

to be protected.  In similar contexts, the Commission has adhered to a policy of not authorizing the disclosure of confidential information on the mere chance that it might be helpful to a third party.  Rather, the Commission insists on a showing that the information is a *necessary* link in a chain of evidence that will resolve an issue before the Commission.  *See Examination of Current Policy Concerning the Treatment of Confidential Information Submitted to the Commission*, Report and Order, 13 FCC Rcd 24816 ¶ 8 (1998).  Further, the Confidential Material includes sensitive commercial information that squarely falls within Exemption 4 to FOIA, insofar as this information relates to satellite system coordination and sensitive business negotiations and is (i) commercial or financial in nature; (ii) obtained by a person outside government; and (iii) privileged and confidential.  *See* 47 C.F.R. § 0.457(d)(1)(vii); *Washington Post Co. v. U.S. Department of Health and Human Services*, 690 F.2d 525 (D.C. Cir. 1982).  Where, as here, a party provides to the Commission, "on a voluntary basis," information "that would customarily not be released to the public by the person from whom it was obtained," such information is "categorical[ly]" protected from disclosure.  *Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871, 879 (D.C. Cir. 1992) (*en banc*).

For these reasons, Viasat respectfully requests that the Commission withhold from public inspection, and accord confidential treatment to, the enclosed Letter.  Please contact the undersigned should you have any questions regarding this submission.

Respectfully submitted,

/s/

Jarrett S. Taubman
VP & Deputy Chief Government Affairs and
Regulatory Officer
VIASAT, INC.

cc:   Jennifer A. Manner, AST & Science, LLC (redacted version)
      Vernon G. Ross, Ligado Networks LLC (redacted version)
      Danielle Pineres, Planet Labs PBC (redacted version)



**VIA ELECTRONIC FILING**

September 9, 2025

Ms. Marlene H. Dortch
Secretary
Federal Communications Commission
45 L Street, NE
Washington, DC 20554

Re:     Application of Planet Labs PBC for Modification of License, ICFS File No. SAT-MOD-20250527-00129

Dear Ms. Dortch:

Viasat submits this letter in response to the Joint Comments filed by AST & Science, LLC ("AST") and Ligado Networks LLC ("Ligado") on August 25, 2025,[1] with respect to the above-referenced application of Planet Labs PBC ("Planet").  In its application, Planet seeks to modify its existing license to permit certain of its authorized non-geostationary orbit ("NGSO") satellites to communicate with Inmarsat satellites in the L band.[2]

Planet's application acknowledges that its proposed L-band operations would be nonconforming in nature and therefore would necessarily proceed on an "unprotected and . . . non-harmful interference basis."[3]  AST and Ligado acknowledge this commitment, and neither so much as *suggests* that Planet would not operate accordingly—or that its proposed operations would pose any actual risk of harmful interference.[4]  Nevertheless, AST and Ligado complain that Planet's application does not "demonstrate that it will not cause interference."[5]

This simply is not true.  As Planet's application notes, Inmarsat will assign specific channels for Planet's use that have been coordinated for use with Inmarsat satellites, ensuring that there will be no harmful interference between Planet's proposed operations and Ligado's

---

[1]   *See* Joint Comments of AST & Science, LLC and Ligado Networks LLC, ICFS File No. SAT-MOD-20250527-00129 (Aug. 25, 2025) ("Joint Comments").

[2]   ICFS File No. SAT-MOD-20250527-00129, Legal Narrative, at 1 ("Planet Legal Narrative").

[3]   Planet Legal Narrative at 6-7.

[4]   Joint Comments at 4.

[5]   *Id.*

operations.[6]  To clarify, the existing coordination agreement between Inmarsat and Ligado: {{BEGIN CONFIDENTIAL}}



{{END CONFIDENTIAL}} Planet's proposed operations would remain within {{BEGIN CONFIDENTIAL}} {END CONFIDENTIAL}}[7]  As such, any impact on Ligado's network resulting from such operations would not and could not constitute cognizable harmful interference.

And AST has never applied for, and is certainly not authorized to make, *any* use of the L band and thus has no basis for claiming protection from Planet's proposed L-band operations. Moreover, there is no certainty that AST will *ever* be authorized to make use of the L band.[8] Indeed, AST's assertion that relevant L-band spectrum will "shortly become a critical part of [AST's] space-based mobile broadband services" presumes a great deal, including the outcome of the public interest analysis that the *Commission* must undertake under the Communications Act (with due attention to whether AST's potential L-band operations are appropriately coordinated, which is not currently the case).

Under Section 25.154 of the Commission's rules, AST and Ligado bear the burden of adducing "specific allegations of fact" sufficient to demonstrate that grant of Planet's application would be prima facie inconsistent with the public interest.[9]  AST and Ligado have failed to meet this burden, and instead effectively insist that Planet prove a negative across any number of *unspecified* interference scenarios.  That is hardly reasonable, particularly as AST and Ligado *themselves* acknowledge that the Commission may authorize Planet's proposed L-band operations subject to conditions to which Planet has *already* agreed.[10]

---

[6]  Planet Legal Narrative at 6.  Any suggestion that Planet's application is deficient because it does not provide a full set of transmit and receive channels, *see* Joint Comments at 4, ignores the manner in which the L band is typically licensed.  Inmarsat is authorized to operate across the L band, and not in specific channels.  Third parties communicating with Inmarsat satellites are generally authorized in like fashion.

[7]  Planet Legal Narrative at 5.

[8]  If AST is eventually authorized to operate in the L band by the Commission, such operations would be subject to the terms of the coordination agreement between Inmarsat and Ligado. Under such circumstances, Planet's proposed L-band operations would not and could not result in cognizable harmful interference to AST for the same reasons they would not and could not result in cognizable harmful interference to Ligado.

[9]  47 C.F.R. § 25.154(a)(4).

[10]  *See* Joint Comments at 5 (referencing Loft Orbital stamp grant).  AST and Ligado assert that if the Commission grants Planet's application in the absence of a more extensive "demonstration," that grant should be subject to a condition that Planet "not claim protection

Please contact the undersigned should you have any questions.

Respectfully submitted,

/s/

Jarrett S. Taubman
VP & Deputy Chief Government Affairs and
Regulatory Officer
VIASAT, INC.

cc:     Jennifer A. Manner, AST & Science, LLC (redacted version)
        Vernon G. Ross, Ligado Networks LLC (redacted version)
        Danielle Pineres, Planet Labs PBC (redacted version)

---

from, nor cause harmful interference to, other authorized users of the L-band frequencies."
*Id*.  As noted above, Planet has *already* made this commitment in its application.