# **Exhibit 19**

**Before the**
**Federal Communications Commission**
**Washington, DC 20554**

| | | |
|---|---|---|
| In the Matter of | ) | |
| | ) | ICFS File No. SAT-MOD-_____ |
| Application For Modification of Space | ) | |
| Station License of | ) | Call Sign: S2358 |
| Ligado Networks Subsidiary LLC | ) | |
| | ) | |

**APPLICATION FOR MODIFICATION OF SPACE STATION LICENSE**

Vernon Ross
Vice President, Legal and Regulatory Affairs

LIGADO NETWORKS LLC
10802 Parkridge Blvd.
Reston, VA 20191
(877) 678-2920

December 8, 2025

**SUMMARY**

Chairman Carr recently observed that "the potential of direct-to-cell (D2C) technology promises a fundamental shift in how we think about competition, connectivity, and convergence."  In order to help realize this great potential, Ligado Networks Subsidiary LLC, Debtor-in-Possession ("Ligado") proposes to use its available spectrum in combination with cutting-edge satellite technology to make space-based, low-latency mobile 5G services available to U.S. consumers in the near term.   This service will complement and be used in conjunction with Ligado's existing SkyTerra-1 satellite.

Ligado files this Modification Application to modify its current satellite license to deploy and operate an L-band mobile satellite system providing service in the United States aboard AST & Science, LLC's (together with its subsidiaries, "AST SpaceMobile") constellation of NGSO satellites in low Earth orbit.  Under the proposed approach, Ligado will place an L-band payload (referred to herein as SkyTerra Next) on AST SpaceMobile's LEO constellation.  SkyTerra Next will provide mobile satellite service (MSS) in collaboration with AST SpaceMobile to deliver space-based mobile broadband service to U.S. customers using standard devices.  AST SpaceMobile will provide feeder link and TT&C operations for SkyTerra Next while Ligado, consistent with FCC precedent, will maintain operational control of the SkyTerra Next payload. Ligado will have ultimate control over the use of its L-band spectrum over North America, including the ability to execute a shutoff function for any of its transmissions in its spectrum. Further, the proposed SkyTerra Next MSS system requires no reallocation or waiver of spectrum rules and will not result in any new interference risks or coordination challenges.

Commission approval of Ligado's Modification Application will enable the rapid deployment of low-latency, high-capacity service from satellites to devices virtually anywhere in the United States, a significant step towards universal broadband connectivity. Approval of this Modification Application is all the more important given SpaceX's announcement of its agreement to purchase EchoStar's S-band spectrum, since the Commission will want to ensure the market for space-based mobile broadband is competitive, dynamic, and responsive to the increasing threat from China. The Commission can act promptly on this Modification Application and the services can in turn be deployed across the United States promptly because Ligado will deliver the subject services using L-band spectrum for which the company already has licensed and coordinated access over North America. Moreover, the proposed space system will operate within the existing parameters of Ligado's coordination agreements and does not require waiver of any spectrum requirements. Furthermore, Inmarsat and Viasat have agreed that they will affirmatively support this Modification Application provided that it satisfies certain agreed upon conditions, and the Modification Application fully meets those requirements.

This Modification Application enables the Commission to greenlight service in the burgeoning U.S. mobile satellite direct-to-device market without reallocating spectrum, changing frequencies, or introducing new coexistence considerations. Approval of this Modification Application also advances important spectrum policy goals by promoting intensive and innovative use of vital mid-band spectrum for satellite-based U.S. mobile broadband services. As such, the Modification Application aligns with the Commission's longstanding approach of enabling spectrum licensees to adjust their licenses to make use of the latest technology.

Perhaps more importantly, the proposed system will unlock valuable new use cases and yield transformative public interest benefits in the United States—particularly for users in rural or hard-to-reach areas of the United States, or those affected by natural disasters and other emergencies.  As the satellite industry continues its shift towards LEO satellites, Ligado's flexible (and already coordinated) mid-band spectrum is ideally situated for rapid deployment of LEO infrastructure via collaboration with AST SpaceMobile to deliver space-based mobile broadband services to users across the United States.  Additionally, Ligado's existing geostationary operations in the L-band, which currently serve millions of devices across the United States, create opportunities for groundbreaking complementary services combining the benefits of geostationary and LEO NGSO technology.

Because grant of this Modification Application authorizes services only in the United States within spectrum already licensed to and coordinated by Ligado for use in North America, the Commission's precedents and public interest considerations indicate that this Modification Application should not initiate a processing round.  Insofar as the Bureau determines that this Modification Application arguably could trigger a processing round, we respectfully request a waiver of those procedures in the attached waiver request.  As discussed below, a processing round would severely undermine the public interest by compromising rapid deployment of this spectrum to Americans nationwide.

For these reasons and others outlined in more detail below, Ligado respectfully requests that the Commission move quickly to grant this Modification Application.

# TABLE OF CONTENTS

I.     THE PROPOSED SYSTEM .................................................................................... 5

II.    LIGADO'S PROPOSAL IS IN THE PUBLIC INTEREST ............................................. 7

      A.     SkyTerra Next Will Improve Utilization of Spectrum Without Creating Harmful Interference ........................................................................... 10

      B.     The SkyTerra Next System Will Improve Coverage and Foster Competition for American Consumers .............................................. 13

III.   LEGAL AND TECHNICAL QUALIFICATIONS ......................................................... 17

IV.   A PROCESSING ROUND IS NOT REQUIRED OR IN THE PUBLIC INTEREST ................................................................................................................ 17

V.     ITU COST RECOVERY ..................................................................................... 21

CONCLUSION ............................................................................................................ 22

**Before the**
**Federal Communications Commission**
**Washington, DC 20554**

| | |
|---|---|
| In the Matter of | ) |
| | ) |
| | )    ICFS File No. SAT-MOD-_____ |
| Application For Modification of Space | ) |
| Station License of | )    Call Sign: S2358 |
| Ligado Networks Subsidiary LLC | ) |
| | ) |

### APPLICATION FOR MODIFICATION OF SPACE STATION LICENSE

Chairman Carr has recognized that "America's space economy is the envy of the world" and stated that, to expand U.S. leadership in space, the Commission "will focus . . . on speed, simplification, and ensuring [satellite operators] have the spectrum resources necessary to fuel this sector's growth."[1]   Approval of this Modification Application by Ligado Networks Subsidiary LLC, Debtor-in-Possession ("Ligado") is consistent with this mission and will advance the growing role of space in our daily communications.  Ligado currently operates the geostationary SkyTerra-1 satellite at 101.3° W.L.[2] and files this modification to add, deploy, and operate a Mobile-Satellite Service ("MSS") system ("SkyTerra Next")[3] for use in the L-band in the United

---

[1] FCC, Statement of Chairman Brendan Carr, *FCC Chairman Carr Announces Early Wins at Launch of Satellite Week* (Mar. 10, 2025), https://www.fcc.gov/document/fcc-chairman-carr-announces-early-wins-launch-satellite-week.

[2] *See* Call Sign S2358, *In re Mobile Satellite Ventures Subsidiary LLC*, Order and Authorization 20 FCC Rcd 9752 (IB 2005) (granting Ligado's SkyTerra-1 license); ICFS File No. SAT-MOD-20151231-00091 (granted June 23, 2025). Ligado has filed to renew its authorization for SkyTerra-1.  *See* ICFS File No. SAT-MOD-20251126-00344.

[3] As described below, the "SkyTerra Next" system comprises payloads to be deployed aboard 96 NGSO satellites in the AST SpaceMobile Constellation to be authorized by the FCC to operate in the L-Band in the United States.

States aboard the AST & Science, LLC (together with its subsidiaries, "AST SpaceMobile") constellation of non-geostationary ("NGSO") satellites in low Earth orbit ("LEO") (the "AST SpaceMobile Constellation").[4]  Thus, Ligado's geographic and spectrum scope of services to be authorized by this Modification Application is not modified by this application.  Approval of this Modification Application will allow Ligado to partner with AST SpaceMobile to provide new direct-to-device MSS services in the L-band in the United States via SkyTerra Next, thereby promoting enhanced service to businesses, government users, and consumers across the United States, including in areas without mobile broadband.  Additionally, approval of the Modification Application will complement Ligado's existing geostationary operations that currently serve millions of MSS devices in the United States used by consumers as well as public safety and others in the critical communications sector.[5]

The Commission has long permitted space station licensees to operate their services as payloads on separately licensed satellites, and Ligado's proposed modification is consistent with these precedents.[6]  As Chairman Carr recently observed, "[t]o help America's space companies

---

[4] *See* Call Sign S3065, ICFS File Nos. SAT-AMD-20250903-00248 (Sept. 3, 2025), SAT-AMD-20250718-00181 (Jul. 21, 2025), SAT-MOD-20250612-00145 (Jun. 12, 2025) (seeking modification of AST SpaceMobile's license to permit operation of a constellation of 248 NGSO satellites on specified frequencies); *see also* ICFS File Nos. SAT-AMD-20240311-00053, SAT-AMD-20230717-00172, SAT-AMD-20201028-00126, SAT-AMD-20200727-00088, SAT-LOA-20200413-00034; *In re AST & Science LLC,* Order and Authorization, 39 FCC Rcd 8558 (SB 2024) (authorizing AST SpaceMobile's original five-satellite NGSO constellation).

[5] Ligado will file a separate submission concerning modification of its existing blanket mobile earth terminal licenses (Call Signs E930367 and E980179) to add the proposed L-band space stations as a point of communication, and a notification reflecting an increase in the number of devices that may be operated under those licenses.

[6] *See, e.g.*, *In re Lockheed Martin Corp.*, Order and Authorization, 20 FCC Rcd 11023, 11029 ¶ 19 (IB June 23, 2005) ("LM RPS 1 will operate as a payload on the Galaxy XV satellite.") (citing *In re GTE Spacenet Corp.*, 2 FCC Rcd 5312 (CCB Aug. 28, 1987)) (hereinafter "*Lockheed Payload Order*"); *In re Lockheed Martin Corp*., Order and Authorization, 20 FCC Rcd 14558, 14569 ¶ 32 (IB Sept. 8, 2005) (authorizing Lockheed Martin Corporation to "construct, launch, and operate (continued…)

continue to succeed and grow, we are not only working to speed up and simplify our processes, but we are also working to promote more flexibility.  After all, a one-size-fits-all approach to regulation does not match the realities of the evolving space economy."[7]  Approval of this modification will advance American technological leadership in the face of increasing launch activity by China and other global competitors.[8]  This Modification Application is consistent with the Commission's leadership and ample precedent, by which AST SpaceMobile will provide the telemetry, tracking, and control ("TT&C") and feeder link operations in connection with the satellites in the AST SpaceMobile Constellation (Call Sign S3065).  Ligado will be responsible for ensuring compliance by SkyTerra Next with the terms of this license, including all U.S. L-band MSS operational requirements and other operating conditions or coordination requirements adopted by the Commission.[9]

---

its LM-RPS2 space station aboard Telesat Canada Corporation's ANIK F1R satellite"); *see also, e.g.*, Stamp Grant, ICFS File No. SAT-LOA-20190617-00048 (IB May 27, 2020) (granting Viasat a space station license to operate a separate, Commission-authorized payload on "the same satellite bus as Viasat's VIASAT-3 space station"); Stamp Grant, ICFS File No. SAT-RPL-20120216-00018 (IB May 25, 2012) (issuing Intelsat North America LLC a license to operate a Ku-band payload on a Netherlands-licensed satellite operated by New Skies Satellites B.V.); Stamp Grant, ICFS File No. SAT-A/O-20091208-00141 (IB June 4, 2010) (issuing Intelsat North America LLC a license to operate a Ku-band payload on a Luxembourg-licensed satellite operated by New Skies Satellites B.V.).

[7] FCC, Statement of Chairman Brendan Carr, *Expediting Initial Processing of Satellite and Earth Station Applications and Space Innovation*, IB Docket Nos. 22-411 and 22-271, Second Report and Order (August 7, 2025).

[8] *See* U.S.-China Economic and Security Review Commission, *The Rocket's Red Glare: China's Ambitions to Dominate Space* (April 3, 2025), https://www.uscc.gov/hearings/rockets-red-glare-chinas-ambitions-dominate-space.

[9] *See, e.g.*, *Lockheed Payload Order*, 20 FCC Rcd at 11029 ¶ 19 (describing an analogous division of responsibilities between Lockheed Martin Corporation, the licensee for the payload, and Panamsat, the licensee for the satellite itself);  *In re Lockheed Martin Corp.*, 20 FCC Rcd at 14562 ¶ 10 (similar, noting that although Telesat was responsible for TT&C operations, "Lockheed, however, remains responsible as a licensee for ensuring compliance with the terms and conditions of this license, and the Commission rules, including the Commission's station-keeping requirements"); *In re GTE Spacenet Corp.*, 2 FCC Rcd 5312  (CCB 1987) (requiring that the (continued…)

The modification of Ligado's L-band license to permit NGSO operations in the United States alongside Ligado's current geosynchronous orbit ("GSO") operations via an L-band payload on the AST SpaceMobile Constellation also is in line with Commission precedent. The Commission previously has granted applications for modification of a GSO license to permit NGSO operations or vice versa where the public interest is served.[10] Approval of the present modification promotes the public interest because it will enable more efficient and intensive use of L-band spectrum in the United States, will accelerate the time to market of U.S. mobile broadband direct-to-device services in the L-band, will enable enhanced critical communications services in the United States, and will create competition in the growing market for U.S. mobile broadband NGSO services, which is undergoing rapid change given SpaceX's announcement of its agreement to purchase EchoStar's S-band spectrum. The impact of delivering these types of broadband 5G services in the United States via NGSO satellites utilizing lower midband spectrum is profound since it ensures nationwide access to a robust satellite-based platform, including in times of natural disasters when terrestrial communications networks may be unavailable. This request also aligns with the Commission's goal of maximizing utilization of satellite spectrum; Chairman Carr has stated that satellite spectrum is "necessary for American leadership" and

---

payload licensee "maintain responsibility for the operation and control of the . . . payload" even though the payload licensee was not directly responsible for TT&C operations).

[10] *See, e.g.*, *In re ICO Satellite Services GP*, Memorandum Opinion and Order, 20 FCC Rcd 9797 ¶ 21 (IB 2005) ("Hence, there is no Commission rule or policy that precludes modification of a 2 GHz MSS spectrum reservation to change the orbital-architecture specification from NGSO to GSO."); *see also id.* ¶ 21 n.32 ("The Bureau has accordingly granted a previous request for modification of a 2 GHz MSS license that originally provided for operation of an NGSO system to authorize operation with a single GSO satellite instead . . . *Cf.* [*In re Sirius Satellite Radio, Inc.*, Order and Authorization, 16 FCC Rcd 5419 (IB 2001)] (granting request for modification from GSO to NGSO)."); *In re Applications of the Boeing Co.*, Order and Authorization, 18 FCC Rcd 12317 (IB 2003) (authorizing an NGSO-to-GSO modification).

acknowledged that "[e]very megahertz matters."[11]

## I.    THE PROPOSED SYSTEM

Ligado seeks authority to use its licensed L-band MSS spectrum to which it has existing coordinated access for North America to provide space-based mobile broadband connectivity to user devices throughout the United States in collaboration with AST SpaceMobile.  Specifically, Ligado seeks authorization to operate SkyTerra Next as an MSS payload aboard the AST SpaceMobile Constellation to provide service in the United States, along with the capability of service coverage over North America,  using frequencies for which Ligado already has coordinated access in the 1525-1544/1545-1559 MHz (space-to-Earth) and 1626.5-1645.5/1646.5-1660.5 MHz (Earth-to-space) bands.  The provision of service by any operation of SkyTerra Next outside the L-band or outside the United States would have to be authorized through separate applications.  A related filing will be made with the International Telecommunication Union ("ITU") by the United States.

The SkyTerra Next system will be deployed on ninety-six (96) NGSO satellites in the AST SpaceMobile Constellation, which are equipped with large phased-array antennas capable of forming multiple steerable beams.  The SkyTerra Next space stations[12] will operate aboard the AST SpaceMobile Constellation in LEO at an altitude of 690 km, one satellite per orbital plane, 53 degrees inclination, with an orbital period of 1 hour and 38 minutes.  The orbital planes will be

---

[11] *See*, FCC, Statement of Chairman Brendan Carr, *FCC Looks to Unleash More Spectrum for Satellite Spectrum Abundance* (May 27, 2025), https://www.fcc.gov/document/fcc-looks-unleash-more-spectrum-satellite-spectrum-abundance/carr-statement.

[12] As used herein, the term "space station" has the meaning given in the ITU Radio Regulations, *i.e.,* one or more transmitters, or receivers or a combination of transmitters and receivers necessary for carrying on a radiocommunication service, and located on an object which is beyond, or is intended to go beyond, the major portion of the Earth's atmosphere.  *See* ITU Radio Regulations Articles 1.61 and 1.64.

spaced by 3.75 degrees in Right Ascension of the Ascending Node.  The full orbital parameters for SkyTerra Next are provided in Schedule S.  Consistent with the existing allocations of these bands, SkyTerra Next will provide transmissions to mobile earth stations in the United States in the 1525-1544/1545-1559 MHz (space-to-Earth) frequency bands and will receive from mobile earth stations in the 1626.5-1645.5/1646.5-1660.5 MHz (Earth-to-space) frequency bands.

SkyTerra Next will rely on an electronic steerable antenna system to manage transmission and reception of L-band signals at various power levels, permitting dynamic adjustment of its coverage and communication beams.  This system also will enable Ligado to manage the radiated power to each beam based on operational needs, regulatory or contractual limitations, user requirements, and interference-avoidance considerations.

Ligado will retain sole responsibility for ensuring that the operation of SkyTerra Next adheres to the Commission's rules and the terms and conditions of its license, and it will have ultimate operational control over SkyTerra Next.  In keeping with Commission precedent, this control will include the ability to turn off, at Ligado's sole command and to the extent required by the Commission, the operations and transmissions of SkyTerra Next.[13]  Ligado will be able to execute this shutoff function without the concurrence of AST SpaceMobile.  Once SkyTerra Next has been deactivated, AST SpaceMobile will not be able to reactivate it without Ligado's authorization.  This control will be memorialized in an agreement between Ligado and AST SpaceMobile that will establish Ligado's ultimate control over SkyTerra Next, including the company's ability to turn on or off SkyTerra Next and to use SkyTerra Next to transmit L-band frequencies in the United States pursuant to its license.  The agreement also will provide that

---

[13] *See, e.g.*, *In re Lockheed Martin Corp.*, 20 FCC Rcd at 14563 ¶ 11 ("Lockheed will have the capability of 'turning off' the LM-RPS2 payload so that no radio emissions are generated by that payload.").

6

Ligado is responsible for regulatory compliance of SkyTerra Next, including payment of regulatory fees.

## II.     LIGADO'S PROPOSAL IS IN THE PUBLIC INTEREST

The Commission has previously found that modifying GSO systems to permit NGSO operations is in the public interest.[14]  Granting this Modification Application will benefit the public by strengthening access to space-based mobile broadband connectivity services throughout the United States, including in remote areas with little or no broadband penetration, without causing harmful interference to other spectrum users.  Approval of this Modification Application also is consistent with the Commission's goals of promoting innovation and investment in our space economy, enhancing connectivity, and promoting spectrum efficiency.[15]

New generation NGSO satellite systems "are bringing fast and reliable high-speed Internet to even more parts of the country…."[16]  To facilitate this growth, Chairman Carr has made clear that he is "committed to making sure outdated Commission rules do not stifle investment and innovation, especially in the case of new satellite broadband services where the potential benefits are so great."[17]  That paradigm applies here.  Rapid growth in the market for NGSO-based connectivity services has created an exciting opportunity for L-band MSS spectrum to soon be

---

[14] *See, e.g.*, *In re Sirius Satellite Radio, Inc.*, Order and Authorization, 16 FCC Rcd 5419 ¶¶ 4-5 (IB 2001) (permitting modification of a GSO license to NGSO and noting that "it is the Commission's policy to permit licensees to modify satellite systems, when possible, to make design improvements," and "allow the licensee to take advantage of the latest technology in providing service to the public").

[15] *See* FCC, Statement of Chairman Brendan Carr, *FCC to Review Spectrum Sharing Rules to Unleash Space Innovation* (Apr. 29, 2025), https://www.fcc.gov/document/fcc-review-spectrum-sharing-rules-unleash-space-innovation-0.

[16] *Id*.

[17] *Id*.

used to deliver vital services to consumers and increase competition in a market where spectrum, especially spectrum well-suited for space-based mobile broadband applications providing direct service to user devices, is increasingly scarce. Put simply, granting this Modification Application will support more intensive use of spectrum to which Ligado already has exclusive coordinated access by authorizing the provision of space-based mobile broadband services in the United States through a modern NGSO platform, unlocking valuable new use cases and creating a competitive market for space-based mobile broadband services across the United States without raising new interference or coordination concerns.

Among other existing coordination frameworks and agreements, Ligado has worked with Inmarsat to ensure SkyTerra Next will coexist with Inmarsat and Viasat operations in the L-band. This work resulted in an amended cooperation agreement with Inmarsat (the "Amended Inmarsat Cooperation Agreement") pursuant to which Ligado has agreed that use of the L-Band by SkyTerra Next (which is referred to in the Amended Inmarsat Cooperation Agreement as "the Proposed NGSO System") will comply with the Amended Inmarsat Cooperation Agreement, and that recognizes the proposed North American L-band NGSO operations are consistent with and coordinated under the cooperation arrangement between Ligado and Inmarsat. In exchange for this agreement, the Amended Inmarsat Cooperation Agreement states that Inmarsat affirmatively supports the grant of regulatory applications seeking authority to operate the Proposed NGSO System within the L-Band in North America and meeting certain requirements set forth in the Amended Inmarsat Cooperation Agreement, including supporting FCC grant of this Modification

Application to authorize L-band service on SkyTerra Next in the United States, given that it meets all of the requirements for such affirmative support.[18]

The mechanism to accomplish this goal of providing space-based mobile broadband to U.S. consumers—Ligado placing a satellite system payload that it will control on another satellite system—has been approved by the Commission in similar contexts, including where the licensee operating a space station payload relies on another licensee to handle TT&C operations.[19]  Further details regarding the AST SpaceMobile Constellation and its operations in the United States, including with respect to orbital debris mitigation, TT&C, feeder links, and positioning, are set out in AST SpaceMobile's pending applications.[20]

Many satellite industry leaders have recognized a fundamental shift in emphasis towards NGSO satellites and the functionality and versatility they enable, a development that was facilitated by the Commission's streamlined approval process for NGSO systems.[21]  This shift is

---

[18] The terms of Inmarsat's affirmative support were set out in an agreement negotiated between the parties and approved by the bankruptcy court overseeing Ligado's reorganization.  SkyTerra Next is the "Proposed NGSO System" referred to therein.  *See* Order Authorizing the Debtors to Enter into the AST Definitive Documents and Granting Related Relief, *In re Ligado Networks LLC et al.*, No. 25-10006 (Bankr. Del. June 23, 2025). In this Modification Application, Ligado is only seeking the Commission's approval for L-band operations within the United States.

[19] *See supra*, note 9.

[20] *See* ICFS File Nos. SAT-AMD-20250903-00248 (Sept. 3, 2025), SAT-AMD-20250718-00181 (Jul. 21, 2025), SAT-MOD-20250612-00145 (Jun. 12, 2025), SAT-AMD-20240311-00053 (Mar. 11, 2024), SAT-AMD-20230717-00172 (Jul. 17, 2023), SAT-AMD-20201028-00126 (Oct. 28, 2020), SAT-AMD-20200727-00088 (Jul. 27, 2020), SAT-LOA-20200413-00034 (Apr. 13, 2020).

[21] *See, e.g.*, 47 C.F.R. § 25.122 (small satellite streamlining rules); *In re Expediting Initial Processing of Satellite and Earth Station Applications*, Report & Order, 38 FCC Rcd 8838 (rel Sept. 22, 2023); *In re Expediting Initial Processing of Satellite & Earth Station Applications Space Innovation*, Second Report & Order, FCC 25-48, (rel. Aug. 8, 2025).  *See also* Telesat, *Q2 2025 Results Presentation* (Aug. 6, 2025), https://www.telesat.com/wp-content/uploads/2025/08/25Q2-transcript.pdf (commenting on the prospect of investing in new GEO satellites, Telesat's CEO recently said: "we haven't been able to close a business case on either a new GEO satellite or even a replacement GEO satellite, just given everything that's been going on in the market.").

driven by an ever-increasing demand for lower latency applications, and the instant Modification Application helps meet that need.

### A.  SkyTerra Next Will Improve Utilization of Spectrum Without Creating Harmful Interference

SkyTerra Next will provide service in the United States using L-band spectrum to which Ligado has long held coordinated access and currently uses to provide MSS services through its SkyTerra-1 satellite.[22] Providing mobile satellite services via SkyTerra Next enables leading-edge satellite technology to deliver space-based mobile broadband services direct to U.S. consumer devices without any additional assignments of spectrum. The proposed system will intensify the utilization of existing licensed spectrum by deploying the distinct advantages of NGSO technology without using additional frequencies or raising new spectrum interference issues. By leveraging the rapidly developing AST SpaceMobile Constellation, SkyTerra Next will utilize L-band MSS spectrum to provide space-based mobile broadband in the United States without the lengthy delays that typically are associated with designing, launching, and coordinating a new satellite network.

NGSO satellites in low Earth orbit offer advantages as compared to higher-orbiting GSO satellites. Orbiting at an altitude of just a few hundred kilometers, NGSO systems offer far lower latency, greater signal strength, and better return link margins than satellite systems positioned tens of thousands of kilometers higher. This makes them better suited for latency-sensitive, low power, low antenna gain mobile earth stations or high-bandwidth applications. Additionally, NGSO satellites can be deployed more quickly and flexibly than GSO satellites.

---

[22] Ligado also holds a long-term lease with Castle Crown for use of the 1670-1675 MHz terrestrial band. *See In re OP LLC (Crown Castle Int'l Corp.)*, Memorandum Opinion and Order, 22 FCC Rcd 4322 (2007).

Providing MSS in the United States from SkyTerra Next will complement Ligado's existing geostationary SkyTerra-1 satellite, and managing these networks in tandem will provide broader, more consistent coverage, lower latency and enhanced capacity, all while preserving critical GSO-based services and enabling the highest and most intensive use of the band. Management of the GSO and NGSO on a coordinated and dynamic basis will be accomplished using a Spectrum Management System,[23] thus assuring operation that is free of in-system interference. This novel approach can work because mid-band spectrum like Ligado's L-band spectrum offers excellent performance characteristics for both GSO and NGSO use. Adding NGSO capabilities to an existing GSO network combines the best qualities of each type of satellite—the GSO assets will provide a broad, consistent coverage footprint, while the NGSO assets will offer low latency, flexibility, and enhanced capacity. This synergy could enable a uniquely adaptable service offering that will represent a valuable contribution to the nation's satellite-based communications infrastructure.

The use of licensed MSS spectrum in the United States over SkyTerra Next is consistent with existing FCC and ITU coordination frameworks and also with Ligado's existing L-band coordination agreements, including its recent agreement to terms to secure Viasat's and Inmarsat's affirmative support for this Modification Application.[24] In addition, SkyTerra Next will have even smaller, more focused coverage footprints thereby making it easier to manage co-channel

---

[23] The Spectrum Management System tool will manage and control the time, frequency sub-bands and geographic areas where beams from GSO and NGSO systems will operate. The Spectrum Management System will be used to maximize spectrum usage while minimizing intersystem interference between GSO and NGSO systems.

[24] *See* Order Authorizing the Debtors to Enter into the AST Definitive Documents and Granting Related Relief, *In re Ligado Networks LLC et al.*, No. 25-10006 (Bankr. Del. June 23, 2025).

interference with other systems operating in the same band.[25]   Throughout its more than two-decade history of operations as an MSS licensee, Ligado has worked diligently with other licensees and government stakeholders to establish technical parameters for coexistence in the L-band, including by establishing emissions limits that mitigate risks of harmful interference.  SkyTerra Next will operate within the parameters defined by these existing—and longstanding—coordination agreements, such that other L-band stakeholders will not be exposed to new risks of harmful interference. [26]  The operations of all AST and Ligado spacecraft, individually and taken as a whole, and regardless of orbit, will be consistent with and remain within the technical, geographic and other limitations in the Amended Inmarsat Cooperation Agreement and Ligado's other coordination agreements with various parties.  Ligado requests that the Commission recognize that the operations of the SkyTerra Next system have been coordinated subject to the terms of the Amended Inmarsat Cooperation Agreement and the Inmarsat-AST Agreement and give effect to such agreements by licensing SkyTerra Next to operate in accordance with the terms of such agreements.

No waiver of the spectrum rules is necessary to approve this Modification Application since Ligado's spectrum already is authorized and coordinated for North American MSS

---

[25] Satellite beamforming uses the process of shaping and steering a satellite's radio beams—using antennas and signal processing—so that the transmitted or received energy is concentrated in specific directions, instead of spreading evenly in all directions. By controlling the amplitude (strength) and phase (timing) of signals feeding each antenna element, the combined radio waves reinforce each other in desired directions (constructive interference) and cancel out in others (destructive interference). More focused energy can place nulls in certain directions to protect other systems and reduce interference. This makes communications more efficient, increases capacity, and allows dynamic targeting of service areas.

[26] Ligado will make use of feeder links in other bands in collaboration with AST SpaceMobile; to the extent in the future Ligado will use feeder links that require coordination with an Inmarsat or Viasat NGSO system as required under the Amended Inmarsat Cooperation Agreement, the company will engage in such coordination.

operations like the use being proposed here.[27]  The proposal is compliant with all applicable FCC requirements and regulations for the operation of MSS services in the L-band in the United States, as discussed in the Technical Supplement submitted with this Modification Application, and will not cause harmful interference to the Global Position System or other adjacent band services.

### B. The SkyTerra Next System Will Improve Coverage and Foster Competition for American Consumers

Grant of this Modification Application will enable the availability of space-based mobile broadband services to consumers, businesses, and governmental entities across the United States in the near term.  Specifically, the SkyTerra Next system will enable space-based mobile broadband for millions of user devices in the United States without requiring the buildout of additional terrestrial wireless infrastructure.  SkyTerra Next will provide increased breadth and quality of nationwide mobile broadband coverage in a spectrum-efficient manner.  Importantly, Ligado's proposed services will help the Commission ensure all Americans enjoy connectivity, including by delivering mobile broadband services directly to devices across rural regions, supporting emergency response, and assisting remote industrial operations, including where terrestrial infrastructure is not available.[28]  The system also will have the ability to support

---

[27] As described below, the Commission's precedents suggest that this Modification Application should not initiate a processing round under the Commission's rules.  However, should the Commission conclude otherwise, Ligado has included a request for a waiver of the processing round rules in the attached Waiver Request.  *See* Section IV, *infra*.

[28] *See In Re Modernizing Spectrum Sharing for Satellite Broadband Revision of the Commission's Rules to Establish More Efficient Spectrum Sharing Between NGSO & GSO Satellite Sys.*, Notice of Proposed Rulemaking, FCC 25-23, SB Docket No. 25-157 ¶ 3 (SB Apr. 29, 2025) (remarking on the recent growth of NGSO deployment and its benefits).

alternative positioning, navigation, and timing ("PNT") services, a key objective for the President and the Commission.[29]

Because the system will be resilient to natural disasters (*e.g.*, earthquakes, wildfires, hurricanes, storms, or floods) and other phenomena that may affect or even disable terrestrial communications infrastructure on a local or regional basis, it will be able to provide services during emergencies that might otherwise compromise communications among affected communities, first responders, government officials, and others.

Use of the SkyTerra Next NGSO system alongside Ligado's SkyTerra-1 GSO satellite will provide an additional degree of resiliency. GSO and NGSO systems operate in different locations in space—SkyTerra-1 operates at approximately 36,000 kilometers (22,500 miles) above Earth, and SkyTerra Next will operate on AST SpaceMobile satellites located at approximately 690 kilometers (429 miles) above Earth. As a result, the proposed GSO/NGSO system will have an increased resilience against natural anomalies, and also against possible malicious actions like physical or hybrid attacks on space stations.

Modifying Ligado's existing license to permit operation of SkyTerra Next aboard AST SpaceMobile's NGSO satellites—in addition to Ligado's existing GSO infrastructure—will also enhance the proposed system's coverage capabilities. NGSO satellites offer lower latency, stronger signal strength, and higher return-link sensitivity due to lower path loss (given low level signals transmitted from mobile earth stations equipped with low gain antennas and reception from multiple directions compared to GSO satellites). Additionally, the SkyTerra Next system will be

---

[29] *See In re Promoting the Development of Positioning, Navigation, and Timing Technologies and Solutions*, Notice of Inquiry, FCC 25-20 (Mar. 28, 2025); Comments of AST & Science, Inc., WTB Docket No. 25-110 (filed Apr. 29, 2025). *See also* Executive Order 13905, Strengthening National Resilience Through Responsible Use of Positioning, Navigation, and Timing Services, 85 Fed. Reg. 9359 (Feb. 12, 2020).

resilient to blockages across viewing angles.  All of these features will enable the proposed system to deliver more robust, reliable and resilient mobile broadband services in the United States.

Authorizing Ligado to add this NGSO capability will also benefit the public interest by providing U.S. consumers with additional choice in the market for mobile broadband NGSO services.  In light of SpaceX's announcement of its agreement to purchase EchoStar's S-band spectrum, which it plans to use to provide mobile broadband NGSO services, approval of this Modification Application is an opportunity to introduce competition into what could otherwise be a one-firm-dominated market.[30]  Given that satellite spectrum suitable for high-throughput space-based mobile broadband using NGSO connectivity is limited, enabling Ligado to use its existing spectrum for this purpose will provide a ready-made means of ensuring a robust and competitive market for U.S. space-based mobile broadband services.  Robust competition among operators using a variety of technologies and spectrum bands will accelerate and enhance progress towards the next generation of mobile connectivity.  Promoting rapid deployment of flexible new connectivity offerings accessible across unserved and underserved areas of the United States *using already licensed spectrum* aboard a constellation that will be deployed in the near term provides the Commission with a near-term win in its ongoing efforts to enable accessible universal nationwide connectivity.[31]  This approach also aligns with the Commission's adoption of rules governing Supplemental Coverage from Space ("SCS") offerings:  as Ligado has previously noted,

---

[30] *See* SpaceX, *The Future of Starlink Direct to Cell* (Sept. 8, 2025), https://www.spacex.com/updates#dtc-gen2-spectrum.

[31] *See, e.g.*, *Inquiry Concerning Deployment of Advanced Telecommunications Capability to All Americans in a Reasonable and Timely Fashion*, Fourteenth Broadband Deployment Report, 36 FCC Rcd 836 ¶ 2 (2021) (noting that as of 2019 14.5 million Americans lacked access to fixed terrestrial broadband with benchmark download and upload speeds of 25 Mbps and 3 Mbps, respectively).

direct-to-device MSS systems can offer SCS-like capabilities in bands not designated for SCS, further increasing the range of options in the market.[32]

Additionally, as set out in AST SpaceMobile's filings describing the AST SpaceMobile Constellation, AST SpaceMobile is a U.S.-based company with a growing manufacturing and operations facility in Midland, Texas, and a research and development facility in Maryland, among other U.S.-based facilities. AST SpaceMobile has already developed and is building a space-based cellular broadband network.[33] It currently operates six satellites in LEO and has plans to build and launch up to sixty additional satellites before the end of 2026.[34] AST SpaceMobile's satellites have successfully demonstrated space-based 5G connectivity to unmodified smartphones.[35] Construction and launch of the satellites used to deliver these services is delivering American manufacturing jobs, as well as long-term maintenance and operations-management jobs.

In sum, granting this Modification Application aligns with the public interest by increasing competition, fostering economic growth, protecting neighboring spectrum users, and enhancing national security through resilient, widespread connectivity on American-made satellites.

---

[32] *See In re Single Network Future: Supplemental Coverage from Space*, Comments of Ligado Networks LLC, FCC 23-22, IB Docket No. 22-271 at 4 (filed May 12, 2023); *see also In re Globalstar Licensee LLC Petition for Declaratory Ruling Granting Access to the U.S. Market for the Globalstar C-3 MSS System*, Petition for Declaratory Ruling, ICFS File No. SAT-PPL-20250214-00047 at 3-7 (filed Feb. 14, 2025).

[33] *See In re Establishing a 5G Fund for Rural America*, Comments of AST & Science LLC, GN Docket No. 20-32, at 2 (Apr. 1, 2025).

[34] *See id.* at 2-3.

[35] AST SpaceMobile, *AST SpaceMobile Makes History in Cellular Connectivity, Completing the First-Ever Space-Based Voice Call Using Everyday Unmodified Smartphones* (Apr. 25, 2023), https://ast-science.com/2023/04/25/ast-spacemobile-makes-history-in-cellular-connectivity-completing-the-first-ever-space-based-voice-call-using-everyday-unmodified-smartphones/.

### III.    LEGAL AND TECHNICAL QUALIFICATIONS

Ligado is legally qualified to hold a space station license and to operate the proposed SkyTerra Next system.  Ligado holds a range of Commission licenses to operate space and earth stations, including in connection with the L-band frequencies to be used as part of this system,[36] and its legal qualifications are otherwise described in the attached Form 312 and elsewhere in this Modification Application.  Ligado's ownership information is included as an attachment to this Modification Application.

Ligado is also technically qualified to hold a space station license, and relevant information regarding the technical characteristics of the proposed space stations is included in Form 312, Schedule S, and the Technical Supplement attached to this Modification Application.

### IV.    A PROCESSING ROUND IS NOT REQUIRED OR IN THE PUBLIC INTEREST

The proposed SkyTerra Next system will advance the public interest benefits associated with Ligado's current spectrum use by enabling next-generation NGSO technology in the United States using the same spectrum allocation and without introducing harmful interference risks.  Accordingly, consistent with Commission precedent and the Commission's rules, this Modification Application should not be subject to the Commission's processing round procedure on the grounds that the processing round rules do not apply or because the rules should be waived since adherence to the rules in this circumstance is not consistent with the public interest.[37]

---

[36] *See Ligado 2020 Order* ¶ 9.

[37] To the extent the Commission deems the processing round rules in Sections 25.156(d) and 25.157 applicable to the instant Application, a waiver of those rules is requested in the attached document.

The Commission has long held that where a requested modification does not raise new interference concerns, the processing round procedures do not apply. The Commission's rules do not contemplate the use of a processing round or queue for a modification request that serves the public interest and does not seek to relocate a GSO satellite, add a frequency band to the authorization, or increase the authorized bandwidth of a satellite.[38] And Commission precedent establishes that only "if the modification application were to present significant interference problems" would the Commission "treat the modification as a newly filed application and . . . consider the modification application in a subsequent satellite processing round."[39] The Commission approvingly cited that precedent in the *2021 SpaceX Order*, noting that under "the *Teledesic Order*, if a modification would present significant interference problems, grant of the modification would not be in the public interest, and that the application should instead be treated as a newly-filed application for processing round purposes."[40]

Those precedents merit further description. In a 1999 order relied on in recent processing round decisions, the International Bureau granted Teledesic's application to modify its space station authorization to reflect technological advances made since its system was designed, including by altering the altitude of some satellites, without requiring a processing round.[41] Teledesic had been initially authorized in 1997 to launch an NGSO system in a portion of the Ka-band, and its modification did not change the amount or location of spectrum to be used or pose

---

[38] *See* 47 C.F.R. § 25.117(d)(2)(ii)-(iv).

[39] *In re Teledesic LLC*, Order and Authorization, 14 FCC Rcd 2261 ¶ 5 (IB 1999).

[40] *In re Space Expl. Holdings, LLC*, Order and Authorization, 36 FCC Rcd 7995 ¶ 16 (2021) (hereinafter "*2021 SpaceX Order*") (internal quotations omitted).

[41] *In re Teledesic LLC*, Order and Authorization, 14 FCC Rcd 2261 ¶¶ 5-7 (IB 1999).

new interference risks.[42]  In granting Teledesic's modification application, the Bureau found that Teledesic's proposed modification satisfied the public interest standard and did not require a processing round because the proposed modification did not present any significant interference problems, was otherwise consistent with Commission policies, and would allow Teledesic to take advantage of the latest technology.[43]

Similarly, in 2001, the International Bureau approved a modification application from Sirius Satellite Radio ("Sirius") without requiring Sirius to undergo a processing round.[44]  Sirius, which was already authorized to operate two GEOs using certain spectrum, requested authorization to instead operate three NGSO satellites in that same spectrum.[45]  The Commission granted Sirius' modification application without a processing round because it would "provide the public with an improved satellite DARS system that relies on fewer terrestrial repeaters and offers more channels within the existing spectrum allocation."[46]  The Commission did not require a processing round there even though Sirius' application requested authority to use additional spectrum for TT&C.[47]

Like the modification applications filed by Sirius and Teledesic, this Modification Application *does not seek to change the amount or location of frequency to be used, does not increase interference to other users, and takes advantage of the latest technology.*[48]

---

[42] *Id.*

[43] *Id.*

[44] *In re Sirius Satellite Radio, Inc.,* Order and Authorization, 16 FCC Rcd 5419 (IB 2001).

[45] *Id.* ¶ 5.

[46] *Id.*

[47] Sirius sought to use the 4/6 GHz frequency band on a non-harmful interference basis for TT&C.  *Id.*

[48] Moreover, this modification is less significant than those at issue in the *Sirius* and *Teledesic* orders in that the Commission already treats Ligado's SkyTerra-1 satellite as an "NGSO-like" satellite due to its use of omnidirectional antennas.  *In re Mobile Satellite Ventures Subsidiary LLC*, Order and Authorization, 20 FCC Rcd 9752 ¶ 13 n.30 (2005).

Other factors further counsel that imposing processing round procedures on the instant Modification Application would not be in the public interest.  The Commission recently affirmed that a "focus on the public interest in avoiding significant radiofrequency interference is consistent with the purpose of the Commission's processing round procedure."[49]  The processing round procedure is "designed to establish the interference environment" in which licensees can expect to operate.[50]  But in considering what the interference environment will be for the L-band, one must take into account an important and unique feature of this band:  the requirement that a party (even one with a license in hand) successfully complete lengthy coordination discussions with all the relevant parties already licensed by national administrations and coordinated to operate in the L-band in ITU Region 2—existing operators from not only the United States, but Canada, Mexico, Russia, and the United Kingdom—before it can use spectrum in this band.  Ligado spent over a decade and substantial resources coordinating use of the L-band with other licensees and governmental stakeholders, and thus is singularly qualified to use the band to offer MSS services in North America.  Indeed, the proposed NGSO system payload for which authorization is being sought in this Modification Application has completed coordination. Permitting new entrants into the L-band through a processing round would be highly disruptive to this carefully negotiated and distinctive multi-national interference environment.  This Modification Application will permit Ligado to add NGSO capabilities that will complement and be used in coordination with Ligado's current Sky-Terra 1 satellite.  Conversely, permitting a third party to access the L-band could raise interference issues both with the proposed NGSO operations and the company's existing GSO system, as well as with other coordinated parties licensed to operate in this band.

---

[49] *2021 SpaceX Order* ¶ 16.

[50] *Id*.

Moreover, the prospect of a processing round could disincentivize investment and operations in the L-band, all for a service that would not become a reality for a very long time. Any new applicant for an L-band license would need to go through a costly and indeterminate years-long process to have access to any portion of L-band spectrum, during which time productive use of the band would likely be difficult or impossible. Fragmentation of the band also would create a significantly more complex interference environment for L-band licensees, potentially creating new limitations on operations within the band. That prospect could substantially delay the time to market for competitive mobile broadband NGSO services that this Modification Application would enable in the near term. Thus, a processing round would indefinitely harm (not foster) competition in the market for mobile broadband NGSO services. In that regard, and in line with the above, the Commission should consider the impact on the market for mobile broadband NGSO services and how quickly they are deployed and can provide service to consumers. That analysis points to the conclusion that a processing round would be counterproductive to the Commission's goals.

As such, under the public interest standard, Commission rules, and Commission precedents, this Modification Application should not be subject to a processing round. However, insofar as a processing round requirement would apply to this Modification Application, it should be waived as requested in the attached waiver requests.

## V.    ITU COST RECOVERY

In keeping with 47 C.F.R. § 25.111(d), Ligado is aware of and unconditionally accepts the responsibility to cover any and all fees charged by the ITU for filings made in connection with this Modification Application. Invoices for such fees may be sent to the contact specified in the Form 312 associated with this Modification Application.

**CONCLUSION**

For the foregoing reasons, and others set forth in the attached materials, the Commission should find that granting this space station license modification would serve the public interest, and issue a grant of the modification without delay.

Respectfully submitted,

_/s/ Vernon Ross_

Vernon Ross
Vice President, Legal and Regulatory Affairs

LIGADO NETWORKS LLC
10802 Parkridge Blvd.
Reston, VA 20191
(877) 678-2920

December 8, 2025

22