**EXHIBIT E**

-/0

```
 1                    UNITED STATES BANKRUPTCY COURT
 2                        DISTRICT OF DELAWARE
 3                                    .  Chapter 11
     IN RE:                          .  Case No. 25-10006 (TMH)
 4                                    .
     LIGADO NETWORKS LLC,            .  (Jointly Administered)
 5   et al.,                          .
                                     .  Courtroom No. 7
 6            Debtors.               .  824 North Market Street
                                     .  Wilmington, Delaware 19801
 7                                    .
                                     .  Friday, August 29, 2025
 8   . . . . . . . . . . . . . . . .  1:00 p.m.
 9                       TRANSCRIPT OF HEARING
10            BEFORE THE HONORABLE THOMAS M. HORAN
                 UNITED STATES BANKRUPTCY JUDGE
11
     APPEARANCES:
12
13   For the Debtors:          Andrew Leblanc, Esquire
                               MILBANK LLP
14                             1850 K Street, NW
                               Suite 1100
15                             Washington, DC 20006

16   For Inmarsat:            Benjamin Finestone, Esquire
                               QUINN EMANUEL URQUHART
17                               & SULLIVAN LLP
                               295 Fifth Avenue, 9th Floor
18                             New York, New York 10016

19
     (APPEARANCES CONTINUED)
20
21   Audio Operator:          Jadan Culp, ECRO
22   Transcription Company:   Reliable
                               1007 N. Orange Street
23                             Wilmington, Delaware 19801
                               (302)654-8080
24                             Email: gmatthews@reliable-co.com
25   Proceedings recorded by electronic sound recording,
     transcript produced by transcription service.
```

1  <u>APPEARANCES (Continued)</u>:

2  For AST SpaceMobile:      Madlyn Primoff, Esquire
                             FRESHFIELDS
3                            3 World Trade Center
                             175 Greenwich Street, 51st Floor
4                            New York, New York 10007

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                                INDEX

2    MOTIONS:                                                      PAGE

3    Agenda
4    Item 4: (SEALED) Motion of Inmarsat Global             4
             Limited for Entry of an Order
5            Enforcing and Implementing the
             Mediated Agreement [Docket No. 824;
6            filed August 14, 2025]

7    Agenda
     Item 5: (SEALED) Debtors' Motion for an Order
8            (I) Enforcing the AST Order and
             Mediated Agreement and (II) Granting
9            Related Relief [Docket No. 826;
             filed August 14, 2025]
10
     Agenda
11   Item 6: AST'S Motion to (I) Redact and File
             Under Seal the AST Objection and
12           Joinder and Exhibits Thereto and (II)
             Grant Related Relief [Docket No. 905;
13           filed August 27, 2025]

14
             Court's Ruling:                                30
15

16

17

18

19

20

21

22

23

24

25

1          (Proceedings commenced at 1:00 p.m.)

2               THE COURTROOM OFFICER:  All rise.

3               THE COURT:  Good afternoon.  Please be seated.

4               Mr. Leblanc.

5               MR. LEBLANC:  Good afternoon, Your Honor.  Andrew

6    Leblanc of Milbank on behalf of Ligado.  Your Honor, I am

7    joined in the courtroom here by some of my colleagues but

8    also by Vicky McPherson, the general counsel of Ligado. It's

9    her first time appearing, so I wanted to make sure Your Honor

10   was aware that she is here.

11               Your Honor, we are ready to proceed with the

12   arguments.  I do have a slide deck to aid in the argument if

13   I may approach, Your Honor.

14               THE COURT:  Sure.

15               MR. LEBLANC:  How many copies do you want, Your

16   Honor?

17               THE COURT:  One for me and one for one of my law

18   clerks in the back row in the white jacket.

19               MR. LEBLANC:  Okay, we will get that to her.

20               THE COURT:  Thank you.

21               MR. LEBLANC:  May I approach, Your Honor?

22               THE COURT:  Yes, please.  Thank you.

23               I am going to offer a few comments before we get

24   going.

25               You won't be surprised that, you know, we spent a

1   great deal of time dealing with this.  There are a lot of

2   arguments that require a lot of consideration but in the end,

3   ultimately what my role here is to look at the mediated

4   agreement, which I am going to call the "settlement term

5   sheet" because you got a defined term in there, "mediated

6   agreements," that does not actually include defined term

7   "mediated agreement."  So, I am just going to call it the

8   "settlement term sheet."

9          The settlement term sheet it says what the

10  agreement of the parties was. It says here are the terms, go

11  incorporate it into the mediated agreements and if anybody

12  wants to change anything you go to agree on it, and if

13  there's a dispute down the road bring it to the SDNY.

14          So, I feel that my role here is to look at that

15  settlement term sheet and see what it says.  This is not a

16  criticism of anybody but the -- I think the arguments of the

17  parties simultaneously make a lot of sense and make no sense;

18  only in the respect that it feels to me like on the one hand

19  Inmarsat is saying that AST agreed to something that just me,

20  you know, as somebody who doesn't know a lot about AST and

21  its business other then what is presented here, I think why

22  would they have ever done that.  And AST is saying the same

23  about Inmarsat, like why would Inmarsat agree to do that but

24  that is not something that I should decide.  I shouldn't

25  decide what commercial arrangements the parties agree to.

1              So, Inmarsat said something that I agree with and

2      has kind of guided the way I think I'm turning out on this,

3      and I'm going to hear from the parties but, you know,

4      Inmarsat says that the parties, under the plain language of

5      the mediated agreement, the settlement term sheet they're

6      bound to exist the geographic and other limits with the

7      cooperation agreement and bound to sign definitive documents

8      reflecting that agreement.  That last part "bound to sign the

9      definitive documents" that is what the mediated agreement

10     tells you to do.

11             They also say if and when AST or Ligado seeks to

12     operate in a manner implicating the parties underlying

13     dispute over the meats and bounds of the cooperation

14     agreement, that dispute can be resolved in the appropriate

15     forum in the context of a concrete factual dispute.  I tend

16     to agree with those things.

17             You know, if we were in California and I was

18     giving that tentative ruling I would say I think I'm just

19     denying both motions and saying go take the terms that are

20     contained in the settlement term sheet, write them into the

21     mediated agreements, as defined in the settlement term sheet,

22     and if you got a problem later you have already decided where

23     to handle it.

24             So, if a problem comes up later, go deal with it

25     there because I just don't -- I don't see what basis I would

1  have to determine that any of the parties here have described

2  for me a basis upon which I can find that the settlement term

3  sheet supports their arguments.  I think it all impedes too

4  much to the other side of the dispute and I would be doing an

5  awful lot of, I guess, interpretation without really

6  understanding what my basis would be for doing so to impute

7  agreements or motivations to the parties either by the

8  absence of language or reading things into the words that I

9  think are just beyond what I can really gather from the

10 mediated agreement.

11         While that could be a reason to say, well, then

12 bring in the intrinsic evidence, I'm not sure that's right

13 either because, first of all, this resulted from mediation. I

14 don't want to hear what the parties said at mediation nor is

15 it appropriate for anybody to bring that to me.  So, I kind

16 of feel like this is what I'm left with.

17         So, I am open to hearing from the parties but I

18 feel like I'm there.

19         MR. LEBLANC:  Your Honor, I'm actually -- if Your

20 Honor -- if Chambers could give authority to Victoria

21 Colbert, she will share her screen so that others can see the

22 slides.

23         Your Honor will see, my first slide I think says

24 exactly what the Court just said it was inclined to do.  We

25 do not disagree with that.  We and AST are prepared, and Ms.

8

1   Primoff can speak for her client, one hundred percent to

2   incorporate exactly the words of the settlement term sheet

3   into the (indiscernible) agreement and into the separate

4   agreement between AST and Inmarsat.

5           In the case of the cooperation agreement, that's

6   Section 2, 3 and 4.  In the case of the AST/Inmarsat

7   agreement that is Sections 2 and 3.  We, one hundred percent,

8   agree with that.  There would be no dispute if that -- if

9   everybody agrees to that then we too are done, Your Honor,

10  because that is what we agreed to and we don't want to change

11  that at all.

12          The issue has been that that has not been

13  acceptable to Inmarsat.  They have said that to realize these

14  commitments that are made in the settlement agreement we need

15  to change the words that are contained in it in ways that we

16  don't think are consistent with what was agreed.  So, Your

17  Honor, this can be a very short hearing.

18          If you look at slide 3 of what I just handed up,

19  and it's on the screen, Your Honor, that is literally what we

20  say.  We are content, and I will stop. I have 37 pages of

21  slides. I don't want to go through any of them.  If Your

22  Honor is inclined to just say to the parties go and

23  incorporate exactly those words, verbatim, we are prepared to

24  do that.

25          THE COURT:  Look, the reason why I mentioned the

1  language in it -- what was Inmarsat's objection to the

2  debtors motion to enforce is that based on the way I read

3  that and understand that language I agree, and it sounds like

4  you agree, but it seemed to be somewhat at odds with the

5  arguments that I understood Inmarsat to be making about, you

6  know, what language has to appear in the definitive

7  documents.

8            I just want to say, I think they hit the nail on

9  the head with that language.  What you agree to, put it in

10 there as you agreed to do, and you're done.

11           MR. LEBLANC:  Your Honor, I think we are in wild

12 agreement.  What I know -- and if Your Honor will indulge me

13 for two minutes --

14           THE COURT:  Of course.  We have time.

15           MR. LEBLANC:  -- I'm going to argue the first five

16 slots and not the next 32 until I hear Mr. Finestone's

17 position on this.  Let me illustrate why in that same

18 opposition, because you're referring to their most recent

19 opposition, well, obviously, in their opening brief they ask

20 the Court to find that AST could not operate outside North

21 America. Now they said you don't have the jurisdiction to do

22 so.  That is fine.  We are fine with that determination not

23 being made.

24           The key component of it is, Your Honor, if you

25 look at page 6 of our slide deck, Your Honor, this cuts and

1    pastes from -- this is directly taken from the end of the

2    preliminary statement of the Inmarsat objection.  These are

3    Paragraphs 14 and 15.  This, Your Honor, is exactly the

4    issue.

5          They say that write A in the settlement agreement

6    says the following. I have a lot to say about writer A, which

7    is, I think Your Honor would recognize as a Delaware lawyer

8    is just a standard stipulation that the parties agreed there

9    is irreparable harm in the event of a breach does not create

10   new contract obligations. It's just an irreparable harm

11   stipulation.

12         They say, in the next paragraph, to realize these

13   commitments this is how we have chosen to change the words in

14   the co-op agreement.  That is where we have a problem.  If

15   they want to -- if everyone is content to just pick up the

16   words of the mediated agreement, the settlement term sheet,

17   to use Your Honor's phraseology.  To pick up the words of the

18   settlement term sheet we are done and we have agreed to that.

19         No one on our side is trying to change what we

20   agreed to in the mediation.  We are just trying to hone to

21   exactly what it is.  I agree with Your Honor, if we can agree

22   to make changes to it when we incorporated it into the co-op

23   agreement, but if we can't agree then we just default to the

24   language that was agreed to in the settlement term sheet and

25   we are done.

1       We very much need to get to confirmation from an

2   economic perspective and this has taken us a huge amount of

3   time to get to a point where all we want to do is incorporate

4   the settlement term sheet that we have agreed to. That was

5   the subject of that mediation.  I agree with Your Honor, if

6   there are later disputes about what that means in this

7   context that is fine.  But what we don't do is what this page

8   shows that they were actually asking in that very same

9   document.

10      They are asking to modify those terms when they

11  get incorporated.  That we won't do because what they're

12  asking to do is greatly expand what AST and Ligado have

13  agreed to do.  So, Your Honor, I think I'm in wild agreement

14  with the Court. If that is, in fact, what Inmarsat is

15  suggesting -- if they are prepared, like we are, to live with

16  the settlement term sheet and just bring those words verbatim

17  into the co-op agreement, to make an amendment to the co-op

18  agreement that incorporates Sections 2, 3, and 4 and to make

19  an -- to enter into a new agreement with AST that

20  incorporates Sections 2 and 3 we are done.

21      I will save the other 32 pages for something else.

22      THE COURT:  Thank you.

23      MR. LEBLANC:  Your Honor, so that is -- if we are

24  not done -- in other words, if Inmarsat's position is that,

25  in fact, to incorporate these terms there needs to be changes

1 to the words in the way that they're suggesting then we will

2 need to go through the rest of this.  I don't want to --

3 Your Honor has opened a door that we would like to walk

4 through.  Obviously, AST should speak to this too because

5 they would be bound by the same terms of the mediated

6 agreement but my understanding is they are quite content, as

7 are we, to live by the words that we had agreed to in the

8 mediation.

9        THE COURT:  Before I turn to Inmarsat, let me just

10 ask if AST wants to add anything to that argument and then we

11 will go from there.

12        Good afternoon.  Good to have you here.

13        MS. PRIMOFF:  Good afternoon, Your Honor.  Madlyn

14 Primoff from the Freshfields firm. With me today in the

15 courtroom are my colleagues from Freshfields, but in addition

16 we have Jose Leiman who is a representative from Ast.

17        THE COURT:  Welcome, Mr. Leiman.

18        MR. LEIMAN:  Thank you very much.

19        MS. PRIMOFF:  Mr. Leblanc summed it up perfectly

20 and I think we have made clear in our papers, Your Honor, and

21 we make clear standing here before you that we are perfectly

22 willing to have a side letter or a side agreement that

23 incorporates -- that is consistent with the footnote 5 of the

24 settlement term sheet in that we would sign up to Sections 2

25 and 3 of the mediated agreement verbatim.

1        Just to put a bit of a gloss on this, we -- the

2   parties, the debtors, Inmarsat, AST, did spend several weeks

3   trying to do that and we didn't get there.  People wanted to

4   change terms and we didn't get there.  So, we are willing to

5   do it verbatim.

6        THE COURT:  Understood. Thank you very much.

7        Mr. Finestone, good to have you here.

8        MR. FINESTONE:  Good afternoon, Your Honor.  Ben

9   Finestone, Quinn Emanuel, on behalf of Inmarsat and Viasat

10  today.

11       I will do two things in response to the Court's

12  opening comments.  First, I just want to clarify that this is

13  not, in fact, what the debtors were asking for.  In one of

14  the first few paragraphs of their proposed order the debtor

15  included language that said the Court finds that none of the

16  AST order, mediated agreement, or the Inmarsat cooperation

17  agreement preclude Ligado or AST from seeking separate rights

18  to operate in the L-Band spectrum outside of North America.

19       So, just as a matter of procedure, the dispute

20  that Your Honor is leaning towards thinking the Court needs

21  to resolve they are, in fact, asking the Court to resolve.

22  So, whatever happens today let's avoid by somehow -- that

23  conclusion being slipped in from that --

24       THE COURT:  I agree with you on that.

25       MR. FINESTONE:  -- because that is -- yeah, this

 1  is not what they say.

 2          Now, you just heard two parties say to Your Honor

 3  that they don't think that the dispute -- and let me just

 4  capture the dispute just to at least identify it.

 5          THE COURT:  Yes.

 6          MR. FINESTONE:  The dispute is, Your Honor, in

 7  substance, whether or not AST can operate -- can breach the

 8  limitations that are currently in Exhibit L to the

 9  cooperation agreement, a contract that goes back to 2010.

10  You're right, the debtors and we have a disagreement about

11  the scope of those limitations.  We totally agree, the Court

12  does not need to resolve that at all because let me just

13  pledge here to the Court, as we did in our papers, on behalf

14  of Inmarsat and on behalf of Viasat, not once in the

15  mediation and not once in our papers submitted to this Court

16  have we ever sought to improve our protections in that

17  contract.

18          We are not trying to improve our protections in

19  that contract.  All we are asking for is, effectively, *cum

20  onere,* vis-à-vis our debtor.  And the only reason that this

21  has gotten complex is because our debtor is not doing a

22  simple assumption, in which case *cum onere* would end it, and

23  our debtor is not even doing a simple assignment in which

24  case *cum onere* is easy.  They came to this Court with a

25  spliced up added complexity to everything and that is the

1    only reason why this isn't easily resolved, I believe,

2    without court intervention.

3            So, Your Honor, I am going to be an unpopular

4    person here today because while I think Your Honor's proposed

5    resolution would be procedurally fair to the parties, for

6    sure.  We are not trying to back out of the mediated

7    agreement.  The mediated agreement is the mediated agreement

8    and it would be even-handed of the Court to just say stick

9    the mediated agreement into an agreement.

10           Procedurally fair, no -- I do think there is a

11   case or a controversy presented here because if you ask AST

12   whether or not they believe that they are bound by the

13   restrictions in Exhibit L, notwithstanding, in our mind, what

14   the clear language of Exhibit L, which has to go in both our

15   contracts with them, they will say they don't believe they

16   are bound.

17           You heard Mr. Leblanc say, Your Honor, that one of

18   the reasons why this is so important is because he's got

19   other stakeholders, and he's a debtor, and he's got

20   creditors.  He doesn't have many employees but he's got

21   creditors that, obviously, want to see their company get out

22   of bankruptcy.

23           I'm not a debtor-in-possession, Your Honor, not in

24   this Court or not in another district but I got other

25   stakeholders too and my stakeholders -- I'm not talking about

1   my shareholders, Your Honor.  What Inmarsat does outside of

2   North America, this area that we are fighting so hard to

3   protect, the benefit of our bargain and the contract that

4   goes back to 2010, its not just a mere commercial operation.

5   We provide the most important kind of services, far more

6   important then allowing a company that doesn't really have

7   any real operations to emerge from bankruptcy.

8           We ensure that information passes from distressed

9   ships in the middle of the ocean to various coast guards.  We

10  ensure that a plane flying overhead can communicate with air

11  traffic controllers if it needs to change routes.  I say

12  that, Your Honor, only because it is very difficult for us to

13  say in the face of AST saying, yes, even though the debtor is

14  bound by Exhibit L, we are not.  That is a violation of *cum*

15  *onere,* Your Honor, and that threatens way more then our stock

16  price.  This is a real controversy.

17          So, I have said it already, I will respect the

18  Court not resolving that dispute but my request today is that

19  the Court resolve the dispute because it is a case for

20  controversy and, yes, counsel is going to stand up and change

21  their mind.  They changed their mind a lot in their papers

22  but I don't think you are going to hear that.

23          They are going to say the deal they cut is better

24  than the deal that the debtor had since 2010.  They're going

25  to say they're not bound by Exhibit L. If they stand up here

1   and say that our critical life-saving operations throughout

2   the rest of the world are protected only to the same extent I

3   have with Mr. Leblanc. I am not trying to improve that by a

4   millimeter, Your Honor, I am really not.  But if they stand

5   up and say we don't have a better deal then the debtors then

6   there is no case or controversy and I withdraw all of my

7   comments but they won't say it, Your Honor.  That is the

8   reason why it was extremely frustrating that we believe

9   they're not standing by the plain language of the term sheet,

10  Your Honor.

11          THE COURT:  I understand.

12          MR. FINESTONE:  Those are my procedural comments.

13  I would hold the substance of the argument and adhere to what

14  the Court would like to do procedurally but I guess what I'm

15  saying is if Your Honor tells us stick the term sheet

16  language into the agreements, which by the way they accused

17  us of trying to change things.  We weren't trying to change

18  things. The term sheet says take the substance of this term

19  sheet and put it into agreements.  Some words change but the

20  substance doesn't change at all.

21          THE COURT:  Yeah.  Look, I get that. I don't want

22  any of my comments to have been interpreted as being critical

23  of the parties.  I think there is very much a good faith

24  dispute over -- Inmarsat says the clear import of the

25  language is this.  The debtor and AST also think that the

1   language has clear import but it means a very different

2   thing.  So, you know, I just view it as a good faith dispute.

3          MR. FINESTONE:  I hope I didn't say anything to

4   the contrary.

5          THE COURT:  No.

6          MR. FINESTONE:  Their papers were littered with

7   absurd, their papers were littered with intentional

8   misinterpretation, their papers were littered with

9   disingenuous.  I did take some offense to that.  I am sorry

10   to take Your Honor's comments and go on a segway but I did

11   take offense to that when, in my experience, parties that use

12   words like that are the ones that are not comfortable with

13   the plain language of the agreement.

14          You didn't see that in our papers, Your Honor.  We

15   are not saying anything about bad faith or absurdity.  We

16   don't think we have to go there.  But on behalf of all the

17   lawyers that I worked with, documenting these agreements, I

18   did take personal offence and I reject the notion that there

19   was any disingenuity or intentional misinterpretation on our

20   part when Your Honor always wanted to defend was one

21   fundamental concept.  I have said it a couple of times but

22   its powerful in this Court, *cum onere*, that's it.

23          The reason we were defending it is for some pretty

24   important operations that the debtor never has tried to

25   interfere with but the money that they found, because the

1    debtor is unable to cure the contract, is an ambitious

2    company that doesn't want to be burdened by the limitations

3    of the contract.  You know what, if AST did this directly

4    with us, we could negotiate something in a private context

5    but they did it through a debtor-in-possession with a

6    prepetition contract and all bankruptcy practitioners know,

7    you take the good, you take the bad.

8            You can't take the good and shed the bad. Its

9    almost like a Texas two-step they're trying to do under 365.

10   We are comfortable with the plain language.  There is no

11   question in my mind what AST is planning to do and if it's

12   not resolved today, Your Honor, it will be resolved on

13   another date. I respect whatever the Court will do.

14   Obviously, I just think there is a lot of controversy, Your

15   Honor.

16           THE COURT:  I understand, Mr. Finestone. I

17   appreciate that.

18           I will offer a note, just because you brought up

19   your feelings about the language, disingenuous, bad faith,

20   whatever.  Just a little from the bench moment, I don't even

21   see that language because if you have got to tell me that

22   they were acting in bad faith, the better thing is just show

23   me, give me facts, and I didn't perceive bad faith. I

24   perceived it as a disagreement among the parties.  Generally

25   speaking, words like "absurd" and "disingenuous" have no

 1  positive effect on the Judge.

 2          MR. FINESTONE:  Thank you, Your Honor.  Those are

 3  my own personal insecurities reacting to those words.

 4          THE COURT:  Well, you know, they get used a lot.

 5  I had feelings about them in practice and sitting here I can

 6  just -- like I don't even see them because they don't mean

 7  anything to me unless there is a true -- the rare time when

 8  somebody really is taking a position that is absurd, like

 9  that is going to be evident from a lot of other contexts but

10  that was just a bit of an aside.  I appreciate the point you

11  made about that.

12          Look, let's hear from AST. I mean you sort of

13  threw down the gauntlet on are they going to be bound by --

14          MR. FINESTONE:  Exhibit L.  It's that simple, Your

15  Honor.

16          THE COURT:  Yeah.

17          MR. FINESTONE:  Thank you.

18          THE COURT:  Thank you.

19          Ms. Primoff.

20          MS. PRIMOFF:  So, let's go back to first

21  principles, Your Honor.  We agree to the AST transaction with

22  the debtors and the ad hoc lender groups, and we negotiate

23  that over a period of months, and Inmarsat shows up in

24  advance of the hearing to approve the AST transaction and

25  they say pay us $550 million.  And we go out and raise that

1   money and commit to pay them $535 million, 420 million of

2   which is to be paid in a matter of weeks, before we have

3   regulatory approval for the deal and, therefore, before we

4   know that the deal can be consummated.

5           THE COURT:  And I'm sorry to interrupt you.  Am I

6   right in recalling that under the agreement those payments

7   would be returned in the event that there wasn't regulatory

8   approval, or am I misremembering what that said?

9           MS. PRIMOFF:  No, they're not returned by

10  Inmarsat.  The DIP lenders in this case have agreed to step

11  up and backstop the return of those payments to AST, but if

12  there's no regulatory approval, Inmarsat keeps the money.

13          So, now we're here and after we agreed in the

14  mediation process to pay them this huge amount of money

15  upfront, they say, oh, you know, you're precluded from going

16  out to get non-Ligado L-band spectrum from third parties to

17  use outside of North America.  No, that was never part of the

18  deal and that's never been part of anything that they said to

19  this Court, and let's look at that.

20          So, if we go back to the Inmarsat objection, their

21  initial objection before anybody went to mediation -- and

22  this is Exhibit A to our papers -- and this goes right to the

23  heart of the *cum onere* point -- they -- do you need a copy,

24  Your Honor?

25          THE COURT:  Just remind me what docket number that

```
 1   is.  I've got so many things in this binder.  Or maybe, you

 2   know, what the agenda item --

 3           MS. PRIMOFF:  It's Docket 462.

 4           THE COURT:  Let me just find it in my binder, so I

 5   can get to that.

 6       (Pause)

 7           THE COURT:  462?  That sounds really --

 8           MR. FINESTONE:  That's right, Your Honor.  Our

 9   objection to the AST order in which we asserted cum onere is

10   at 462.

11           THE COURT:  Thank you.  Let me just get there.  I

12   think it may --

13           MR. LEBLANC:  Your Honor, it's also --

14           THE COURT:  -- I think it was attached as an

15   exhibit --

16           MR. LEBLANC:  -- it's Exhibit 5 to this hearing on

17   our exhibit list.  I don't know if that's useful.

18           THE COURT:  Thank you, yeah.  I knew I had seen

19   it.

20       (Pause)

21           THE COURT:  Okay, I'm there with you, Ms. Primoff.

22           MS. PRIMOFF:  Okay.  Thank you.  So they

23   acknowledge at paragraph that Ligado does not seek to assign

24   the entirety of the cooperation agreement to AST, but rather

25   only certain rights and economic benefits thereunder.  And
```

1  they were focused throughout this objection on getting paid

2  their money and they talked about the terms upon which they

3  would consent to the transaction, and it was all focused on

4  getting their money, but --

5          THE COURT:  But this is all -- again, I apologize

6  for interrupting you -- this is all months before the

7  mediation occurred.  The settlement was reduced to an

8  agreement and whatever positions the parties staked out for

9  the purposes of the litigation going on in this court, I'm

10  not sure that that should inform what ultimately was agreed

11  upon at mediation.

12          MS. PRIMOFF:  It does inform, Your Honor, because

13  when you read the totality of their paper they're saying,

14  look -- they're not trying to do an assignment, right?  If we

15  were trying to do -- if the debtor were trying to do an

16  assignment, then Inmarsat would not have a consent right, but

17  Inmarsat does have a consent right because AST is not taking

18  all of the benefits and burdens of the cooperation agreement.

19  So, they were staking out what are the terms upon which we

20  would be willing to consent and they were focused on the

21  money.  That's why I bring it up, Your Honor.

22          THE COURT:  See, the thing about the settlement

23  term sheet, as I just read the express language of it, which

24  is where I'm focused, it seems to just address -- unless I'm

25  wrong, it seems to address like primarily the North American

1  issue, it talks about North American stuff.  But the -- and,

2  look, there are arguments about respecting the geographical

3  limitations and all that, I acknowledge that, but I kind of

4  wonder if I'm being too -- I'm being asked to interpret the

5  absence of language that might more like really, explicitly,

6  directly address the issues that are in dispute today to mean

7  something, but it could cut both ways, right?

8            And that's kind of what led me to my initial

9  comments, it would feel like I have to go beyond the terms of

10 the settlement term sheet, but also guess at the business

11 decisions that the parties made.  Like there might be good

12 reasons why one might say, you know, we're giving up the non-

13 North America bandwidth, but I don't know.  I mean, I would

14 just be like guessing and --

15           MS. PRIMOFF:  No, no, and I think Your Honor can

16 do this without extrinsic evidence and without any particular

17 knowledge about the space and satellite industry.  We need to

18 look at the mediated agreement, the settlement term sheet --

19           THE COURT:  Yeah.

20           MS. PRIMOFF:  -- together with the documents that

21 were entered into at the same time, which is the

22 collaboration agreement and Exhibit 6 to the collaboration

23 agreement, and they struggle mightily to ignore looking at

24 those issues, but it's the collaboration agreement and

25 Exhibit 6 that define AST's obligations in this regard and

1   nothing in the settlement agreement takes away from that.

2           I mean, we can -- I'm happy to look at the

3   provisions of the settlement agreement with Your Honor and

4   let's --

5           THE COURT:  Let me just -- Mr. Leblanc had stood

6   up and I asked him to pause.

7           MR. LEBLANC:  Only -- Your Honor, Andrew Leblanc

8   on behalf of Ligado -- if you want a fulsome argument on

9   this, I'm happy to do it, I was prepared --

10          THE COURT:  Yeah.

11          MR. LEBLANC:  -- to go ahead, and I will walk the

12  through why this really is a North America agreement, I mean

13  this settlement agreement.  I also am prepared, if Your Honor

14  wants to go there, to explain why the cooperation agreement

15  itself is a North America agreement -- not why, but the fact

16  that it is, and we can do that.

17          I mean, you have two parties to this settlement

18  agreement saying we will live with the words that we agreed

19  to, we're prepared to do that, and -- but, Your Honor,

20  whatever you want to do.  I'm happy to walk through and give

21  Your Honor the reasons why -- the words were very carefully

22  selected in here and what they're trying to have Your Honor

23  impose on AST, that AST shall comply, AST as a company shall

24  comply with all of the provisions of the co-op agreement do

25  not exist in the settlement term sheet, with good reason.

1          The limitations that exist in the settlement term

2    sheet relate to a particular satellite system operating in

3    North America, that was -- it's very intentional, and it's

4    why they look at an irreparable harm stipulation, which

5    doesn't even say what they purport it to say, as their best

6    evidence that the parties agreed -- that AST agreed strictly

7    to comply with co-op agreement because that's the best they

8    can do it, and it just doesn't say it.  This would have been

9    a one-line document if it said what they purport it to say,

10   which is AST shall comply with all the limitations of the co-

11   op agreement.  You wouldn't have needed ten single-spaced

12   pages in a term sheet to define that, if that's what was

13   intended, it wasn't and they can't point to anything in it.

14         And so, Your Honor, again, we are prepared to live

15   with taking, cutting and pasting the settlement term sheet

16   into these agreements.  We also think they're fundamentally

17   wrong about what was agreed, and we're also prepared to argue

18   it and get a decision from Your Honor as to whether or not

19   AST more generally, AST as a company, is bound to whatever

20   limitations they contend exist in the cooperation agreement

21   imposed upon Ligado because they're wrong about that as well.

22         And we're also prepared to take the further step

23   and argue, if AST is bound to the limits of the co-op

24   agreement, I will also walk the Court through why the co-op

25   agreement doesn't say what they think it says that it -- the

1   co-op agreement doesn't restrict Ligado's operations outside

2   of North America in the L-band.  We can walk through that as

3   well, I'm happy to do it.  I just -- I only stood, Your

4   Honor, because if we're going to have the substantive

5   argument, I'd like to lead for the company because this is

6   really the company's agreement.

7         THE COURT:  Yeah, I understand.  And, you know,

8   I'm still back where I started, to be frank, because I think

9   that this was exactly the point, like this is the way that

10  you interpret these documents, Mr. Finestone has a very

11  different view of the world, and it -- based on the

12  settlement term sheet, I don't see how -- I don't see how I

13  reconcile that.

14        MS. PRIMOFF:  Your Honor, I'm happy to cede the

15  podium to Mr. Leblanc, who can make his presentation, and

16  naturally reserve all rights on behalf of AST to interject

17  later.

18        THE COURT:  Yeah.  I mean, look, I think you've

19  heard my views on where I think this should go.  I'm

20  absolutely happy to hear it from you, if you want to make the

21  presentation, I'm just not sure that -- I really have spent a

22  great deal of time looking at the arguments and I'm not sure

23  that it's going to, you know, fundamentally alter my analysis

24  at this point, which is kind of what you would have to do.

25  So --

```
 1              MR. LEBLANC:  Your Honor, the only reason I would
 2    make the arguments is, your preliminary thoughts, we agree
 3    with.
 4              THE COURT:  Yes.
 5              MR. LEBLANC:  If Your Honor is swayed -- Mr.
 6    Finestone, I think, has told the Court that he doesn't agree
 7    with that, that he needs something more than what's in the
 8    settlement term sheet --
 9              THE COURT:  I understood him to say that he -- not
10    that he wants something more than what's in the settlement
11    term sheet, he thinks it's already there, right?
12              MR. LEBLANC:  Well --
13              THE COURT:  In fairness, he thinks it's already
14    there.  You know, he's looking for a little bit more from the
15    Court that I indicated that I'm likely to want to do, but
16    there are other ways to handle that.  Like we can enter an
17    order that says -- I can enter an order that says you go
18    ahead and you said what you're going to put in the mediated
19    agreements in the settlement term sheet, you go ahead and do
20    that, and I could also say, if there is a dispute, Inmarsat,
21    to the extent they need it, they have stay relief and they
22    can go pursue it wherever they need to pursue it.  That's a
23    way to handle it.
24              MR. LEBLANC:  Your Honor, what we -- from the
25    perspective of the company, we need to leave here with the
```

1  direction as to how we're going to resolve this.  If they're

2  asking -- and, fine, they don't want more than what's in

3  there, they think they already have it, that's all fine.

4  They want something from the Court, they're not satisfied --

5  they did not say yes to the proposition Your Honor had

6  started this hearing with, we did.  That proposition was

7  let's just take the words, put them in there and we'll deal

8  with it if and when there's a dispute about it.

9       I am very content to make our arguments and

10  convince Your Honor that the right interpretation of the

11  settlement term sheet is inconsistent with what they contend

12  it to be.  I'm also content to make my argument as to why the

13  co-op agreement limitations they contend exist do not exist,

14  an issue they say isn't -- they asked for in their motion,

15  but now tell you is outside of your jurisdiction, I'm content

16  to make that argument.

17       What I'm not content to do is to not make the

18  argument and have the Court rule because he's asking you to.

19  If Your Honor is inclined to rule, then I want to make the

20  argument.  If Your Honor is inclined to do what Your Honor

21  was intending to do when you came out here and what we've

22  said we are fine with, tell us to go and take this language

23  and put it into the amended co-op agreement and into an

24  Inmarsat agreement that incorporates the mediation term

25  sheet, then we are done.  But I can't be in a position where

1   Your Honor is going to decide this issue, one way or the

2   other, without us being able to make the substantive

3   argument.

4              THE COURT:  And I would never do that to you --

5              MR. LEBLANC:  Okay.

6              THE COURT:  -- I would never do that to you.

7              Look, I'm where I started and that's going to be

8   my ruling.  The parties are directed to include the language

9   that is specifically identified in the settlement term sheet.

10  If there is a dispute about what it ends up meaning in

11  concrete terms and practical terms, then there is a way in

12  that settlement term sheet to deal with that.  It provides

13  where you go if you have a disagreement and you can deal with

14  it there.

15             So, I think that's all I have to say about it.  So

16  I'm going to ask the parties to put together a form of order,

17  hopefully that doesn't become the subject of a further

18  hearing --

19      (Laughter)

20             THE COURT:  -- but I think it's a pretty simple

21  ruling, but one that's going to address, you know, all the

22  papers in my binder, the various motion, and dispose of them.

23  But, again, I've really looked at this agreement, I've looked

24  at everything, and I know that this is the most appropriate

25  way to deal with it.

1          And, look, I very much appreciate the seriousness

2    of these issues for all the parties, and I also found that

3    the arguments were very well made and they reflect sincerely-

4    held positions that just happen to be just in wild

5    disagreement.  But the request is to enforce the mediation

6    settlement, that's the request that everybody made, and

7    that's how I do it, that's how I get to it.  Okay?

8          MR. LEBLANC:  Your Honor, could we talk for a

9    moment about timing --

10          THE COURT:  Yeah.

11          MR. LEBLANC:  -- as it relates then -- because

12    this then flows in.  We have a confirmation hearing scheduled

13    for next Wednesday.

14          THE COURT:  Yes, you do.

15          MR. LEBLANC:  And obviously, Your Honor, I think

16    we need to reduce this to an agreement to do what Your Honor

17    is directing us to do.

18          THE COURT:  Yes.

19          MR. LEBLANC:  So I think that's going to take us

20    probably more time, particularly given that we're on the eve

21    of Labor Day weekend, more time than next Wednesday, but we

22    really -- on behalf of the company, I know Your Honor's

23    schedule is very difficult, but if there were a time the

24    following week, that would be ideal.

25          THE COURT:  That's the week of the 8th -- or --

1  the week of the 8th, right?

2         MR. LEBLANC:  Yes, Your Honor, the week of the

3  8th.

4         THE COURT:  I won't be here.

5         MR. LEBLANC:  Okay.

6         THE COURT:  I'm sorry.

7         MR. LEBLANC:  I know the week of the 15th is bad

8  for the people that we need here.  We already have a date on

9  the 22nd, Your Honor, which I think was the date that

10  Inmarsat's motion -- I don't know if we've lost that date

11  because that was the date that Inmarsat's motion was

12  originally scheduled for.

13         THE COURT:  No, we've got you on the calendar on

14  the 22nd.  The one sensitivity I have with that date is that

15  Rosh Hashanah starts that evening and so it could be

16  problematic for people.  I mean, I'm willing to say certainly

17  that anybody who would want to appear by Zoom can do so, and

18  I guess we're only in -- we're only in mid-September at that

19  point, so we probably don't have to worry about running too

20  late, but I suspect that people also have things they want to

21  do with family.

22         So I want to keep that date, I don't want it to be

23  -- I want to balance those concerns.

24         MR. LEBLANC:  No, I totally understand.  And, as

25  Your Honor knows, we filed our -- I don't know if Your Honor

1  knows this -- we filed our voting report and other plan

2  supplement documents in our reply brief last night, we only

3  have one objection raised by the United States Trustee to

4  confirmation, so I don't think it's going to be a very

5  lengthy hearing.

6         Why don't -- Your Honor, we'll caucus with

7  everybody, but it sounds like the 22nd is the next available

8  date that the Court would have for us?

9         THE COURT:  Yeah, because the 8th through the

10 12th, I'm just --

11        MR. LEBLANC:  And how about --

12        THE COURT:  -- not going to be in Delaware.

13        MR. LEBLANC:  -- even next -- how about a week

14 from today, the 5th, Your Honor, would that fit with the

15 Court's calendar?

16        THE COURT:  I have a confirmation hearing that I

17 don't expect at this point to be very quick.

18        MR. LEBLANC:  Okay.

19        THE COURT:  The --

20        MR. LEBLANC:  So, let us caucus, Your Honor, and

21 we'll have --

22        THE COURT:  Yeah.  I mean --

23        MR. LEBLANC:  -- or with Pachulski --

24        THE COURT:  -- there's a possibility on the 15th,

25 I will be here for a day before going out to NCBJ --

```
 1                MS. PRIMOFF:  I apologize, we have conflicts on

 2   the 15th.

 3                THE COURT:  It doesn't work on the 15th?  Okay.

 4                MR. LEBLANC:  We don't have to do this on the fly,

 5   Your Honor.  We'll -- if Your Honor can maintain the date of

 6   the 22nd for now with the recognition that it could be hybrid

 7   for those that respect Rosh Hashanah --

 8                THE COURT:  Yeah.  And, you know, it's on for 2

 9   o'clock, as you're all aware, like I've got three hearings

10   scheduled before that.  I don't know if any of them are going

11   to happen.  You know, it's just always the way it goes in

12   bankruptcy, right?  So --

13                MR. LEBLANC:  Yes.

14                THE COURT:  -- if we can move it up, we'll move it

15   up --

16                MR. LEBLANC:  Okay.

17                THE COURT:  -- so that it's earlier in the day and

18   gives people a little bit more cushion.

19                MR. LEBLANC:  We appreciate that, Your Honor.

20                THE COURT:  Yeah, I appreciate it.

21                MR. LEBLANC:  And we'll also be in -- we'll be in

22   contact with chambers with Pachulski to make sure -- with

23   Pachulski and Richards, Layton to make sure that we can

24   accommodate that timing, but we'll -- certainly from the

25   debtors' perspective, Your Honor -- and I will speak for AST,
```

1  although if she disagrees she can tell me, Ms. Primoff can --

2  we will work with -- even before we have an order entered, we

3  will try to get completed on the direction the Court has

4  given us at this hearing with respect to these issues.

5          THE COURT:  Okay.  Mr. Finestone?

6          MR. FINESTONE:  Ben Finestone on behalf of

7  Inmarsat and Viasat.  Thank you, Your Honor.  Can I just ask

8  for some clarification on the Court's ruling or I'll throw

9  out my interpretation of it.

10          And maybe it's not ambiguous, so I apologize, but

11  the Court is directing the parties to take the text of the

12  mediated agreement and basically implement that text without

13  variance into the new cooperation agreement and to the new

14  agreement as between my client and AST.  The parties are

15  expected to then perform under that contract, and I'm focused

16  on AST making the payments that it's obligated to make, and

17  then -- but one thing that Your Honor is not doing today, and

18  this is just -- I want to clarify, Your Honor is not

19  rejecting the notion that there is -- Your Honor is not

20  ruling on whether there's a case or controversy one way or

21  the other such that if the parties do have the dispute that

22  I've been forthright with the Court I do think we think have,

23  then the parties will be able to go to whatever court has the

24  appropriate jurisdiction to resolve that dispute.  I think

25  that's Your Honor's ruling.  I'm saying it less so for the

1    Court, I think that's what I heard from the Court, but if

2    either of these other parties disagrees with it, they should

3    say so now.

4                  Thank you, Your Honor.

5                  THE COURT:  Yeah.  And to put a finer point on it,

6    paragraph 1 of the settlement term sheet provides and I'm

7    ordering that the terms of the settlement term sheet be

8    incorporated into the mediated agreements as applicable, but

9    also it provides that any further modifications of those

10   terms can be done with the consent of each consenting

11   mediation party.  So, there's a mechanism if there are agreed

12   changes.

13                 MR. FINESTONE:  Thank you, Your Honor.

14                 THE COURT:  Okay?

15                 MR. LEBLANC:  We certainly agree with that.  The

16   mediation agreement has been ordered by the Court, we believe

17   it to have been binding, and I think the point is we've

18   reached an impasse on trying to come up with words to

19   translate that language because we don't agree and so we're

20   just going to use the words of that -- unless we agree to

21   other words, which is fine, but if we don't, we're just going

22   to drop it in and try to get this done as quickly as

23   possible.

24                 THE COURT:  And I'm probably asking the most

25   obvious question that I could, but have you thought about

37

 1  going back to Judge Drain and seeing if he can help?

 2           MR. LEBLANC:  We have certainly talked to him,

 3  Your Honor.  I won't tell you what his reaction was, but

 4  we're here.

 5           THE COURT:  Okay, okay, I understand.

 6           MR. FINESTONE:  We had no objection to doing that.

 7  I think we proposed it and it was rejected.

 8           THE COURT:  Okay, okay, that's fine.

 9           MR. LEBLANC:  Your Honor, it wasn't rejected by

10  us, if that was the implication.  We talked to Judge Drain --

11           THE COURT:  I understand, I understand.

12           Okay, that's all for today then?

13           MR. LEBLANC:  That's all for Ligado, Your Honor.

14           THE COURT:  Okay, okay.  I appreciate, again, the

15  very thoughtful papers and the discussion today.  Okay?

16           So, have a good weekend.  We're adjourned.

17       (Proceedings concluded at 1:48 p.m.)

18

19

20

21

22

23

24

25

1                          <u>CERTIFICATION</u>

2              I certify that the foregoing is a correct

3    transcript from the electronic sound recording of the

4    proceedings in the above-entitled matter to the best of my

5    knowledge and ability.

6

7    <u>/s/ William J. Garling</u>                    <u>August 29, 2025</u>

8    William J. Garling, CET-543

9    Certified Court Transcriptionist

10   For Reliable

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25