UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INMARSAT GLOBAL LIMITED,<br><br>          Appellant,<br><br>v.<br><br>AST & SCIENCE, LLC, and LIGADO NETWORKS, LLC,<br><br>          Appellees. | Civ. No. 26-cv-118 (GBW)<br><br>Bankruptcy Case No. 25-10006 (TMH) |

**DECLARATION OF DOUGLAS SMITH IN SUPPORT OF LIGADO'S OBJECTION TO INMARSAT GLOBAL LIMITED'S EMERGENCY MOTION FOR STAY PENDING APPEAL**

I, Douglas Smith, hereby declare and state as follows:

      1.     I am the Chief Executive Officer of Ligado Networks, LLC (together with its affiliates, "Ligado").[1] I have been employed in this and other capacities by Ligado since 2010. Accordingly, I am familiar with the Debtors' day-to-day operations, business, and financial affairs,

      2.     I respectfully submit this declaration in support of the Objection, filed contemporaneously herewith.

---

[1] Capitalized terms not defined herein have the meanings ascribed to them in the Objection.

3. Ligado is licensed by the FCC and Innovation, Science & Economic Development Canada ("ISED") as a mobile satellite services operator in the L-Band in the United States and Canadian parts of International Telecommunications Union Region 2. Ligado has fully coordinated its spectrum with all other North American Region 2 L-band operators.

**Coordination**

4. I have reviewed the Declaration of John P. Janka ("Janka Declaration"), dated February 3, 2026. In the Janka Declaration, he states that coordination consists of "exchanging technical information and agreeing on technical, geographic, and other parameters and limitations, so that the operations of different satellite systems and networks do not interfere with one another." Janka Declaration ¶ 7.

5. Currently, Ligado and Inmarsat coordinate their respective satellite operations pursuant to the terms of the 2010 Amended and Restated Cooperation Agreement, generally referred to as the "Cooperation Agreement." The Cooperation Agreement was first executed in 2007, and has been amended many times by mutual agreement of Ligado and Inmarsat. The Cooperation Agreement was most recently amended when the parties amended the Cooperation Agreement to incorporate the provisions of a "Mediated Agreement" dated June 10, 2025, which they arrived at as a result of bankruptcy court-ordered mediation following Ligado's and certain of

its affiliates' commencement of chapter 11 bankruptcy cases in the United States Bankruptcy Court for the District of Delaware on or about January 6, 2025.

6. The Cooperation Agreement provides for satellite coordination of the L-band for the North American operations of Ligado and Inmarsat, assignments and use of the L-band spectrum, and certain technical and operational issues. For example, Exhibit L (L-band coordination plan) defines the spectrum sharing constraints the parties agreed to apply to their satellite operations. As reflected in the Mediated Agreement, AST & Science, LLC ("AST") has agreed to be bound by those parameters.

7. Specifically, Section 2 of the Mediated Agreement states that applications submitted to the FCC in the United States and ISED in Canada related to the Proposed NGSO System shall state that the operations of all AST and Ligado spacecraft "individually and taken as a whole, and regardless of orbit, will be consistent with and remain within the technical, geographic and other limitations in the Amended Inmarsat Cooperation Agreement and Ligado's other coordination agreements with various parties." Section 2 of the Mediated Agreement then proceeds to provide further detail technical and geographic requirements including "those limiting the Ligado service areas under the different Tiers in the [Cooperation Agreement] and . . . those limiting co-channel and non-co-channel operations, both uplink and downlink, which will not change."

8. As was required under the Mediated Agreement, and as incorporated into the Cooperation Agreement, Ligado and AST have agreed that the Proposed NGSO System will comply with the dozens of pages of parameters and limitations set forth in the Cooperation Agreement and Mediated Agreement.

9. The parameters and limitations set forth in the Cooperation Agreement apply to all Mobile Satellite Service, meaning for both geostationary orbit ("GSO") and non-geostationary orbit ("NGSO") systems, thus giving effect to the Mediated Agreement's requirement that the parameters and limitations apply "regardless of orbit."

10. Generally, coordination agreements are intended to address the risk of spectrum interference between satellite networks; they are not intended to address the risk of physical collision between satellite networks. This risk is addressed by national and international requirements regarding the spacing of GSO systems and designation of specific orbital altitudes for NGSO systems. Coordination agreements between GSO and NGSO systems would not address collision risks because the systems operate in completely different orbits—roughly 100–1200 miles for NGSO systems and *over 22,000 miles* for GSO systems such as those currently operated by Inmarsat and Ligado. Accordingly, the Cooperation Agreement does not address and does not need to address collision risk, nor has Inmarsat ever suggested adding technical parameters to address such risk.

**Cooperation Agreement**

11. The excerpt included at paragraph 16 of the Janka Declaration was the result of a common effort between Inmarsat and Ligado to draft a comprehensive amendment to the Cooperation Agreement and, as part of that effort, to streamline and update the Cooperation Agreement.

12. For example, Exhibit I to the Cooperation Agreement lists certain satellites that are coordinated under the Cooperation Agreement. Exhibit I is meant to add satellite networks that have been submitted to the International Telecommunications Union ("ITU"). A number of existing satellite networks of Inmarsat are not listed in Exhibit I but are nonetheless subject to the technical and geographic parameters of the Cooperation Agreement. Moreover, Inmarsat has registered multiple GSO and NGSO satellite networks with the ITU that are not listed in Exhibit I. While Exhibit I serves as a useful administrative tool for the parties, the parameters and technical requirements of the Cooperation Agreement apply to all of the parties' satellites operating in the L-band regardless, and they apply to the Proposed NGSO System by operation of the parties' agreement to the Mediated Agreement and its incorporation into the Cooperation Agreement by amendment. As such, amendments to Exhibit I are not necessary to avoid interference.

13. By way of further example, historically, there were more than a dozen spectrum plans built into the Cooperation Agreement, but today, only one spectrum plan remains relevant. Accordingly, Ligado's suggested edits to the agreement were primarily aimed at omitting at least twelve unnecessary exhibits and updating Exhibit L to eliminate references to the outdated spectrum plans.

14. Similarly, the proposed Exhibit M was to add a summary of NGSO operational requirements that were consistent with existing Cooperation Agreement, which requirements Inmarsat has been aware of since at least April 23, 2025 when Ligado produced the exhibits to the Collaboration Agreement to Inmarsat. This summary does not introduce additional or different technical or geographic parameters that are necessary to preclude interference.

15. Since the Mediated Agreement was approved, Inmarsat has not suggested further technical or geographic limitations necessary to prevent interference. The proposed changes to the existing Cooperation Agreement instead have focused on administrative and procedural terms (such as streamlining spectrum exhibits and listing additional satellites) under the Cooperation Agreement.

16. There is no further coordination that is essential to ensure the Proposed NGSO System can operate without interference to Inmarsat's business and customers. The limitations set forth in the Cooperation Agreement, by which Ligado

and AST agreed the Proposed NGSO System would be bound, are sufficient to prevent harmful interference.

17. A cornerstone of Ligado's reorganization Plan is the AST Transaction, a long-term commercial transaction between Ligado and AST. Pursuant to the AST Transaction, Ligado agreed to permit AST to use certain of its licensed L-Band spectrum in exchange for certain monetary compensation.

18. Ligado's Plan was confirmed on or about September 29, 2025. On or about October 31, 2025, Ligado and AST made a payment to Inmarsat of approximately $420 million. A further, approximately $100 million payment is due March 31, 2026. The payment amount incorporated into the Mediated Agreement resolves many outstanding disputes, not just a cure amount dispute, between Ligado and Inmarsat, including a lawsuit previously commenced by Ligado against Inmarsat.

19. A condition precedent to the Effective Date is FCC and ISED approval of a modification to Ligado's licenses to allow operations of the Proposed NGSO System. In addition, pursuant to the AST Definitive Documents, Ligado filed the Application with the FCC on December 8, 2025, in advance of the December 23, 2025 deadline set forth in the AST Definitive Agreements. Ligado and AST are still in the process of preparing the ISED application, which will be shared with Inmarsat in accordance with the Mediated Agreement.

20. On January 30, 2026, the FCC issued a Public Notice seeking comments for the Application, which initial public comment period closes on March 2, 2026. This is the time period during which Inmarsat would submit its statement in support of the Application. In addition, pursuant to the Mediated Agreement, Inmarsat is obligated to share the draft statement in support with Ligado at least seven days prior to submission, making the latest such date for sharing a draft, February 23, 2026.

21. The regulatory approval process is uncertain and Ligado viewed the lack of Inmarsat's objection to, and indeed, affirmative support of, the Application to have tremendous value in significantly reducing uncertainty and potential delay in the regulatory approval process. By threatening to not support but oppose the Application, Inmarsat has unfairly injected uncertainty and potential delay into the approval process, causing harm to Ligado.

22. Such uncertainty and delay benefits Inmarsat, who is not only a spectrum partner of Ligado, but also a competitor of Ligado and AST. Any delay and uncertainty in the FCC's approval of the Application benefits Inmarsat, as competitor.

23. Ligado and AST have agreed that "the operations of all AST and Ligado spacecraft, individually and taken as a whole, and regardless of orbit, will be consistent with and remain within the technical, geographic and other limitations in

the Amended Inmarsat Cooperation Agreements and Ligado's other coordination agreements with various parties." Agreeing to be so bound ensures that the Proposed NGSO System will comply with all existing limitations and thereby not cause interference with Inmarsat's satellite systems.

24. In any event, the Cooperation Agreement, as a result of incorporating the terms of the Mediated Agreement by amendment, includes a specific mechanism whereby Inmarsat can promptly and efficiently seek resolution if the operations of the Proposed NGSO System do interfere with Inmarsat's systems. Accordingly, Inmarsat does not suffer any harm by supporting the Application.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on: February 11, 2026         */s/ Douglas Smith*
                                        Douglas Smith