IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INMARSAT GLOBAL LIMITED,<br><br>Appellant,<br><br>v.<br><br>AST & SCIENCE, LLC, and LIGADO NETWORKS, LLC,<br><br>Appellees. | Case No. 1:26-cv-00118-GBW<br><br>Bankruptcy Case No. 25-10006 (TMH) |

**APPELLANT INMARSAT GLOBAL LIMITED'S REPLY IN SUPPORT OF EMERGENCY MOTION FOR STAY PENDING APPEAL**

Appellant Inmarsat[1] hereby replies to the objections of Appellees Ligado[2] and AST[3] to Inmarsat's emergency motion for a stay pending appeal.

## I.   PRELIMINARY STATEMENT

None of Appellees' arguments change the simple fact that Inmarsat faces immediate, irreparable harm from the Bankruptcy Court's order: By March 2, it must make a statement that it believes to be false to a federal agency and it must imminently dismiss *with prejudice* a lawsuit in another court. Absent a stay, Inmarsat will lose the right to effective appellate review.

That result would be particularly objectionable because Inmarsat is highly likely to prevail in this appeal. Most clearly, the Bankruptcy Court erred by summarily ordering specific

---

[1] Otherwise undefined capitalized terms have same meanings as in the *Emergency Motion for Stay Pending Appeal* (D.I. 3) (the "Motion" or "Mot.").

[2] *Ligado's Objection to Inmarsat Global Limited's Emergency Motion for Stay Pending Appeal* (D.I. 22) ("Ligado Obj.").

[3] *Objection by Appellee AST & Science LLC to Motion for Stay Pending Appeal* (D.I. 19) ("AST Obj.").

performance on 12-days' notice without an adversary proceeding or taking testimony on hotly disputed facts. Appellees' claim that the court was merely enforcing a prior order is pure fiction. The Bankruptcy Court pointed to no language in any prior order that Inmarsat violated, and neither do Appellees. Indeed, the opposite was true: The Bankruptcy Court had refused to interpret the parties' agreement in August 2025, instead directing the parties to take any disputes to New York—exactly what Inmarsat did. For those and other reasons, it would be a miscarriage of justice to effectively eliminate Inmarsat's right to appellate review by denying a stay.

The Court should grant the stay.

## II.  ARGUMENT

### A.  Inmarsat Faces Imminent, Irreparable Harm Absent a Stay.

Absent a stay, a successful appeal will be of little use. Mot. at 9-10. The FCC comment period closes on March 2, after which it will be too late for Inmarsat to alert the agency to its serious coordination concerns. If the FCC approves Ligado's application on the false premise that coordination has been completed, Inmarsat will be stuck with coordination terms not suited to NGSO operations. Moreover, forcing Inmarsat to make what it believes is a misrepresentation to its primary U.S. regulator would irreparably compromise Inmarsat's reputation with the FCC. Mot. at 10.[4]

That Inmarsat may assert a "Coordination Breach" if AST's eventual operations cause interference (Ligado Obj. ¶ 43; AST Obj. at 10) is irrelevant because, in that scenario, what constitutes a "Coordination Breach" will be frozen in amber based on rules that the parties adopted for GSOs and that have not been modified since 2010.[5] Defining the metes and bounds of a

---

[4]  *See also Declaration of John P. Janka* (D.I. 6) ("Orig. Janka Decl.) ¶ 31.

[5]  *See Reply Declaration of John P. Janka*, filed contemporaneously herewith ("Janka Reply Decl.") ¶ 28.

Coordination Breach is a critical part of the NGSO coordination work that remains undone. Consider an analogy: If Carlos Alcaraz is practicing before a match and notices that the court's lines are painted wrong (*e.g.*, in a circle instead of a rectangle), it is no answer to say that when the match starts the chair umpire will still be able to call balls in or out. Here, too, the boundaries need to be drawn correctly ahead of time.

Separately, if Inmarsat prevails on appeal, a prior dismissal of the New York complaint "with prejudice" risks Inmarsat being forever precluded from pursuing its claims anywhere. Mot. at 10. Ligado responds with the unremarkable observation that, when "judgment is reversed, it lacks preclusive effect." Ligado Obj. ¶ 45. But this case is not a direct appeal of—and thus this Court cannot "reverse"—a dismissal with prejudice in the New York case. Neither Appellee cited a single case where a party that violated the automatic stay was forced to dismiss its case pending in another court *with prejudice*. Inmarsat similarly found none.

### B. Appellees Do Not Face Irreparable Harm.

Appellees face little cognizable harm from a stay that merely permits the FCC to consider a complete record when independently adjudicating Ligado's application. Mot. at 17. There is no reason the application must proceed on the existing schedule. Ligado could easily ask the FCC to defer processing the application, extend the comment period, or even withdraw the application without prejudice to refiling. Orig. Janka Decl. ¶¶ 32-33. Neither Appellee attempts to explain why these options are unavailable.

Appellees wildly claim that, without Inmarsat's support before the FCC, they could lose "the entire AST Transaction." AST Obj. at 15; *see also* Ligado Obj. ¶ 46. But they do not explain how, if the FCC makes the independent judgment that more coordination work is necessary, that will amount to a cognizable "harm"—as opposed to a vindication of Inmarsat's legitimate concerns. Nor do they explain how that outcome will foreclose a renewed application after proper

coordination. The Cooperation Agreement term lasts another *81 years*, and under the bankruptcy Plan, Ligado has *over 3 years* to obtain regulatory approval. Bankr. D.I. 2 § 4.04(p).

### C. Inmarsat Will Prevail On The Merits.

Inmarsat has more than "a reasonable chance, or probability, of winning" its appeal. *In re Revel AC, Inc.*, 802 F.3d 558, 568-69 (3d Cir. 2015) (noting that "the likelihood of winning on appeal need not be more likely than not").

*First*, the Bankruptcy Court could not order specific performance or injunctive relief without holding an adversary proceeding. Fed. R. Bankr. P. 7001(g). Appellees claim that no adversary proceeding was necessary because the court was merely "enforcing" its prior orders. AST Obj. at 12; Ligado Obj. ¶ 26. But neither the Bankruptcy Court nor Appellees cite any language from a court order that was supposedly violated. There was no order requiring Inmarsat to support the FCC application. Any Inmarsat support obligation is contingent on conditions precedent whose fulfillment is precisely what the parties dispute. Resolving that dispute required fact-finding based on evidence, not summary adjudication by motion.

Appellees' contrary arguments miss the mark. First, nearly all of their arguments focus on jurisdiction. But Inmarsat disputes the lack of process and remedy, not jurisdiction. Rule 7001(g) requires an adversary proceeding prior to granting injunctive relief absent the narrow exception inapplicable here, even where the court has jurisdiction.

AST also asserts that "a bankruptcy court may grant injunctive relief without an adversary proceeding even when it is not enforcing an existing injunction," where "provided in" a plan. AST Obj. at 12 (citing Fed. R. Bankr. P. 7001(g)). That matters not here, because neither the Plan, nor any prior order, contains any terms that direct Inmarsat to support the FCC application or "provide" for specific performance under the Post-Petition Contracts.

Ligado points to the order under appeal as its own justification—but that circular logic necessarily fails. Ligado Obj. ¶ 28. So does its general citation to Plan Article V.C.3, which provides generally that "the parties agree to perform in accordance with" the Term Sheet but does not interpret what that requires. Ex. 3 ¶ 6.[6] Meanwhile, the Enforcement Order merely directed the parties to incorporate the Term Sheet language into the definitive agreements—which Inmarsat did—while expressly reserving "[a]ll parties' rights" including "the matters presented to the Court in connection with the Motions to Enforce." Ex. 10 ¶ 5. But now, the Bankruptcy Court determined those rights, concluded Inmarsat breached, and compelled specific performance. None of the preexisting orders provide for that remedy. That is *new* injunctive relief, so Rule 7001(g) required it be sought through an adversary proceeding.

Appellees' cases do not help. *Lazy Days* held that an adversary proceeding was not required "because the Bankruptcy Court was only adjudicating a motion to reopen in order to interpret *and enforce its existing prior order*." 724 F.3d 418, 425 (3d Cir. 2013) (emphasis added). Reopening a case is a far cry from ordering specific performance, and construing one's own order bears no resemblance to interpreting a private contract whose disputed terms the court had expressly declined to resolve. *JAB Energy* is equally unavailing. There, the Third Circuit rejected the appellant's procedural objection (after siding with it on the merits) because an adversary proceeding would have yielded "no meaningful difference in the record, which concerned only the interpretation of plan language." 2025 WL 1937083, at *3 (3d Cir. July 15, 2025). Here, the Bankruptcy Court interpreted private contractual language without an undisputed record. An adversary proceeding was not only required, but also would have yielded a meaningful difference

---

[6] Citations in the form "Ex. [letter]" and "Ex. [number]" refer to the exhibits to the Declaration of Kate Scherling (D.I. 5) and the Original Janka Declaration, respectively.

in the record (as the parties' competing declarations submitted on this Motion prove). And even if the dispute could have been adjudicated as a contested matter under Rule 9014, the disputed facts *still* required an "evidentiary hearing." Fed. R. Bankr. P. 9014, advisory committee's note to 2002 amend. The Bankruptcy Court erred by summarily resolving, among other things, what constitutes international satellite "coordination" without any testimony, cross-examination, or documentary evidence.

Appellees' remaining arguments amount to little. That the parties filed cross-motions in August 2025 without adversary proceedings proves nothing; those motions proceeded by mutual consent and sought fundamentally different relief, *i.e.*, that the parties be directed to enter into the Post-Petition Contracts. As for Inmarsat's failure to seek discovery, Appellees have it backwards: The whole point of Rule 7001(g) is to provide sufficient time for discovery and to impose other procedural protections. Appellees cite no authority that a party waives its right to an adversary proceeding by failing to seek discovery when an adversary proceeding is improperly denied.

*Second*, like the Bankruptcy Court, Appellees cannot identify how the New York action sought to "obtain possession of" or "exercise control over" Ligado's property such that it violated Bankruptcy Code section 362(a)(3). Inmarsat is not seeking to confiscate or control Ligado's FCC license or strip it of its bona fide rights under the Post-Petition Contracts, but rather to ensure that Ligado complies with those Post-Petition Contracts and truthfully represents the parties' positions to the FCC. The automatic stay does not operate to enjoin such actions. *See Larami Ltd. v. Yes! Ent. Corp.*, 244 B.R. 56, 59 (D.N.J. 2000); *In re Kish*, 41 B.R. 620, 623 (Bankr. E.D. Mich. 1984).

And with respect to the Bankruptcy Court's about-face from its previous direction to the parties to follow the Post-Petition Contracts' venue provisions in resolving future disputes, Appellees simply ignore what the Bankruptcy Court actually said: "[I]f there is a dispute [under

the Post-Petition Contracts], Inmarsat, to the extent they need it, **they have stay relief** and they can go pursue it wherever they need to pursue it." Ex. 11 at 28:20-22 (emphasis added).

Appellees also cannot defend the Bankruptcy Court's failure to apply 28 U.S.C. § 959. The New York action is premised upon Ligado's refusal to coordinate and false statements to the FCC—acts done in the conduct of its "go-forward business," Ex. C ¶ 36, not the performance of tasks incident to the administration of its estate. Ligado's only citation actually supports the view that section 959 applies here. Ligado Obj. ¶ 34 (citing *In re VistaCare Grp., LLC*, 678 F.3d 218, 277 (3d Cir. 2012)).

*Third*, even if Inmarsat violated the stay, the Bankruptcy Court erred in ordering the dismissal of the New York action *with prejudice*. Appellees have no response to Third Circuit precedent that proceedings that violate the automatic stay "are void *ab initio*[,]" *Maritime Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1206 (3d Cir. 1991), which is incompatible with dismissal with prejudice, and which is why such dismissals are "without prejudice." *Hearst Mags. v. Stephen L. Geller, Inc.*, 2009 WL 812039, at *2 (S.D.N.Y. Mar. 25, 2009) (citing cases). The sole case cited by either Appellee (Ligado Obj. ¶ 39) involved a different situation entirely: The dismissal of an adversary proceeding pending before that same bankruptcy court. *See Armstrong v. Bailey*, 2000 WL 33363300, at *1 (D. Utah May 18, 2000).

*Finally*, the Bankruptcy Court erred in concluding Inmarsat has a duty under the Post-Petition Contracts to support Ligado's FCC application even where the NGSO system has not been coordinated (yet Ligado falsely states otherwise). The Bankruptcy Court, and the Appellees, justify this ruling by claiming that the Term Sheet did not require anything beyond a representation to the FCC that AST's NGSO system would operate within the pre-existing GSO coordination terms under the existing Cooperation Agreement. This is demonstrably false. Any sensible interpretation

of the express requirement to request that the FCC "recognize that the operations of the Proposed NGSO System *have been* coordinated" means that coordination must, in fact, occur beforehand. Ex. 3 at Ex. 1 § 2 (emphasis added). Notably, the Term Sheet contemplated the parties' entry into the "Amended Inmarsat Cooperation Agreement," defined as "the Amendment and Restatement to the Inmarsat Cooperation Agreement contemplated by this Term Sheet." *Id.* at 1 n. 4. The reason the agreement was to be "Restate[d]" was precisely because it would have new coordination terms adapted to NGSO systems. Janka Reply Decl. ¶¶ 3, 7. Indeed, the parties spent months negotiating new coordination terms; efforts that cannot be squared with Appellees' current argument. Orig. Janka Decl. ¶¶ 15-19; Exs. 4-9; Janka Reply Decl. ¶¶ 4-6, 8-20. The Bankruptcy Court overlooked entirely this powerful course-of-dealing evidence.

### D. Public Interest Heavily Favors Truthful Disclosure To The FCC.

Appellees fail to seriously dispute the public interest advanced by ensuring the FCC can consider all parties' views concerning Ligado's application, an exercise statutorily-grounded in advancing the "public interest." 47 U.S.C. § 303(y)(2). Whatever abstract interest there is in a private company's "quick and successful reorganization" generally (Ligado Obj. ¶ 48) it does not override the need to provide a federal agency with complete and truthful information to evaluate an important issue that necessarily affects the public.

As for the balance of harms, Inmarsat faces the irreparable harm discussed above, whereas Appellees face, at most, the risk of some delay in the processing of an FCC application that they never should have filed before completing the necessary coordination. Appellees assert that a stay would deprive them of the consideration supposedly expected in return for their $420 million cure payment (AST Obj. at 14), but, as noted in the Motion (at 17), the $420 million represents a compromise cure payment for amounts years past due, discounted by over $100 million. Ex. 3, Ex. 1 § 4.

### E. No Bond Is Required.

The Court should not impose any bond because any adverse FCC decision would result from the FCC's *independent* judgment—not from Inmarsat's expression of its views. Mot. at 18. Appellees ask for a staggering *$535 million* bond, but the request rests on the erroneous assumption that an adverse determination from the FCC (i) will end the transaction once and for all, as opposed to merely causing a minor (and avoidable) delay, and (ii) will be the fault of Inmarsat for having stated its views, as opposed to the FCC's public interest determination. Ligado Obj. ¶¶ 50-51; AST Obj. at 16. Neither assumption is correct, and Appellees lack any basis to suggest that a brief stay will cause them any recoverable damage.

### III. CONCLUSION

WHEREFORE, for the foregoing reasons, Inmarsat respectfully requests that the Court grant the Motion and such other or further relief as is just and reasonable.

Dated: February 16, 2026

STEPTOE LLP

By: */s/ Alfred M. Mamlet*
    Alfred M. Mamlet (admitted *pro hac vice*)
    1330 Connecticut Ave NW
    Washington, DC 20036
    (202) 429-3000
    amamlet@steptoe.com

    Charles Michael (admitted *pro hac vice*)
    1114 Avenue of the Americas
    New York, New York 10036
    (212) 506-3900
    cmichael@steptoe.com

PACHULSKI STANG ZIEHL & JONES LLP

By: */s/ Peter J. Keane*
    Laura Davis Jones (DE Bar No. 2436)
    Peter J. Keane (DE Bar No. 5503)
    919 N. Market Street, 17th Floor
    P.O. Box 8705
    Wilmington, DE 19899-8705
    (302) 652-4100
    ljones@pszjlaw.com
    pkeane@pszjlaw.com


QUINN EMANUEL URQUHART & SULLIVAN, LLP

By: */s/ Benjamin Finestone*
    Benjamin Finestone
    Kate Scherling
    295 5th Avenue
    New York, NY  10016
    (212) 849-7000
    benjaminfinestone@quinnemanuel.com
    katescherling@quinnemanuel.com

    John Bash
    Jacob C. Beach
    300 West 6th St., Suite 2010
    Austin, TX  78701
    (737) 667-6100
    johnbash@quinnemanuel.com
    jacobbeach@quinnemanuel.com

*Counsel for Inmarsat Global Limited*

**CERTIFICATE OF COMPLIANCE PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 8015(h)**

The undersigned certifies that *Appellant Inmarsat Global Limited's Reply in Support of Emergency Motion for Stay Pending Appeal* does not exceed 2,600 words in accordance with Federal Rules of Bankruptcy Procedure 8013(f)(3)(C) and 8015(h).

Dated: February 16, 2026                            PACHULSKI STANG ZIEHL & JONES LLP

                                                                           By:   */s/ Peter J. Keane*