**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| LIGADO NETWORKS LLC, *et al.*,[1] | Case No. 25-10006 (TMH) |
| Debtors. | (Jointly Administered) |
| Ligado Networks LLC, et al. & AST & Science LLC, | |
| Appellants, | |
| v. | Civil Action No. 1:26-cv-00118-GBW |
| Inmarsat Global Limited, | |
| Appellee. | |

**NOTICE OF APPEAL BY AST & SCIENCE LLC
<u>TO THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT</u>**

**PLEASE TAKE NOTICE THAT** Appellant AST & Science LLC hereby appeals to the

United States Court of Appeals for the Third Circuit from the District Court's Order (the "**Order**")

(ECF No. 46) entered on February 27, 2026 (attached hereto as **<u>Exhibit A</u>**), the reasons for which

explained in the District Court's Memorandum (ECF. No. 45) of the same date (attached hereto as

**<u>Exhibit B</u>**).

---

[1]     The Debtors are: Ligado Networks LLC; ATC Technologies, LLC; Ligado Networks (Canada) Inc.; Ligado Networks Build LLC; Ligado Networks Corp.; Ligado Networks Finance LLC; Ligado Networks Holdings (Canada) Inc.; Ligado Networks Inc. of Virginia; Ligado Networks Subsidiary LLC; One Dot Six LLC; and One Dot Six TVCC LLC.

**PLEASE TAKE FURTHER NOTICE** that the names and addresses of the parties' respective attorneys are as follows:

Appellant:                               AST & Science LLC[2]

Counsel for Appellant AST &      **POTTER ANDERSON & CORROON LLP**
Science LLC:                           Jeremy W. Ryan
                                             Katelin A. Morales
                                             Sameen Rizvi
                                             1313 N. Market Street, 6th Floor
                                             Wilmington, DE 19801
                                             Telephone: (302) 984-6000
                                             Facsimile: (302) 658-1192
                                             Email: jryan@potteranderson.com
                                                      kmorales@potteranderson.com
                                                      srizvi@potteranderson.com

                                             -and-

                                             **FRESHFIELDS US LLP**
                                             Madlyn Gleich Primoff, Esq.
                                             Henry Hutten, Esq.
                                             3 World Trade Center
                                             174 Greenwich Street, 51st Floor
                                             New York, New York 10007
                                             Telephone: (212) 277-4000
                                             Facsimile: (212) 277-4001
                                             Email: madlyn.primoff@freshfields.com
                                                      henry.hutten@freshfields.com

                                             *Counsel to Appellant AST & Science LLC*

Counsel for Ligado:                **RICHARDS, LAYTON & FINGER, P.A.**
                                             Mark D. Collins, Esq.
                                             Michael J. Merchant, Esq.
                                             Amanda R. Steele, Esq.
                                             Zachary J. Javorsky, Esq.
                                             One Rodney Square
                                             920 North King Street
                                             Wilmington, DE 19801

---

[2]      The undersigned that Ligado Networks LLC ("**Ligado**") also intends to file a notice of appeal of the Order consistent with Rule 8003(b) of the Federal Rules of Appellate Procedure.

Telephone: (302) 651-7700
Facsimile: (302) 651-7701
Email: collins@rlf.com
       merchant@rlf.com
       steele@rlf.com
       javorsky@rlf.com

-and-

**MILBANK LLP**
Dennis F. Dunne, Esq.
Matthew L. Brod, Esq.
Lauren C. Doyle, Esq.
55 Hudson Yards
New York, NY 10001
Telephone: (212) 530-5000
Facsimile: (212) 530-5219
Email: ddunne@milbank.com
       mbrod@milbank.com
       ldoyle@milbank.com

Andrew M. Leblanc, Esq.
Colleen Roh Sinzdak, Esq.
Melanie Westover Yanez, Esq.
1101 New York Avenue, NW
Washington, DC 20005
Telephone: (202) 835-7500
Facsimile: (202) 263-7586
Email: aleblanc@milbank.com
       crohsinzdak@milbank.com
       mwyanez@milbank.com

*Counsel to Ligado Networks LLC*

Appellee:                      Inmarsat Global Limited

Counsel for Appellee:         **PACHULSKI STANG ZIEHL & JONES LLP**
Laura Davis Jones
Timothy P. Cairns
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Email: ljones@pszjlaw.com
       tcairns@pszjlaw.com

-and-

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Benjamin Finestone
295 5th Avenue
New York, NY  10016
Telephone: (212) 849-7000
Email: benjaminfinestone@quinnemanuel.com

Matthew Scheck
300 West 6th St., Suite 2010
Austin, TX  78701
Telephone: (737) 667-6100
Email: matthewscheck@quinnemanuel.com

-and-

**STEPTOE LLP**
Jeffrey M. Reisner
Charles Michael
1114 Avenue of the Americas
New York, NY  10036
Telephone:  (212) 506-3900
Email: jreisner@steptoe.com
        cmichael@steptoe.com

Alfred M. Mamlet
Joshua R. Taylor
1330 Connecticut Avenue, NW
Washington, DC  20036
Telephone: (202) 429-3000
Email: amamlet@steptoe.com
        jrtaylor@steptoe.com

[*Remainder of Page Intentionally Left Blank*]

Dated: February 27, 2026
Wilmington, Delaware

/s/ Jeremy W. Ryan

**POTTER ANDERSON & CORROON LLP**
Jeremy W. Ryan (Bar No. 4057)
Katelin A. Morales (Bar No. 6683)
Sameen Rizvi (Bar No. 6902)
1313 N. Market Street, 6th Floor
Wilmington, DE 19801
Telephone: (302) 984-6000
Facsimile: (302) 658-1192
Email: jryan@potteranderson.com
        kmorales@potteranderson.com
        srizvi@potteranderson.com

-and-

**FRESHFIELDS US LLP**
Madlyn Gleich Primoff, Esq.
Henry Hutten, Esq.
3 World Trade Center
174 Greenwich Street, 51st Floor
New York, New York 10007
Telephone: (212) 277-4000
Facsimile: (212) 277-4001
Email: madlyn.primoff@freshfields.com
henry.hutten@freshfields.com

*Counsel for AST & Science LLC*

**Exhibit A**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: LIGADO NETWORKS, LLC, *et al.,* | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Case No. 25-10006 (TMH) |
| | ) | |
| INMARSAT GLOBAL LIMITED, | ) | |
| | ) | |
| Appellant, | ) | |
| v. | ) | |
| | ) | |
| AST & SCIENCE, LLC, and LIGADO | ) | Civ. No. 26-118 (GBW) |
| NETWORKS, LLC, | ) | |
| | ) | |
| Appellees. | ) | |

## ORDER

For the reasons set forth in the accompanying Memorandum issued on this date, IT IS HEREBY ORDERED that:

1.      The Motions to Seal (D.I. 7, 25, 40) are GRANTED.

2.      The Emergency Motion for Stay Pending Appeal (D.I. 3) is GRANTED.

3.      The Bankruptcy Court's Order, dated January 30, 2026 (Bankr. D.I. 1304), is hereby STAYED pending the outcome of this appeal, which the Court intends to consider on an expedited basis.

4.      The parties are directed to confer and submit a proposed schedule to govern briefing on the merits of the appeal no later than March 9, 2026.

February 27, 2026
Wilmington, Delaware

_____
HONORABLE GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE

16

**Exhibit B**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN *RE*: LIGADO NETWORKS, LLC, *et al.*, | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Case No. 25-10006 (TMH) |
| | ) | |
| INMARSAT GLOBAL LIMITED, | ) | |
| | ) | |
| Appellant, | ) | |
| v. | ) | |
| | ) | |
| AST & SCIENCE, LLC, and LIGADO | ) | Civ. No. 26-118 (GBW) |
| NETWORKS, LLC, | ) | |
| | ) | |
| Appellees. | ) | |

## MEMORANDUM

## I.    INTRODUCTION

This dispute arises in the chapter 11 cases of Ligado Networks, LLC and certain of its affiliates (together, "Ligado") and concerns the Debtors' most significant asset—its FCC and ISED licenses which permit it to operate within L-band spectrum in North America.  Appellant Inmarsat Global Limited ("Inmarsat") has appealed the Bankruptcy Court's January 30, 2026 Order (Bankr. D.I. 1304; Ex. A)[1] (the "Order") which, among other things, requires Inmarsat to affirmatively support a certain FCC license application filed by Ligado and appellee AST & Science, LLC ("AST") no later than March 2, 2026.   The Order was entered for the reasons set forth by the Bankruptcy Court on the record at the January 27, 2026 hearing (Ex. I) (the "Bench Ruling"). Pending before the Court is Inmarsat's Emergency Motion for Stay Pending Appeal of the Order (D.I. 3) (the "Emergency Stay Motion") and declarations in support (D.I. 4 (the "Janka Decl.") and

---

[1] Consistent with the Emergency Stay Motion, citations in the form "Ex. [letter]" refer to the exhibits to the Declaration of Kate Scherling (D.I. 5) and citations in the form "Ex. [number]" refer to the exhibits to the Declaration of John P. Janka (D.I. 4).

D.I. 5 (the "Scherling Decl."). On February 5, 2026, the Court issued an order setting an expedited briefing schedule with respect to the Emergency Stay Motion. (D.I. 9.) The Emergency Stay Motion is opposed by AST (D.I. 19, 20, 21) and Ligado (D.I. 22, 24). On February 16, 2026, Inmarsat filed its reply and declaration in further support of the Emergency Stay Motion (D.I. 37, 38). The Emergency Stay Motion is fully briefed. For the reasons set forth herein, the Emergency Stay Motion will be granted, and the appeal will be considered on an expedited basis.

## II. BACKGROUND

### A. Spectrum Coordination and the Cooperation Agreement

This case concerns the highly valuable "L-band" spectrum.[2] In 2007, Inmarsat and Ligado's predecessors signed a 100-year "Cooperation Agreement" that resolved coordination[3] disputes between the parties and provided Ligado access to greater spectrum over North America in return for both a series of cash payments and certain commitments from Ligado regarding Inmarsat's spectrum rights in the rest of the world.[4] Because at the time Inmarsat and Ligado had deployed only geostationary ("GSO") satellites, the Cooperation Agreement coordinated only GSO operations.[5]

### B. Ligado's Bankruptcy

On January 5, 2025, Ligado filed for Chapter 11 relief. In connection with that filing, Ligado contracted with Appellee AST—a company that aspires to build a network of *non*-geostationary ("NSGO") satellites—through which AST would essentially sublease Ligado's spectrum usage

---

[2] Janka Decl. ¶ 4. Satellites operate via electromagnetic radio frequencies. *Id.* A range of frequencies is referred to as "spectrum." *Id.*
[3] "Coordination" refers to satellite operators making detailed technical and operational arrangements to ensure they can operate in overlapping or adjacent spectrum without interference. *Id.* ¶ 7.
[4] *Id.* ¶ 9
[5] *Id.* ¶ 13.

rights under the Cooperation Agreement.[6]    Inmarsat objected to that agreement.    Following mediation, Inmarsat, Ligado, and AST executed a binding term sheet (Bankr. D.I. 692-1) (the "Settlement Term Sheet") that the Bankruptcy Court approved in June 2025.[7]   The Settlement Term Sheet set out high-level obligations the parties would codify in two future contracts: an "Amended Inmarsat Cooperation Agreement" and an "Inmarsat-AST Agreement" (together, the "Post-Petition Contracts").[8] The Term Sheet also provided that all disputes (other than one inapplicable exception) be adjudicated in New York.[9]

As relevant here, the contemplated Amended Inmarsat Cooperation Agreement would coordinate the operation of potentially hundreds of AST's NGSO satellites, which was necessary because, as noted above, the Cooperation Agreement coordinated the operation of only GSO satellites, which sit in fixed orbital positions relative to Earth.   AST seeks to operate in the L band at least ninety-six NGSO satellites that constantly speed around the Earth.[10]   There appears no dispute that those NGSO operations raise complex coordination issues that were not addressed in the original Cooperation Agreement.   The Settlement Term Sheet further contemplated that Ligado and AST would apply for FCC approval of operations over AST's proposed system with Inmarsat's support.[11]

The parties began discussing an Amended Inmarsat Cooperation Agreement to address NGSO operations before the Settlement Term Sheet was finalized.[12]    In May 2025, Ligado circulated a draft containing 46 uses of the term "NGSO", whereas the Cooperation Agreement, as

---

[6] *Id.* ¶ 11.
[7] Ex. 3 (Order dated June 23, 2025), Ex. 1 ("Mediated Agreement").
[8] Ex. 1 at 1.
[9] *Id.* at 5-6 n.12.
[10] Janka Decl. ¶ 13.
[11] Ex. 3, Ex. 1 § 2.
[12] Janka Decl. ¶ 15.

amended to date, has none.[13]  Ligado's draft recognized that both Exhibit I (list of coordinated satellites) and Exhibit L (the Coordination Plan) needed to be amended, along with a new exhibit setting forth "NGSO Operational Requirements."[14]  Discussions continued from May 2025 through July 2025, when AST proposed a fundamental change to Exhibit L that derailed discussions.[15]  The original Exhibit L has, for over 18 years, given Inmarsat "Exclusive Use" of all L-Band spectrum outside North America.  AST proposed language that would vitiate that right.

Unable to resolve that disagreement, Inmarsat and Ligado filed competing motions asking the Bankruptcy Court to enforce the Settlement Term Sheet (the "Motions to Enforce").[16]  The Bankruptcy Court held a hearing in August 2025.[17]  The Bankruptcy Court denied both Motions to Enforce and directed the parties "to incorporate the specific language of the Settlement Term Sheet [Bankr. D.I.] 692-1 into the definitive agreements."[18]  If issues arose later, the Bankruptcy Court noted, the Term Sheet "provides where you go" and "you can deal with it there."[19]  As noted, the Term Sheet set forth the parties' chosen forum—New York.

On September 2, 2025, the Bankruptcy Court issued the accompanying order directing the parties "to incorporate the specific language of the Settlement Term Sheet" into the definitive agreements.[20]  Thus, the Settlement Term Sheet—an incomplete document containing only the general terms of the parties' agreement—would be converted directly into the two Post-Petition Contracts, with no other terms added.  The parties complied.  The order provided that "[a]ll parties'

---

[13] *Id.*
[14] Ex. 4.
[15] *Id.* ¶ 19
[16] Exs. F, G.
[17] Ex. 11.
[18] *Id.* at 30:8-9.
[19] Ex. 11 at 30:12-14.
[20] Ex. 10 ¶ 3.

rights are reserved with respect to the terms and provisions" of the agreements, "including . . . the matters presented to the [Bankruptcy] Court in connection with the Motions to Enforce."[21]

On September 29, 2025, the Bankruptcy Court issued its order confirming Ligado's plan of reorganization (the "Plan").

### A. The FCC Application

In September 2025, Ligado circulated a draft FCC application.[22] Inmarsat's counsel responded that the draft did not comply with the parties' agreements.[23] In November 2025, Inmarsat's counsel communicated its position that: (i) the Proposed NGSO System was not coordinated with Inmarsat; (ii) Ligado should resume the coordination process; and (iii) Ligado should not falsely represent to the FCC that the system was coordinated.[24] Inmarsat also reiterated the absence of coordination directly to the FCC in filings dated September 9, 2025 and November 21, 2025.[25] In December 2025, Ligado unilaterally filed its FCC application.[26] The application represents that the Proposed NGSO System (referred to as "SkyTerra Next") is coordinated under the Cooperation Agreement.[27]

Less than two weeks later, Inmarsat filed an action in New York alleging that Ligado and AST breached their contractual obligation to coordinate the Proposed NGSO System before filing the FCC application and that the application falsely states coordination is complete.[28] Inmarsat sought a judicial declaration that the Proposed NGSO System was not coordinated.[29]

---

[21] *Id.* ¶ 5.
[22] Ex. 14 at 10.
[23] *Id.* at 8-9.
[24] *Id.* at 1-3.
[25] Exs. 15, 17.
[26] Ex. 19.
[27] *Id.* at 8, 12.
[28] Ex. 20.
[29] *Id.* at 22-23.

**D.    The January 30th Order**

On January 2, 2026, Ligado and AST filed in the Bankruptcy Court the motions giving rise to this appeal.[30]  Appellees asserted that Inmarsat had violated the automatic stay, and sought an injunction prohibiting Inmarsat "from pursuing [its] Complaint and any other actions outside of this Court."[31] AST further sought an injunction requiring Inmarsat to, among other things, "voluntarily dismiss the NY State Action, with prejudice."[32]  Inmarsat opposed the motions on the merits and further asserted that the Bankruptcy Rules do not allow a party to obtain an injunction by motion—only through an adversary proceeding.[33]  The Bankruptcy Court scheduled the hearing for January 14, 2026, twelve days later. The hearing was non-evidentiary; no discovery was taken, no witness testimony was adduced, and no party submitted any evidence.

Thirteen days later, the Bankruptcy Court issued an oral ruling, later set forth in the accompanying Order.[34]  The Bankruptcy Court held that Inmarsat's prosecution of the New York action violates the automatic stay because it "constitutes an attempt to exercise control over property of the estate" under 11 U.S.C. § 362(a)(3).[35]  The Bankruptcy Court also rejected Inmarsat's procedural objection that an adversary proceeding was required, holding that "under Rule 7001(g) an adversary proceeding isn't required where the relief sought is provided in a Chapter 11 plan" and the parties' agreements had been expressly incorporated into the confirmed plan.[36]  On the merits, the Bankruptcy Court interpreted the Settlement Term Sheet not to impose any *substantive* coordination obligation, but only to require that the FCC application include "a statement that

---

[30] Exs. C, D.

[31] Ex. C, Ex. A ¶ 2.

[32] Ex. D, Ex. F ¶ 5.

[33] Ex. E.

[34] Ex. A.

[35] Ex. I at 15:2-5.

[36] *Id.* at 18:2-7.

coordination exists." The Bankruptcy Court directed Inmarsat to support the FCC application and to dismiss the New York action "with prejudice."[37] The Bankruptcy Court denied Inmarsat's motion for a stay pending appeal.[38] Inmarsat timely appealed.[39]

The FCC accepted Ligado's application on January 30, 2026.[40] Comments must be filed within thirty days. 47 C.F.R. § 25.154(a)(2). If the Bankruptcy Court's Order is not stayed, therefore, Inmarsat must file a comment in support of Ligado's application by March 2, 2026.

## II.   JURISDICTION AND APPLICABLE STANDARD

This Court has jurisdiction to hear appeals "from final judgments, orders, and decrees." 28 U.S.C. § 158(a). The Order, which, *inter alia,* grants an injunction and requires Inmarsat to dismiss its New York Action with prejudice, "dispose[s] of [a] discrete dispute[] within the larger case," and is therefore final and appealable. *In re Energy Future Holdings Corp.,* 904 F.3d 298, 308 (3d Cir. 2018) (quoting *Howard Delivery Serv., Inc. v. Zurich Am. Ins. Co.*, 547 U.S. 651, 657 n.3 (2006)).

"The granting of a motion for stay pending appeal is discretionary with the court." *In re Trans World Airlines, Inc.*, 2001 WL 1820325, at *2-3 (Bankr. D. Del. Mar. 27, 2001). A stay pending appeal is an "extraordinary remedy." *In re W.R. Grace & Co.*, 475 B.R. 34, 205 (D. Del. 2012) (quoting *United States v. Cianfrani*, 573 F.2d 835, 846 (3d Cir. 1978)). The movant bears the burden of establishing that imposition of a stay is warranted. In determining whether the moving party met its burden, courts in the Third Circuit consider the following factors:

> (1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether the issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

---

[37] *Id.* at 23:5-11.
[38] Ex. A ¶ 4.
[39] D.I. 1.
[40] Ex. 21.

*In re Revel AC, Inc.*, 802 F.3d 558, 568 (3d Cir. 2015) (citing *Hilton v. Braunskill,* 481 U.S. 770, 776 (1987)). "'[T]he most critical' factors, according to the Supreme Court, are the first two: whether the stay movant has demonstrated (1) a strong showing of the likelihood of success and (2) that it will suffer irreparable harm." *Id.* (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)). Because all four factors are interconnected, the Third Circuit has instructed that the analysis should proceed as follows:

> Did the applicant make a sufficient showing that (a) it can win on the merits (significantly better than negligible but not greater than 50%) **and** (b) will suffer irreparable harm absent a stay? If it has, we balance the relative harms considering all four factors using a 'sliding scale' approach. However, if the movant does not make the requisite showings on either of these first two factors, the inquiry into the balance of harms and the public interest is unnecessary, and the stay should be denied without further analysis.

*Id.* at 571 (internal quotations and citation omitted) (emphasis in original).

## III.    ANALYSIS

### A.    Likelihood of Success on the Merits

With respect to the first factor—a strong showing of the likelihood of success—the Third Circuit has held that "a sufficient degree of success for a strong showing exists if there is a reasonable chance, or probability of winning. Thus, while it is not enough that the chance of success on the merits be better than negligible, the likelihood of winning on appeal need not be more likely than not." *Id.* at 568-69 (internal quotation marks and internal citations omitted).

As the Court writes primarily for the parties, and under the time constraint imposed by the March 2, 2026 deadline, the Court does not address the various procedural issues raised by Inmarsat. The central issue is whether the Bankruptcy Court erred in holding that Inmarsat had a duty under the Post-Petition Contracts to support Ligado's FCC application in the present circumstances. The Settlement Term Sheet, the specific language of which was incorporated into the Post-Petition Contracts, provides, *inter alia*, that, in exchange for consideration including more than $500 million,

8

Inmarsat (crucially for Ligado and AST) is required to "affirmatively support" Ligado's regulatory applications relating to the Proposed NGSO System, provided however that the applications expressly:

> (i)    state that the operations of all AST and Ligado spacecraft, individually and taken as a whole, and regardless of orbit, will be consistent with and remain within the technical, geographic and other limitations in the Amended Inmarsat Cooperation Agreement and Ligado's other coordination agreements with various parties; and

> (ii)    request that the FCC and ISED recognize that the operations of the Proposed NGSO System **have been coordinated subject to the terms of the Amended Inmarsat Cooperation Agreement and the Inmarsat-AST Agreement,** and give effect to such agreements by licensing the Proposed NGSO System to operate in accordance with the terms of such agreements.[41]

The Settlement Term Sheet, incorporated into the Post-Petition Contracts, further states that "[t]he applications will not be more granular in respect of prong (ii)" above.[42] Inmarsat also must "refrain[] from taking any public or private action contrary to any of" its Regulatory Support Obligations.[43] In the bankruptcy proceedings, Appellees argued that Ligado's FCC application meets both conditions. First, they argue, it reflects the agreement by Ligado and AST that the Proposed NGSO System's spacecraft will remain within the technical, geographic and other limitations of the Cooperation Agreement. Second, it requests the FCC recognize that the operations of the Proposed NGSO System have been coordinated subject to the terms of the relevant agreements among Inmarsat, Ligado and AST. The Bankruptcy Court agreed that the FCC Application "contains the statements, substantially in the form that were required by Section II of the [M]ediated

---

[41] *Id.* § 2 (emphasis added).
[42] *Id.* at n.8.
[43] *Id.*

[A]greement,"[44] and the "FCC [A]pplication accurately states that operations will be consistent with and remain within" the limitations "of the [Cooperation Agreement]."[45] Because "both conditions have been satisfied,"[46] the Bankruptcy Court held, Inmarsat must support the FCC application and "refrain[] from" any "action contrary to" this obligation.[47]

The Court finds that Inmarsat has demonstrated "a reasonable chance, or probability" of prevailing in this contract dispute. The Settlement Term Sheet requires the FCC application to expressly state that operations "have been coordinated" subject to the agreements.[48] A reasonable construction of that language is that the parties were required to coordinate the operations of the Proposed NGSO System *before* the FCC application was filed. The Bankruptcy Court acknowledged that the original Cooperation Agreement does not address NGSO satellites, and further acknowledged, consistent with Inmarsat's position, that the parties made extensive efforts to adapt the coordination terms accordingly after signing the Term Sheet.[49] But the Bankruptcy Court ruled that the pre-existing GSO coordination terms sufficed under the Term Sheet to provide "protections against harmful interference," irrespective of "whether the satellites are GSO or NGSO."[50]

According to Ligado, this argument fails, as "the operations of the Proposed NGSO System have been coordinated subject to the terms of the [Cooperation Agreement] and the Inmarsat-AST Agreement,"[51] because the Inmarsat-AST Agreement and the [Cooperation Agreement] incorporate the language of Sections 2 and 3 of the [Settlement Term Sheet], which language constitutes AST

---

[44] Ex. A, 12:19-21,
[45] *Id.* at 20:1-4.
[46] *Id.* at 20:6-7,
[47] Ex. C-1 § 2 (emphasis added).
[48] Ex. 3, Ex.1 ("Mediated Agreement"), § 2.
[49] Ex. I at 6:7-12; 10:1-8.
[50] *Id.* 19:18-25.
[51] Ex. C-1 § 2,

and Ligado's coordination commitments.[52]   The Court finds this argument unavailing.   Ligado essentially asserts that the "coordination of the Proposed NGSO System" required only the "commitment" made in the FCC application that the Proposed NGSO System "will be consistent with and remain within the technical, geographic and other limitations in the Amended Inmarsat Cooperation Agreement."  But the "commitment" in Ligado's FCC application requires compliance with the *Amended* Inmarsat Cooperation Agreement.   The parties spent months trying to reach agreement on amendments to the Cooperation Agreement that would coordinate the new NGSO satellites, but no agreement was reached.   It is undisputed that the provisions on the "Coordination of L-Band Spectrum" (Article 3) and the L-Band Spectrum Plan (Exhibit L) currently in effect are exactly the same as they were in 2010.   The Court agrees that if there were not going to be an amended agreement, and if the existing coordination terms from the 2010 Cooperation Agreement sufficed for the NGSO context, then the Settlement Term Sheet would have simply referred to the terms of the existing agreement, rather than requiring a new Amended Agreement.   Inmarsat has demonstrated a reasonable chance of prevailing on its argument that it was not required to support the FCC application which contains a statement that operations of the Proposed NGSO System have been coordinated.

## B.   Irreparable Harm in the Absence of a Stay

"On the second factor the applicant must demonstrate that irreparable injury is *likely* [not merely possible] in the absence of a stay.   While a reference to 'likelihood' of success on the merits has been interpreted by courts to cover the generic range of outcomes, for irreparable harm we understand the Supreme Court's use of 'likely' to mean more apt to occur than not."  *In re*

---

[52] D.I. 22 at 17; Manner Decl. ¶¶ 17-18.

*Revel AC,* 802 F.3d at 569 (emphasis in text) (internal quotation marks and internal citations omitted

Setting aside the required dismissal with prejudice of its New York action seeking clarification of these issues, Inmarsat argues that, absent a stay of the Order, it will be compelled to affirmatively support the FCC application, which, in its view, contains misrepresentations regarding coordination of the Proposed NGSO System. Ligado responds that Inmarsat is "fully protected" because under the Settlement Term Sheet, it can "seek highly expedited injunctive relief" for any "Coordination Breach" that occurs in the future.[53] Inmarsat responds that, in order to allege a "Coordination Breach," Inmarsat must identify the Cooperation Agreement limit that Ligado or AST allegedly violated. But those are precisely the limits that, in Inmarsat's view, were never clarified or amended to apply in the NGSO context. The Court agrees that if Inmarsat is forced, at the risk of contempt of Bankruptcy Court, to support the pending application, and if the Ligado application is approved, Inmarsat will have minimal realistic recourse. The 2010 coordination terms for GSOs will define what constitutes "interference," and Ligado and AST will be under no obligation to amend those coordination terms to cover NGSO satellites. If Inmarsat suffers interference, Inmarsat will not be able to obtain swift or meaningful relief from the FCC, particularly if Inmarsat supported the FCC application when it was well aware coordination of the Proposed NGSO system had not occurred. Inmarsat has carried its burden with respect to the second factor of the stay analysis.

## C.    Balancing of Harms

As Inmarsat has carried its burden with respect to the first two factors of the stay analysis, the Court must weigh the likely harm to the Inmarsat (absent a stay) against the likely irreparable

---

[53] Manner Decl. ¶ 2; *see also id.* ¶ 31 (similar).

harm to Appellees if the stay is granted. *In re Revel AC,* 802 F.3d at 569.  Appellees argue that if the Bankruptcy Court order is stayed, Ligado and AST are likely to lose the benefits they bargained and paid for under the Mediated Agreement.  "If Inmarsat does not submit its affirmative support for Ligado's FCC application, or, even worse, opposes it—the FCC application may be denied or enmired in a lengthy FCC process."  (D.I. 22 at 2.)  Without FCC approval, Appellees assert, the AST Transaction and Ligado's ability to exit bankruptcy fall into doubt.

It is clear that the AST Transaction is fundamental to the Debtors' plan and emergence from bankruptcy.  Indeed, the Bankruptcy Court concluded that Ligado and AST faced irreparable harm if "regulatory approval is denied or substantially delayed because of Inmarsat's opposition," adding that potential "loss of the AST transaction" would be especially harmful because the transaction "represents [Ligado's] only viable path to emergence from Chapter 11."[54]  The Court agrees, however, that if the FCC application is not granted as requested or resolution is deferred until coordination is completed, that is because the independent experts at the FCC, taking into account all information, including the fact that there has been no coordination of the NGSO system, conclude that approval is not in the public interest.  That is not the sort of harm the stay analysis contemplates.  Appellees further argue that Inmarsat's position deprives them of what they paid $420 million under the Post-Petition Contracts to obtain.[55]  Inmarsat did agree to support the FCC application, but only after NGSO operations were properly coordinated.  The Court agrees that holding Ligado and AST to their bargain also is not the sort of harm the stay analysis contemplates

**D.  Where the Public Interest Lies**

---

[54] Ex. I at 22:6-16.
[55] Ex. B at 23:8-23; 30:2-12.

Turning to the final factor, the Court must consider where the public interest lies—"in effect, how a stay decision has 'consequences beyond the immediate parties.'" *In re Revel AC,* 802 F.3d at 569 (quoting *Roland Mach. Co. v. Dresser Indus., Inc.,* 749 F.2d 380, 388 (7th Cir. 1984)). Inmarsat argues that a stay of the Order pending this appeal will ensure the FCC evaluates Ligado's application with complete information and makes an informed judgment about the absence of coordination. (D.I. 3 at 16.) Ligado argues that "[w]ithout Inmarsat's support, it will be harder— and will certainly take longer—for Ligado's application to be approved[,] ... the AST Transaction would be thrown into jeopardy, and Ligado will be severely harmed because FCC approval of the Application is a condition precedent to the Debtors' emergence. ... Ligado's successful emergence depends on receiving regulatory approval as soon as practicable, and any delay only further jeopardizes reorganization." (D.I. 22 at 21.)  In light of the extraordinary expenses inherent in chapter 11 proceedings, the Court recognizes the best interests of the Debtor and its creditors require the plan to be consummated as quickly as possible, and further recognizes the serious implications even a brief stay may have for the Debtors' timeline for emergence.  Those concerns, however, do not necessarily override the need to provide a federal agency with complete and truthful information to evaluate an important issue that necessarily affects the public.

**E.    Bond Requirement**

Although courts "may" condition a stay on filing a bond, see Federal Rule of Bankruptcy Procedure 8007, doing so lies "in the discretion" of the Court.  *In re Revel AC, Inc.,* 2015 WL 567015, at *6 (D.N.J. Feb. 10, 2015).  A bond protects the prevailing party from loss resulting from the stay, and so no bond is necessary where "no substantial harm will come to the Debtors as a result of th[e] stay." *In re Finova Grp., Inc.,* 2007 WL 3238764, at *2 (D. Del. Oct. 31, 2007).  The Court agrees that a bond is not appropriate here because any hypothetical harm to Ligado or AST would result from the FCC's independent judgment—not from Inmarsat's expression of its views.

14

## IV.    CONCLUSION

Accordingly, the Emergency Stay Motion will be granted.  In light of the serious concerns raised by Appellees in connection with such a stay, including most notably the implications for consummation of Ligado's plan, the Court will direct the parties to confer and propose an expedited briefing schedule with respect to the merits of the appeal, so that it can be decided on an expedited basis.  An appropriate Order follows.

February 27, 2026                                HONORABLE GREGORY B. WILLIAMS
Wilmington, Delaware                         UNITED STATES DISTRICT JUDGE